**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE LISINSKI LAW FIRM, LLC,** <br><br> **Plaintiff,** <br> **vs.** <br><br> **CAMILA OVERMYER a/k/a CAMELIA GUAD MAGANA MADRIGAL, et al.** <br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **Case No. 2:26-cv-00704-SDM-KAJ** <br><br> **JUDGE SARAH D. MORRISON** <br><br><br> **<u>DEFENDANTS INNA SIMAKOVSKY AND SIMAKOVSKY LAW GROUP, LLC'S MOTION TO DISMISS</u>** |

---

Now come the Defendants, Inna Simakovsky and Simakovsky Law Group, LLC ("Simakovsky"), by and through undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully submit the Defendants' Motion to Dismiss the Plaintiff's Amended Complaint. As Simakovsky will establish more fully below, Plaintiff's sole attack on Simakovsky is based on facts that occurred while Simakovsky was performing legal work and representing her clients in a class action suit against the Plaintiff. Simakovsky must be permitted to provide zealous representation of her clients without the fear of retribution from disgruntled third-parties. Since Simakovsky enjoys immunity from and/or privilege associated with her alleged actions, Plaintiff's Amended Complaint is subject to dismissal pursuant to Civ. R. 12(b)(6) for failure to state a claim upon which relief can be granted. Simakovsky's arguments in that regard are articulated more fully below.

Respectfully submitted,

/s/ *Joseph W. Borchelt*
Joseph W. Borchelt (KBA# 91655)
REMINGER CO., LPA
525 Vine Street, Ste 1500

Cincinnati, OH 45202
Phone: 513.721.1311
jborchelt@reminger.com

***Attorney for Defendant***

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION AND FACTUAL ALLEGATIONS

On May 28, 2026, a class action lawsuit was filed against Plaintiff for allegedly illegal and tortious practices associated with Plaintiff's legal services to the immigration community. (See Complaint, at ¶7, Doc #: 23, PageID #: 132.) Simakovsky and the lawyer co-Defendants serve as counsel in the class action lawsuit. Plaintiff's massive 65-page, 286 paragraph Amended Complaint is actually threadbare with respect to allegations against Simakovsky. More notably, the sparce factual allegations against Simakovsky all involve conduct Simakovsky undertook as an attorney representing her clients in the class action litigation.

To that end, within Plaintiff's 286 paragraph pleading, Simakovsky is only alleged to have engaged in the following four actions that support the claims: (1) Simakovsky is co-counsel in a class action which was filed on May 28, 2026 (See Amended Complaint, at ¶65, PageID #: 147; ¶67, PageID #: 148-149; ¶141, PageID #: 165) (2) Simakovsky emailed a former Lisinski attorney on May 24, 2026 and allegedly made disparaging comments (Id., at ¶36, PageID #: 139; ¶148, PageID # 167; ¶166, PageID #: 172) (3) Simakovsky posted on Facebook on June 4, 2026 that she was class counsel and made allegedly disparaging comments (Id., at ¶37, PageID #: 139; ¶149, PageID #167) and (4) on an undisclosed date, Simakovsky purportedly told a client seeking a second opinion that Plaintiffs were "scammers". (Id., at ¶146, PageID #: 166). Notably, the

Complaint does not allege that Simakovsky was the content producer for any social media videos or livestreams alleged to have damaged Plaintiff's reputation and business. (Id., at *passim*).

As Simakovsky will establish in the following sections, Plaintiffs' Amended Complaint does not state a claim on which relief can be granted against Simakovsky because all alleged conduct occurred during the course and scope of her representation of clients in the class action litigation. The filing of litigation itself, interviewing of potential witnesses, and contacting former employees as potential witnesses are all litigation-related activities for which Simakovsky must enjoy immunity from suit. Any rule to the contrary would put attorneys in a conflict situation whereby "[T]he attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself." *Simon v. Zipperstien*, 32 Ohio St.3d 74, 76, 512 N.E.2d 636 (1987).

Even if Plaintiffs' claims against Simakovsky could survive the privity and litigation privilege rules, they would still be subject to dismissal. As outlined below, the Plaintiffs' defamation claims fail against Simakovsky because of the three statements attributed to Simakovsky, all are unverifiable statements of opinion as opposed to false statements of fact. Additionally, Ohio grants an absolute privilege to statements bearing some reasonable relation to the judicial proceeding in which they appear. The purpose of such privilege in the defamation context is to leave counsel free to advance a client's interests without seeding a collateral tort suit with every communication. Finally, as outlined below, the alleged "scammers" comment is protected by qualified privilege. Based on the face of the pleadings alone, the Plaintiffs' Amended Complaint states no set of facts which could entitle Plaintiffs to relief on their defamation claims.

Plaintiffs' civil conspiracy claim fares no better. This claim fails for three independent reasons: no underlying tort survives, no agreement is pleaded, and the conduct it describes is protected litigation activity.

Finally, Plaintiffs' claim under the Deceptive Trade Practices Act, R.C. 4165.02(A)(10), meets the same fate. The claim fails because the single statement it attributes to Simakovsky is not a representation of fact, was not made in commercial advertising or promotion, and is not connected to Simakovsky Law by any allegation.

## II. LEGAL ANALYSIS

### A. Plaintiffs' Claims Against Simakovsky Should Be Dismissed Because Plaintiffs Have No Standing Under Ohio Law to Assert Their Claims.

As a threshold issue, plaintiffs must have sufficient standing to bring a case against individuals in an Ohio court. In the context of parties wishing to assert claims against a lawyer, Ohio law requires certain prerequisites be established to assert a cognizable cause of action. As is pertinent here, Plaintiffs' claims against Defendants Inna Simakovsky and Simakovsky Law Group, LLC must be dismissed because Plaintiffs do not have "client" standing to assert claims against the Defendants and do not have standing to raise the albeit atypical third-party claim against an attorney either. Accordingly, Plaintiffs have failed to state claims upon which relief can be granted, and the complaint against these Defendants is subject to dismissal pursuant to Civ.R. 12(b)(6).

#### 1. *Under Ohio's "Malpractice-Is-Malpractice" Rule, Any Claims Against Simakovsky for Acts Undertaken During the Representation of a Client Sound in Malpractice and Plaintiff Cannot Merely Dress Up Their Causes of Action in the Garb of Defamation or Civil Conspiracy to Avoid Dismissal.*

Plaintiffs' asserted causes of action against Simakovsky should be dismissed because Plaintiffs do not have standing to assert claims as clients and because Ohio law precludes plaintiffs

from dressing up claims to avoid being barred for a lack of privity. As will be discussed in sections *infra*, Simakovsky's alleged actions undertaken in the course of and directly related to the underlying class litigation are privileged pursuant to Ohio law. However, as a threshold matter, Ohio law is clear that, where Plaintiffs allege that Simakovsky purportedly breached a duty to them, the ordinary form of such a claim sounds in "malpractice"; yet, Ohio courts are uniform that Plaintiffs are prohibited from clothing their claims in other forms to avoid dismissal for lack of an attorney-client relationship.

Ohio courts typically treat all claims against attorneys under the rubric of malpractice, regardless of how the plaintiff chooses to style a particular claim. *Grenoble v. Rion, Rion, Rion, L.P.A.*, 12th Dist. Preble No. CA2014-07-006, 2015-Ohio-971, ¶ 23; *Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, ¶ 19; *Muir v. Hadler Real Estate Mgmt.*, 4 Ohio App.3d 89, 90, 446 N.E.2d 820 (12th Dist.1982) (holding that "[m]alpractice by any other name still constitutes malpractice"); *Hibbett v. Cincinnati*, 4 Ohio App.3d 128, 446 N.E.2d 832 (1st Dist.1982) ("Despite Hibbett's attempt to label her action a suit for negligence or a suit for breach of contract, the real ground of her claim is malpractice."); *Nwabara v. Schoby*, 8th Dist. Cuyahoga No. 51211, 1986 WL 12852 (Nov. 13, 1986) ("[C]lothing the averments in the language of fraud does not convert appellant's claim for relief to one based on fraud."); *see also Gullatte v. Rion*, 145 Ohio App.3d 620, 763 N.E.2d 1215 (2d Dist.2000).

Here, Plaintiffs' Amended Complaint has alleged causes of action against Simakovsky for defamation, civil conspiracy and tortious interference, but all of the conduct alleged as attributable to Ms. Simakovsky and her firm are stated to have occurred in the course of representing clients in and building a case for the underlying class action litigation. As such, any claim against Simakovsky – an attorney – arising out of her conduct in that matter should be treated under the

rubric of a state law malpractice claim. In the present circumstances, Plaintiffs have no standing to assert such a claim because they were not clients of Simakovsky. Accordingly, Ohio law precludes them from avoiding that lack of standing by attempting to dress up their claims under other names and dismissal of the Amended Complaint is appropriate.

2. ***Plaintiffs Have No Standing Under Ohio Law to Assert Third-Party Claims Against These Defendants.***

Even if Plaintiffs causes of action could avoid Ohio's "malpractice-is-malpractice" rule, they would nonetheless be subject to dismissal for failing to state a claim because Ohio law largely prohibits claims by third-parties against lawyers. As discussed in the following section, third-parties do not have standing to assert claims against lawyers with whom they do not enjoy an attorney-client relationship.

"Generally, a party outside the direct attorney-client relationship 'lacks standing to complain of conflicts that arise from that relationship.'" *Luce v. Alcox*, 165 Ohio App.3d 742, 748, 848 N.E.2d 552 (10th Dist.2006) (quoting *Morgan v. N. Coast Cable Co.*, 63 Ohio St.3d 156, 586 N.E.2d 88 (1992)). Another way of looking at the issue is that attorneys have qualified immunity from liability to third parties for acts or omissions concerning the representation of a client (see sections *infra*), but regardless of the angle from which the issue is approached (*i.e.*, standing or immunity), the clear message from Ohio courts is that the absence of an attorney-client relationship drastically limits the duties owed by an attorney to non-clients. The Ohio Supreme Court made clear in *Simon v. Zipperstein*, 32 Ohio St.3d 74, 76, 512 N.E.2d 636 (1987), that Ohio has a strong policy against third-party actions against attorneys and held that the bright line of privity remains the controlling rule in Ohio. *See also Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 20-21 (holding that beneficiaries of a will had no privity with the

attorney who prepared their mother's legal documents and therefore no standing to bring a legal malpractice claim against attorney).

As the Supreme Court noted in *Scholler,* a plaintiff can defeat the general prohibition on third-party claims against lawyers if the plaintiff can prove he or she was in "privity" with the lawyer's client. "Privity" is defined as "[t]he connection or relation between two parties, each having a legally recognized interest in the same subject matter ***; mutuality of interest ***." BLACK'S LAW DICTIONARY (7 Ed.Rev.1999) 1217. In determining privity in the context of standing to bring a malpractice claim, the court must determine whether the parties' interests are the same, such that representing the client is equivalent to representing the party alleging privity with the client. *See Scholler*, 10 Ohio St.3d at 103-04. "For legal malpractice purposes, privity between a third person and the client exists where the client and the third person share a mutual or successive right of property or other interest." *Sayyah v. Cutrell*, 143 Ohio App.3d 102, 111-12, 757 N.E.2d 779 (12th Dist.2001).

Third parties with sufficient "privity", and therefore standing to sue, include partners in general and limited partnerships, *vis-à-vis* counsel for the partnership. However, shareholders in a corporation do not share an attorney-client relationship with corporate counsel. *Arpadi v. First MSP Corp*, 68 Ohio St.3d 453, 456-57, 628 N.E.2d 1335 (1994). Other third parties not in privity with the client include the minor child of a client in divorce proceedings (*Scholler*, 10 Ohio St.3d at 104); and a teacher represented by the attorney hired by the teacher's union to represent him in the appeal of a school board's disciplinary action against him (*Sellers v. Doe*, 99 Ohio App.3d 249, 650 N.E.2d 485 (10th Dist.1995)).

Here, Plaintiffs have not alleged any facts to suggest that they could establish privity with Simakovsky to avoid Ohio's policy and general rule against third-party claims against attorneys.

To the contrary, the Amended Complaint goes to great pains to explain that, at all times, Plaintiffs were in an adversarial posture to Simakovsky in the class litigation. As such, they cannot show that they have standing to assert third-party claims against Simakovsky based on conduct in and related to that litigation. Accordingly, Plaintiffs' Amended Complaint against Simakovsky should be dismissed for failing to state a claim.

### B. <u>Plaintiffs' Claims Against These Defendants Are Barred Because Ohio's "Litigation Privilege" Confers Civil Immunity on Lawyers for Acts Undertaken in the Representation of a Client</u>.

Closely related to Ohio's well-established policy against third-party claims against attorneys for lack of standing is the Ohio Supreme Court's proclamation of immunity for lawyers' conduct in and related to litigation. Specifically, the Supreme Court of Ohio has held that "an attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 326, 2007-Ohio-3608, ¶ 15, 872 N.E.2d 254 (citing *Scholler v. Scholler*, 10 Ohio St.3d 98, 462 N.E.2d 158 (1984)). The net effect of this immunity is that prospective plaintiffs seeking claims against an Ohio lawyer must allege conduct that is unrelated to litigation or the attorney's performance of legal work in order to avoid dismissal under Civ.R. 12(b)(6). Here, Plaintiffs' Amended Complaint fails to do so, and the Amended Complaint should be dismissed accordingly.

Ohio's strong policy against third-party actions against attorneys was explained by the Supreme Court in *Simon v. Zipperstien*, 32 Ohio St.3d 74, 512 N.E.2d 636 (1987), as follows:

> The obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client. *** To allow indiscriminate third-party actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself.

*Id.* at 76 (citation omitted). "The rationale for this posture is clear: the obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client." *Calabrese v. Judy*, 2025-Ohio-5284, ¶11 (11th Dist.) (citing *Simon* at 76).

As for the "malice" exception to the general prohibition on third-party claims against attorneys, Ohio courts have routinely held that the alleged conduct must go further than mere conscious disregard for the rights of others. Instead, "[t]o constitute malice, the actions of the attorney must include a disregard of rights that the attorney, not the client, is required to protect and must include harm beyond that which legal action necessarily may inflict." *Omega Riggers & Erectors, Inc.*, 2016-Ohio-2961, ¶ 35 (2d Dist.). Specifically, "to constitute malice as a conscious disregard for the rights of others causing substantial harm that will suffice to substitute for an attorney-client relationship, facts must exist that demonstrate extra-legal activity." *Id.*

Here, the face of the Amended Complaint manifests that Plaintiffs have asserted third-party claims against Simakovsky as there is no contention that Plaintiffs were clients of the firm. Additionally, all of the complained of conduct is alleged to have occurred during and in the course of Ms. Simakovsky's role as litigation counsel in the underlying class action suit and corresponding investigation. (See Amended Complaint, Doc. 23, at ¶¶ 36, 37, 65, 67, 141, 146, 148-149, 166).[1] Thus, Plaintiffs here cannot maintain actionable claims against Ms. Simakovsky

[1] The Amended Complaint specifically alleges: that Simakovsky purportedly emailed a former Lisinski attorney and made ostensibly disparaging remarks about the firm after the class action was filed (Id., at PageID # 139, ¶36, at PageID # 172, ¶166); that Simakovsky posted on Facebook that she was class counsel and made purportedly disparaging remarks about LLF (Id., at PageID # 167, ¶148, at PageID # 167, ¶149); that "[o]n information and belief, Simakovsky and Alvarez and their respective law firms, as counsel in the Class Action against LLF, will share fees if that Class Action succeeds ***." (Id., at PageID # 147-48, ¶65); that Simakovsky and Alvarez concocted the class action lawsuit, which they filed on May 28, 2026 (Id., at PageID # 148-49, ¶67, PageID # 165, ¶141); that, after the class action was filed, Simakovsky purportedly told a client seeking a second opinion that Plaintiffs were "scammers" (Id., at PageID # 166, ¶146) and that Simakovsky, as class counsel, made publicly disparaging comments about LLF, including to LLF's clients (Id., at PageID # 139, ¶37).

or her firm because they have not alleged any extra-legal activity, *i.e.*, unrelated to the underlying litigation.

In the Second District case of *Stout v. Columbia Gas of Ohio*, *Inc.*, 2021-Ohio-609 (2d Dist.), the non-client plaintiffs alleged claims against an attorney for defamation and civil conspiracy, among others, but the trial court granted summary judgment in favor of the attorneys on immunity grounds. *Id.* at ¶1. The Ohio Court of Appeals for the Second District affirmed on appeal, finding that all of the attorneys' conduct stemmed from the underlying litigation and was therefore subject to immunity pursuant to the litigation privilege. *Id.* at ¶¶84, 88. In particular, the Court noted that the plaintiff's allegation in *Stout* for civil conspiracy was that the lawyer and defendants "'formed a malicious combination to pursue debt collection activity' against him for more than three years ***." *Id.* at 54. As a consequence, the Second District agreed that the purportedly defamatory statements and the conduct that comprised the plaintiff's civil conspiracy claim bore sufficient relation to the judicial proceeding, such that the litigation immunity privilege applied. *See id.* at ¶¶81-82. Further, the Court added that Ohio courts apply great liberality in determining relevancy, such that the defense of privilege is denied only if the communication or conduct clearly has no relation to the subject matter. *See id.*

Here, the same is true, as all of the conduct alleged in the Amended Complaint that is attributed Simakovsky took place after the underlying class litigation was initiated and wholly related to the prosecution of those claims. Despite the fact that Plaintiffs here contend that Simakovsky purportedly pursued class action claims, Plaintiffs' clients, and sought to use Plaintiffs' attorneys as witnesses in the class litigation, similar civil conspiracy and defamation claims were rejected in *Stout* on immunity grounds because the conduct alleged in that case – as here – bore a relation to litigation. *See id*. at ¶¶84, 88. Because all of the conduct alleged against

Simakovsky in the Amended Complaint involved purported actions undertaken in relation to the underlying litigation, those acts are entitled to immunity under Ohio's litigation privilege and the Plaintiffs' causes of action should be dismissed accordingly.

### C. Plaintiffs' Tortious Interference with Contract Claim Should Be Dismissed Because It is Against Ohio Public Policy to Enforce Non-Disclosure Agreements Between a Law Firm and Its Attorneys.

Plaintiffs' Amended Complaint alleges in its "Count V" that Simakovsky purportedly sought to procure a breach of non-disclosure agreements signed by former attorneys of Lisinski Law. (Doc. 23, Amended Complaint, at PAGEID# 185). Specifically, the Amended Complaint alleges that Ms. Simakovsky contacted one of Plaintiff's former attorneys to obtain information that, if disclosed, would ostensibly violate a non-disclosure agreement that attorney had signed with the Lisinski firm. (Id., at PAGEID# 172). However, as these types of non-disclosure agreements violate public policy, Simakovsky cannot be liable for purportedly soliciting a breach, even if proven true.

Ohio Rule of Professional Conduct 1.6 is entitled "Confidentiality of Information" and governs an attorney's ethical duty to keep client communications and information relating to a representation confidential. The Rule also, however, outlines circumstances in which an attorney *may* disclose such information and also those in which an attorney *must* disclose information related to the representation of a client. *See* Prof. Cond. R. 1.6(d). Those circumstances include, but are not limited to, those outlined in Rules 3.3 and 4.1, *i.e.*, to maintain candor toward the tribunal and to avoid failing to disclose a material fact when disclosure is necessary to avoid assisting an illegal or fraudulent act by a client, respectively.

Additionally, Rule 5.6 governs "Restrictions on the Right to Practice" and specifically prohibits lawyers from offering or making an "agreement that restricts the right of a lawyer to

practice after termination of the relationship ***." The only exception to this Rule is for agreements concerning benefits upon retirement. The reason for the Rule, as explained in Comment 1 to the Rule is that "[a]n agreement restricting the right of lawyers to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer."

It is against public policy for a law firm such as Plaintiff Lisinski Law to require its attorneys to execute written agreements that violate the Rules of Professional Conduct or otherwise cause a lawyer to violate his or her ethical responsibilities. Here, Plaintiffs have alleged that Lisinski Law asked its lawyers to enter into non-disclosure agreements, which sought to impose greater restrictions on the disclosure of information related to a representation than imposed by the Ohio Rules of Professional Conduct. Such prohibitions risk forcing Lisinski Law's attorneys and former attorneys to violate either their non-disclosure agreements or their ethical obligations under Rules 1.6(d), 3.3, 4.1, or 5.6.

Plaintiffs' non-disclosure agreements unquestionably violate Ohio's public policy for lawyers inherent in the Rules of Professional Conduct and therefore cannot be enforced as a matter of law. It is therefore axiomatic that Simakovsky cannot be held liable for purportedly tortiously interfering in an agreement that, by its terms, is unenforceable. Accordingly, "Count V" of the Amended Complaint is subject to dismissal for failing to state a claim upon which relief may be granted.

**D. <u>Count I Fails to State a Defamation Claim Against Simakovsky.</u>**

Count I names eight defendants in a single defamation count. (Am. Compl., ECF 23 at PageID #179, ¶¶ 192-199). Under Ohio law, defamation requires (1) a false statement of fact, (2) that is defamatory, (3) published to a third party, (4) proximately causing injury, and (5) made with

the requisite degree of fault. *Am. Chem. Soc'y v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, ¶ 77.

Here, incorporating the 191 preceding factual paragraphs, Plaintiffs generally describes what "Defendants" collectively said, published, and believed. (*Id.* at PageID #180, ¶¶ 194-199). That framing conceals a narrow reality: *Plaintiffs attribute only three statements to Simakovsky*. And each is a protected opinion. Further, one is absolutely privileged and one is qualifiedly privileged. Finally, Plaintiffs plead no facts showing actual malice, which it must, because Plaintiffs plead itself into limited-purpose public-figure status, at worst. As such, this Count should be dismissed.

***1. Plaintiffs attribute only three statements to Simakovsky.***

Naturally, a defamation analysis begins with the words used. Here, the Amended Complaint supplies three discrete statements attributable to Simakovsky. *First*, that Simakovsky told Plaintiff's client who "sought a second opinion regarding the client's immigration case" that Lisinski and LLF were "scammers." (Am. Compl., ECF 23 at PageID #166, ¶ 146). *Second*, Simakovsky posted in a Facebook group that her firm was "local council [sic] filing against the biggest [A.S.S.] mill" and that "for years she has seen clients from [LLF] and it is truly horrific." (*Id*. at PageID #167, ¶¶ 149-150). Third, Simakovsky emailed a former LLF attorney on May 24, 2026, stating that LLF spread "misinformation/false promises" and that Robert Alvarez had "very important work" in exposing LLF. (*Id*. at PageID #167, ¶ 148).

Nothing else in the Amended Complaint identifies statements made by Simakovsky—any remaining statements are attributed to other people or generic "Defendants." Those generic allegations do not state any claim against Simakovsky. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (affirming dismissal where a complaint made "only categorical references

to 'Defendants'" without alleging what each defendant did). Accordingly, the defamation claim against Simakovsky is limited to the three statements identified above.

### *2. The defamation claim does not plead any false statements of fact.*

For defamation, Ohio law is clear that a party must allege a false statement of fact. *Leadscope*, 2012-Ohio-4193, ¶ 77. Whether "allegedly defamatory language is opinion or fact is a question of law to be decided by the court." *Vail v. Plain Dealer Publishing Co*., 72 Ohio St.3d 279, 280 (1995); *see also Kirkland v. Env't Landscape, LLC*, 2025 U.S. Dist. LEXIS 25399, at *40 (S.D. Ohio Feb. 12, 2025) ("Whether an allegedly defamatory statement is protected opinion or actionable assertion of fact is a question of law for the district court."). And words bearing both a defamatory and innocent meaning must be given the innocent one. *Croce v. New York Times Co.*, 930 F.3d 787 (6th Cir. 2019) (applying the rule to affirm dismissal under Rule 12(b)(6)).

When determining whether a statement is opinion or fact, a court considers the totality of the circumstances. *Kirkland*, 2025 U.S. Dist. LEXIS 25399, at *40. In doing so, a court considers at least four factors. *Id.* "First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement and fourth is the broader context in which the statement appeared." *Id*. (quoting *Scott v. News-Herald*, 25 Ohio St.3d 243 (1986)).

Verifiability does much of the work. A statement that "lacks a plausible method of verification" is one that is "value-laden and … represent[s] a point of view that is obviously subjective." *Vail*, 72 Ohio St.3d at 283. Name-calling is the paradigm case. Ohio courts have held that calling a contractor a "scammer," a professional a "con artist," and a businessperson a "con man" and a "crook," are all non-actionable opinions as a matter of law. *See Concrete Creations & Landscape Design LLC v. Wilkinson*, 2021-Ohio-2508, ¶¶ 57-58 (7th Dist.) (non-actionable

opinion as a matter of law); *Niotti-Soltesz v. Piotrowski*, 2017-Ohio-711, ¶ 20 (11th Dist.) (same); *Kirkland*, 2025 U.S. Dist. LEXIS 25399, at *42-44 (same).

Here, each of the three alleged statements is one of opinion, on the surface of the Amended Complaint's allegations:

***The Facebook Post.*** LLF alleges Simakovsky wrote that her firm was "local council [sic] filing against the biggest [A.S.S.] mill" and that "for years she has seen clients from [LLF] and it is truly horrific." (Am. Compl., ECF 23 at PageID #167, ¶¶ 149-150). These are plainly opinion statements. "Truly horrific" is a value judgment. It reports no event, no case, and no client. The "mill" epithet is no different; LLF will not even print the word it sues over, substituting a bracketed placeholder instead. (*Id.* at ¶ 149). Ohio courts treat comparable labels as "hyperbole and ambiguity" rather than actionable fact statements. *Condit v. Clermont Cty. Rev.*, 110 Ohio App.3d 755, 760 (12th Dist. 1996). Further, neither phrase is verifiable. There is no method by which a factfinder could measure whether a law firm is "the biggest" anything, or whether its work is "truly horrific." Simply put, those are conclusions a speaker reaches, not facts a speaker reports. And they are not actionable statements. *See Kirkland*, 2025 U.S. Dist. LEXIS 25399, at *42-44.

***The Email.*** LLF alleges Simakovsky wrote a former LLF attorney that LLF spread "misinformation/false promises" and that Alvarez had "very important work" in exposing LLF. (*Id.* at PageID #167, ¶ 148). These statements are opinion as well.

Begin with the second phrase. "Very important work" is praise of a colleague. It says nothing about LLF at all, and a statement that does not concern the plaintiff cannot defame it. *See generally, Leadscope, Inc.*, 2012-Ohio-4193, ¶ 77. The first phrase fares no better. "Misinformation/false promises" characterizes a legal position—Lisinski's view that a sworn declaration can support a humanitarian petition. Indeed, *LLF itself pleads that this position was*

*publicly contested and that the contest launched this entire controversy*. (*Id.* at PageID #134, ¶¶ 16-17). Whether a firm's public position on evidentiary sufficiency amounts to "misinformation" is a contested professional judgment on which reasonable immigration lawyers plainly differ. It is not a fact capable of proof or disproof, and it is not actionable defamation. *See Kirkland*, 2025 U.S. Dist. LEXIS 25399, at *42-44.

***The Scammers Comment.*** LLF alleges that Simakovsky told a client that Lisinski and LLF were "scammers." (Am. Compl., ECF 23 at PageID #166, ¶ 146). Ohio law already tells us calling someone a scammer—the exact word plead here—is an opinion statement not actionable under Ohio law. *Concrete Creations*, 2021-Ohio-2508, ¶¶ 57-58. In *Kirkland*, a court of this District applying Ohio law found calling landscaping contractor a "con man" and a "crook" to her employee, her friends, and a project foreman was not actionable defamation. 2025 U.S. Dist. LEXIS 25399, at *41. The court granted summary judgment, holding the statements protected opinion as a matter of law. *Id*. at *43-44. The terms were "loosely definable or inherently imprecise and subject to myriad subjective interpretations." *Id*. at *42. Critically, they were "not readily verifiable when Kirkland did not also give examples of what he did." *Id.* at *42-43.

Defendants acknowledge some authority has treated the specific word "scammers" differently. *North American Recycling, LLC v. Texamet Recycling, LLC*, No. 2:08-cv-579, 2010 U.S. Dist. LEXIS 28505, at *3 (S.D. Ohio Mar. 24, 2010). But this contrary authority proves the outcome here. In *North American Recycling*, the court found "scammer" actionable, but only because the defendant also stated that the plaintiffs "have scammed over 7 companies out of hundreds of thousands of dollars." *Id*. The *Kirkland* court distinguished the statement in *North American Recycling* as "on its face more factual and verifiable" than bare name-calling. 2025 U.S.

Dist. LEXIS 25399, at *43. The epithet became actionable because it traveled with a verifiable assertion, not on its own.

Here, the epithet travels alone. Paragraph 146 attaches "scammers" to no transaction, no fee, no filing, no petition, and no identified client. It supplies no date, no location, nothing said before the remark, and nothing said after it. LLF pleads the label and stops. Under *Kirkland*, that is precisely the statement that cannot be verified, and precisely the statement that is not actionable.

Kirkland also forecloses the argument that a commercial motive converts opinion into fact. There, the plaintiff told the defendants' own masonry subcontractor that the defendant "does not have a legitimate business" and had "padded [h]is fraudulent accounts at the expense of others." *Id*. at *48. This, all while attempting to hire that subcontractor away. *Id*. And the court held those statements were opinion as a matter of law, notwithstanding that they accused the defendant of fraud and were made for the speaker's own commercial benefit. *Id*. at *49. Thus, LLF's theory that Simakovsky spoke to win a client is therefore beside the point.

***3. Each of the three statements is constitutionally protected.***

Article I, Section 11 of the Ohio Constitution gives expressions of opinion an absolute privilege. *Vail v. Plain Dealer Publ'g Co.*, 72 Ohio St.3d 279, 281 (1995). That protection is not limited to the press. *Wampler v. Higgins*, 93 Ohio St.3d 111 (2001), syllabus (holding a nonmedia defendant may invoke the same protection). Nor is it limited to statements made in a public forum. *Lennon v. Cuyahoga Cty. Juvenile Court*, 8th Dist. Cuyahoga No. 86651, 2006-Ohio-2587, ¶ 31 (coworker's workplace accusation that a colleague was a "racist" held constitutionally protected); *see also Jorg v. Cincinnati Black United Front*, 153 Ohio App.3d 258, 2003-Ohio-3668, ¶ 10 (1st Dist.) (private persons hold "the same constitutional protections" as those "who print or broadcast their opinions for money"). *Kirkland* is consistent. Every statement the court held protected there

was made privately to friends, to an employee, and to a subcontractor. 2025 U.S. Dist. LEXIS 25399, at *41, *48.

Here, the privilege attaches to all three statements for the reasons set out in the preceding section. Count I therefore fails as to each statement as a matter of law.

#### *4. An Absolute privilege applies independently to the Facebook post.*

Ohio grants an absolute privilege to statements bearing "some reasonable relation to the judicial proceeding in which [they] appear." *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), syllabus. The privilege applies even to statements made with actual malice. *Bigelow v. Brumley,* 138 Ohio St. 574 (1941) Its purpose is to leave counsel free to advance a client's interests without seeding a collateral tort suit with every communication. *Surace*, 25 Ohio St.3d at 234-35.

Here, the Facebook post concerns the *Ortega* class action, in which Simakovsky Law serves as local counsel. *See Ortega v. The Lisinski Law Firm, LLC*, No. 2:26-cv-00644-SDM-KAJ (S.D. Ohio). The Facebook post announced that Simakovsky Law was "local council [sic] filing against" LLF. (*Id.* at ¶ 149). LLF pleads as much: it alleges these communications were made to gather information for, and to publicize, that lawsuit. (*Id.* at PageID #166-#167, ¶¶ 141, 147-149). Since the Facebook post is entitled to absolute privilege, the claims fail. *Surace*, 25 Ohio St.3d at 234-35.

#### *5. A qualified privilege independently covers the "scammers" statement.*

A qualified privilege attaches to a statement made in good faith, on a matter of common interest, on a proper occasion, in a proper manner, and to proper parties. *Hahn v. Kotten*, 43 Ohio St.2d 237, 243-46 (1975); *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). Whether the privilege exists is a question of law for

the court. *A & B-Abell*, 73 Ohio St.3d at 8. And the privilege "attaches to the situation giving rise to the communication," not to the speaker's state of mind. *Id.* at 8-9.

Here, the situation appears on the face of the pleading. LLF alleges that the client "sought a second opinion regarding the client's immigration case." (Am. Compl., ECF 23 at PageID #166, ¶ 146). An immigration lawyer asked to evaluate another firm's handling of a pending petition, and the person asking, both share an obvious and legitimate interest in the answer. Candor is the point of the consultation. If the privilege does not reach a lawyer's assessment of prior counsel's work, no second opinion in this State is safe to give.

#### ***6. LLF is a limited-purpose public figure and pleads no facts showing actual malice.***

A limited-purpose public figure must prove actual malice by clear and convincing evidence. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 351-52 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Ohio asks whether a public controversy exists, whether the plaintiff played a sufficiently central role in it, and whether the alleged defamation was germane to that participation. *Gilbert v. WNIR 100 FM*, 142 Ohio App.3d 725, 736 (9th Dist. 2001). Here, LLF pleads each element against itself.

*A public controversy exists.* The Amended Complaint describes a months-long public dispute over whether large immigration firms file meritless humanitarian petitions, spanning TikTok, Facebook, Reddit, YouTube, a dedicated website, and a putative class action. (Am. Compl., ECF 23 at PageID #133-#174, ¶¶ 14-175). Hundreds of thousands of people have watched it unfold. (*Id.* at PageID #172, ¶ 169).

*LLF played a central role.* LLF calls itself "one of the largest and most well-respected immigration law firms in the country," with "nearly 1 million social media followers across platforms." (*Id.* at PageID #133, ¶ 15). It pleads that the controversy began when Overmyer

targeted "Lisinski's position" on declaration-only evidence—a position Lisinski advanced publicly. (*Id.* at PageID #134, ¶ 16). It pleads that Overmyer drew her audience by "generating controversy against well-known LLF" and by "openly challenging a firm as widely recognized as LLF." (*Id.* at ¶¶ 16, 18). And it pleads that Lisinski maintains TikTok and YouTube pages on which clients and the public debate these very allegations. (*Id.* at PageID #172-#173, ¶¶ 169-172). A firm that builds a national reputation by broadcasting a contested legal position, and that maintains a million-follower platform on which to defend it, has accepted the risk of public criticism on that subject.

*The statements are germane.* Each of the three statements concerns LLF's handling of humanitarian immigration petitions. That is the controversy itself.

LLF therefore had to plead facts making actual malice plausible, and it did not. Paragraph 199 recites the standard and stops. (*Id.* at PageID #180, ¶ 199). It alleges no fact suggesting Simakovsky doubted what she said. LLF pleads the opposite: that Simakovsky has "seen clients from [LLF]" for "years" and found their treatment "truly horrific." (*Id.* at PageID #167, ¶¶ 149-150). A speaker drawing on her own professional experience does not act with reckless disregard for the truth. *A & B-Abell*, 73 Ohio St.3d at 12-13.

***7. The claims against Simakovsky Law fail because there is no underlying defamation.***

Count I names Simakovsky Law but pleads no conduct by it. Its only theory is paragraph 193: "At all relevant times, Betzold, Alvarez, Simakovsky, and Doe 6 acted within the course and scope of their employment at, and ownership of, their respective law firms." (Am. Compl., ECF 23 at PageID #179, ¶ 193). This respondeat superior theory fails on the failure of the underlying tort claims. See *Comer v. Risko*, 106 Ohio St.3d 185, 200-Ohio-4559, ¶ 20. Because the underlying tort fails, so do the claims against Simakovsky Law.

**E. Count III Fails Because Even if Ohio Recognizes a Claim for Defamation by Implication, LLF Does Not Plead a Viable Case.**

Count III repeats Count I under a different label. It names the same eight defendants, incorporates the same 191 paragraphs, and complains of the same conduct. (Am. Compl., ECF 23 at PageID #182, ¶¶ 212-215). It then alleges that "[e]ven where Defendants' and Doe 6's individual statements may have been framed selectively, presented with omitted context or juxtaposed in a misleading manner," the whole conveyed a false impression. (*Id.* at ¶ 214).

First, Ohio law is not clear that this claim even exists. *Woods v. Sharkin*, 2022-Ohio-1949, ¶ 52 (8th Dist.) ("Ohio does not recognize defamation by implication."); *compare Carr v. Educational Theatre Assn*., 2023-Ohio-1681, ¶ 13 (1st Dist.). Regardless, Ohio defamation law already accounts for what a statement implies. Indeed, a court reads the words in the context of the entire communication and asks how a reasonable reader would understand them. *Leadscope*, 2012-Ohio-4193, ¶ 79. Where two readings are available, the innocent one controls. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 372 (1983); *McKimm v. Ohio Elections Comm*., 89 Ohio St.3d 139, 146 (2000). Those rules perform the work a separate implication claim would perform, and they perform it inside the defamation analysis.

But even if such a claim exists, it fails for the same reasons Count I fails. Count III rests on the same three statements. None asserts a verifiable fact. *Vail*, 72 Ohio St.3d at 282; *Kirkland*, 2025 U.S. Dist. LEXIS 25399, at *42-44. Two are absolutely privileged as statements related to the *Ortega* action. *Surace*, 25 Ohio St.3d 229, syllabus. One is qualifiedly privileged. *Hahn*, 43 Ohio St.2d at 243-46. And LLF, a limited-purpose public figure, pleads no facts showing actual malice. *Gertz*, 418 U.S. at 342.

Relabeling the claim cures none of this. An opinion is protected whether it is stated or implied, because in neither case is there a verifiable assertion of fact capable of being false.

### F. <u>Count IV Fails to State a Claim for Civil Conspiracy.</u>

Count IV alleges a conspiracy to defame. (Am. Compl., ECF 23 at PageID #183). It fails for three independent reasons: no underlying tort survives, no agreement is pleaded, and the conduct it describes is protected litigation activity.

#### ***1. Civil conspiracy requires an unlawful act independent of the conspiracy.***

Ohio civil conspiracy has four elements: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995); *accord Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir. 2000). The independent unlawful act is indispensable; without it, no conspiracy claim can be maintained. *Orbit Elecs., Inc. v. Helm Instrument Co.*, 167 Ohio App.3d 301, 2006-Ohio-2317 (8th Dist.). Here, the only candidate for the independent unlawful act is the defamation alleged in Counts I and III. Those counts fail as to Simakovsky for the reasons set out above. Count IV fails with them.

#### ***2. LLF does not plead sufficient facts to establish a conspiracy.***

Paragraph 222 is the whole of the agreement allegation: "Defendants and Doe 6 agreed or had a common understanding to work together to injure LLF by defaming LLF as described above." (Am. Compl., ECF 23 at PageID #184, ¶ 222). That is the first element of *Kenty* transcribed into a sentence, and it is precisely the pleading *Twombly* and *Iqbal* forbid. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678.

The supporting paragraphs do not fill the gap. Paragraphs 224 and 225 describe coordinated livestreams among Overmyer, Betzold, and Alvarez; Simakovsky appears in neither. (Am. Compl., ECF 23 at PageID #184, ¶¶ 224-225). Paragraph 226 alleges that the videos benefited all Defendants, including through fees Simakovsky and Alvarez "expect" from the class action. (*Id.*

at ¶ 226). But a shared financial interest is not an agreement; two lawyers who stand to profit from the same litigation have a common interest, not a conspiracy. Paragraph 228 concerns visafraud.law, which LLF attributes to Betzold and Alvarez alone. (*Id.* at PageID #185, ¶ 228).

LLF's own pleading concedes the point. Paragraph 227 alleges that "Simakovsky *additionally separately* defamed LLF and Lisinski to current LLF clients." (*Id.* at PageID #184, ¶ 227) (emphasis added). "Separately" is LLF's word, and it describes conduct outside any combination. A malicious combination requires a common understanding or design to commit the unlawful act. *Kenty*, 72 Ohio St.3d at 419. Conduct a plaintiff pleads as separate cannot supply it.

***3. Prosecuting the Ortega action cannot supply the unlawful act.***

Much of what Count IV describes is the preparation and prosecution of the *Ortega* class action: contacting former LLF personnel, referring clients to co-counsel, and anticipating a fee. (Am. Compl., ECF 23 at PageID #184, ¶¶ 226-227). That conduct cannot serve as the unlawful act because statements reasonably related to a judicial proceeding are absolutely privileged. *Surace*, 25 Ohio St.3d 229, syllabus. And permitting a defamation-conspiracy claim to rest on the act of filing suit would deter access to the courts precisely as *Surace* warned. *Id.* at 234-35.

**G. Count X Fails to State a Claim Under Ohio's Deceptive Trade Practices Act.**

Count X alleges that Simakovsky disparaged LLF in violation of R.C. 4165.02(A)(10). (Am. Compl., ECF 23 at PageID #190-#191, ¶¶ 272-279). The claim fails because the single statement it attributes to her is not a representation of fact, was not made in commercial advertising or promotion, and is not connected to Simakovsky Law by any allegation.

***1. The Act Only Reaches False Representations of Fact Made in the Course of Business and None Is Alleged Here.***

R.C. 4165.02(A)(10) makes it a deceptive trade practice to "[d]isparage[] the goods, services, or business of another by false representation of fact." The practice must occur "in the course of the person's business, vocation, or occupation." R.C. 4165.02(A). In construing the Act, Ohio courts apply the analysis developed under the analogous federal Lanham Act, 15 U.S.C. § 1125(a). *Cesare v. Work*, 36 Ohio App.3d 26, 28 (9th Dist. 1987); *Leventhal & Assocs., Inc. v. Thomson Cent. Ohio*, 128 Ohio App.3d 188, 196 (10th Dist. 1998). That framework requires a false or misleading statement of fact about the plaintiff's services, made in commercial advertising or promotion, that actually deceived or tended to deceive a substantial segment of its audience. *Id*.

The only conduct Count X attributes to Simakovsky is the statement addressed above, repeated at paragraph 278: that she told "at least one current LLF client" that LLF and Lisinski were "scammers," and that "upon information and belief, she has told this to other LLF clients as well." (Am. Compl., ECF 23 at PageID #191, ¶ 278). But the Act reaches disparagement "by false representation of fact." R.C. § 4165.02(A)(10). Opinion falls outside the statute's text. And "scammers," standing alone and unaccompanied by any verifiable assertion, is opinion. *Kirkland*, 2025 U.S. Dist. LEXIS 25399, at *42-43; *Concrete Creations*, 2021-Ohio-2508, ¶¶ 57-58. Because the word is not a representation of fact, it cannot violate subsection (A)(10).

***2. A Private Remark to One Client Is Not a Deceptive Trade Practice.***

Even if the word were a representation of fact, a one-to-one conversation is not commercial advertising or promotion. The Act reaches practices committed "in the course of the person's business, vocation, or occupation" and directed at the market. R.C. § 4165.02(A). Nothing in paragraph 278 alleges dissemination to the relevant purchasing public. And LLF drew that distinction itself. Its allegations against the other defendants describe a public website, published advertising, and mass social media. (Am. Compl., ECF 23 at PageID #190, ¶¶ 276-277). Its

allegation against Simakovsky describes a private conversation with a single person. (*Id.* at PageID #191, ¶ 278). LLF should be held to the distinction it drew.

## III. CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Plaintiffs' Amended Complaint is subject to dismissal pursuant to Fed. Civ. R. 12(b)(6). Permitting a disgruntled plaintiff in a class action to turn around and sue class counsel for litigation activity will create a dangerous precedent. Attorneys like Simakovsky must be free to counsel their clients, interview witnesses, and file litigation without the threat of indiscriminate third-party actions. For these reasons, Simakovsky respectfully requests that the Plaintiffs' Amended Complaint be DISMISSED with prejudice.

Respectfully submitted,

/s/ *Joseph W. Borchelt*
Joseph W. Borchelt (KBA# 91655)
REMINGER CO., LPA
525 Vine Street, Ste 1500
Cincinnati, OH 45202
Phone: 513.721.1311
jborchelt@reminger.com

***Attorney for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been electronically filed this 24th day of August, 2026 through the Court's CM/ECF system. Notice of filing will be automatically sent to all counsel (and their designees) who have entered their appearance of record and who are registered with this Court's CM/ECF system. Such notice constitutes service by rule.

/s/ *Joseph W. Borchelt*
Joseph W. Borchelt (0075387)