**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE LISINSKI LAW FIRM, LLC | : | CASE NO. 2:26-cv-00704 |
| Plaintiff, | : | JUDGE SARAH D. MORRISON |
| v. | : | MAGISTRATE JUDGE KIMBERLY A. JOLSON |
| CAMILA OVERMYER, ET AL. | : | |
| Defendants. | : | |

---

***DEFENDANTS ROBERT ALVAREZ AND AVANTI LAW GROUP, PLLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT***

---

Defendants Robert Alvarez and Avanti Law Group, PLLC (collectively, the "Avanti Defendants") respectfully move this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims asserted against them— (Counts I, III, IV, V, VI, VII, IX, and X—) by Plaintiff The Lisinski Law Firm, LLC's ("Plaintiff or LLF") in the First Amended Complaint (the "Amended Complaint"). As set forth in the accompanying Memorandum, the allegations directed at the Avanti Defendants concern privileged and protected conduct and fail to plausibly satisfy the essential elements of the causes of action asserted against them. Accordingly, dismissal is appropriate as a matter of law.

Respectfully submitted,

FREEMAN MATHIS & GARY, LLP

*_/s/ James A. Lacey_*
**Cara M. Wright (0084583), Trial Attorney**
**Jeffrey A. Yeager (0068062)**
**James A. Lacey (0105891)**
65 East State Street, Suite 2550
Columbus, OH 43215

Cara.Wright@fmglaw.com
Jeffrey.Yeager@fmglaw.com
James.Lacey@fmglaw.com
*Counsel for Defendants Robert Alvarez and Avanti Law Group, PLLC*

## MEMORANDUM IN SUPPORT

## I. INTRODUCTION

LLF asks this Court to convert attorney advocacy, claim investigation, client counseling, litigation activity, and participation in a pending class action into an actionable lawsuit, consisting of a sprawling collection of impermissible tort claims. The governing law does not permit such a leap. The Amended Complaint alleges that Robert Alvarez ("Alvarez"), a competing immigration attorney, and his law firm, Avanti Law Group, PLLC ("Avanti"), participated in a broader effort to challenge LLF's immigration law practices and represent individuals asserting claims against LLF. However, the conduct specifically attributed to the Avanti Defendants consists primarily of activities attorneys routinely perform: communicating with current and former clients, evaluating potential grievances, investigating factual allegations, discussing legal issues of public concern, and pursuing litigation arising from those concerns.

The Amended Complaint has not cured the fundamental pleading defects that permeate Plaintiff's claims against the Avanti Defendants. Instead, it continues to rely on conclusory allegations, collective pleading, and legal labels unsupported by specific facts attributable to Alvarez or Avanti. Consequently, even accepting Plaintiff's allegations as true, the Amended Complaint fails to state a viable claim for defamation, tortious interference, civil conspiracy, or violation of the Ohio Deceptive Trade Practices Act—and all claims asserted against the Avanti Defendants warrant dismissal as a matter of law.

## II. FACTUAL BACKGROUND

By its own allegations, LLF is one of the largest immigration law firms in the country serving the Spanish-speaking immigrant community, with nearly one million followers across various social-media platforms. *Amended Complaint* ¶ 15. LLF alleges that this dispute arose against the backdrop of heightened immigration enforcement and widespread concern within the undocumented immigrant community regarding immigration status, humanitarian relief, and the adequacy of legal representation. *Amended Complaint* ¶¶ 9-10. According to the Amended Complaint, the issues at the center of this case include publicly debated questions concerning humanitarian immigration petitions, evidentiary requirements, and legal practices employed by immigration attorneys serving that community. *Amended Complaint* ¶¶ 16-18, 43-50. In other words, the Amended Complaint itself frames the challenged speech as occurring within an ongoing public debate concerning matters of substantial importance to immigrants seeking legal status.

Throughout the pleading, LLF repeatedly describes Alvarez's role as that of counsel evaluating grievances, communicating with individuals concerning potential claims, reviewing immigration matters, gathering information relevant to those claims, and ultimately pursuing legal action arising from those concerns. *Amended Complaint* ¶¶ 58-65, 141-145, 163-168, 173. LLF expressly alleges that Alvarez serves as counsel in the pending Ortega class action against LLF and that he participated in preparing and filing that litigation. *Amended Complaint* ¶¶ 7, 141.

Consistent with that role, the Amended Complaint points principally to statements concerning the adequacy of immigration filings, the sufficiency of evidence supporting humanitarian petitions, and the propriety of certain immigration-law practices. *Amended Complaint* ¶¶ 46, 51, 151. LLF's allegations therefore place Alvarez's challenged conduct into two categories repeatedly reflected throughout the pleading: (1) communications and investigative

activities undertaken in connection with actual or anticipated litigation; and (2) commentary regarding matters of public concern affecting the immigrant community and the practice of immigration law.

The Amended Complaint nevertheless seeks to impose liability against Alvarez and Avanti under an array of tort theories, including defamation, defamation by implication, civil conspiracy, tortious interference, and violation of the Ohio Deceptive Trade Practices Act. Yet, as discussed below, LLF's own allegations reveal that the conduct attributed to the Avanti Defendants consists primarily of protected attorney advocacy, claim investigation, litigation-related activity, and commentary regarding issues of public concern, while failing to plead the essential facts necessary to sustain the claims asserted against them. *Amended Complaint* ¶¶ 193-278.

## III. <u>LAW AND ARGUMENT</u>

This case is particularly suited for resolution at the pleading stage. While the Amended Complaint alleges conduct that may describe zealous attorney advocacy, it does not—and cannot—plausibly describe actionable tortious conduct. Rule 12(b)(6) requires more than conclusory labels attached to protected or otherwise lawful conduct. To survive dismissal, a plaintiff must actually plead facts, not legal conclusions, sufficient to plausibly establish each element of each claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Here, even accepting Plaintiff's factual allegations as true for the purposes of this Motion, the Amended Complaint itself demonstrates that the conduct attributed to Alvarez falls overwhelmingly into the categories of attorney advocacy, litigation activity, client counseling, and public commentary on immigration-law issues. The Court is therefore not evaluating allegations against a private citizen accused of committing intentional torts; it is evaluating whether the

activities attributed to Alvarez in the Amended Complaint—repeatedly describing attorney conduct—may be transformed into tort liability through conclusory pleading. They cannot. Accordingly, the claims against the Avanti Defendants fail as a matter of law for the following independent reasons:

A. The Defamation Claims (Counts I, III, and IV) must be dismissed because the challenged statements attributed to the Avanti Defendants constitute protected attorney speech regarding matters of public concern and are otherwise non-actionable as a matter of law;

B. The Tortious Interference Claims (Counts V, VI, and IX) must be dismissed because the Amended Complaint alleges attorney representation, claim investigation, and lawful competition—not the improper procurement of any contractual or business relationship;

C. The Conspiracy Claims (Counts IV and VII) must be dismissed because the Amended Complaint alleges coordinated litigation and claim-investigation activities—not an unlawful conspiracy; and

D. Count X must be dismissed because Plaintiff improperly attempts to apply a commercial advertising statute to attorney commentary, litigation activity, and professional disagreement concerning matters of public concern.

**A. The Defamation Claims (Counts I, III, and IV) fail as a matter of law because the Amended Complaint alleges only attorney speech made in furtherance of litigation and on matters of public concern.**

Counts I, III, and IV must be dismissed because the Amended Complaint attempts to transform protected attorney speech, litigation-related activity, and public commentary regarding immigration-law practices into actionable defamation. Plaintiff's allegations establish that the challenged statements fall within categories of speech long protected by Ohio law and the First Amendment, including commentary regarding publicly debated immigration-law issues and communications made in connection with anticipated or pending litigation. As a result, the Amended Complaint triggers multiple privileges and heightened constitutional protections that Plaintiff can overcome only by plausibly alleging actual malice, which it fails to do. Accordingly,

dismissal is warranted at the pleading stage, and each of the following grounds independently requires dismissal of the defamation-based claims.

**i. The Avanti Defendants' statements are protected by Ohio's Common-Interest Privilege because they were made in furtherance of a shared interest in the competent and lawful handling of immigration matters and potential legal claims.**

Where a qualified privilege applies and a plaintiff pleads only conclusory allegations of malice, dismissal is appropriate. Ohio recognizes a qualified privilege for communications made in good faith on a subject in which the speaker has an interest or duty and communicated to others sharing that same interest or duty. *Hahn v. Kotten*, 43 Ohio St. 2d 237, 243-44, 331 N.E.2d 713 (1975). Ohio courts broadly apply this privilege to communications reasonably calculated to protect or advance a common interest, provided the communication is directed to persons sharing that interest and is made in a proper manner and on a proper occasion. *Green v. Mason*, 504 F. Supp. 3d 813, 830 (S.D. Ohio 2020) (applying common-interest privilege where communications were made to persons sharing a corresponding interest in the subject matter).

The privilege is especially appropriate where, as here, the speaker and audience share a common concern regarding legal rights, potential misconduct, and the consequences of ongoing legal representation. In this case, the privilege is apparent from the face of the Amended Complaint itself. By its own allegations, this dispute arose against the backdrop of heightened immigration enforcement, widespread concern within the undocumented immigrant community, and significant public debate regarding the handling of humanitarian immigration petitions and other immigration matters. *Amended Complaint* ¶¶ 9-10, 16-18, 43-50. Plaintiff further alleges that immigrants regularly rely upon social media and other public sources to obtain information concerning immigration processes, legal representation, and the consequences of immigration filings. *Amended Complaint* ¶¶ 9-10. Thus, the Amended Complaint itself frames the challenged

communications as addressing matters of direct importance to immigrants seeking legal status and the attorneys who advise them.

The Amended Complaint likewise alleges that Alvarez communicated with current and former LLF clients, prospective claimants, and members of the immigrant community regarding those very concerns. According to Plaintiff, Alvarez's communications addressed whether immigration petitions had been properly prepared, whether particular immigration strategies exposed applicants to risk, whether clients should seek further review of their matters, and whether potential claims existed arising from LLF's representation. *Amended Complaint* ¶¶ 46, 51, 55-66, 130, 143-145, 151. The audience to whom those communications allegedly were directed shared a corresponding interest in the accuracy, legality, and effectiveness of immigration representation. Under Plaintiff's own version of events, the Avanti Defendants were participating in discussions concerning legal rights, potential misconduct, and the consequences of ongoing legal representation. Those are precisely the types of communications Ohio's common-interest privilege was designed to protect.

Consequently, because the privilege applies, Plaintiff may proceed only by plausibly alleging actual malice, meaning that Alvarez knowingly made false statements or acted with reckless disregard for their truth. *Green*, 504 F. Supp. 3d at 830-32. The Amended Complaint falls well short of that standard. Counts I and III allege only that the Avanti Defendants were negligent in determining the truth or falsity of their statements or, alternatively, acted with actual malice. *Amended Complaint* ¶¶ 198-200, 217. There are no factual allegations suggesting that Alvarez fabricated information, ignored known facts, entertained serious doubts regarding the truth of his statements, or otherwise acted with the subjective awareness required to establish actual malice. Instead, Plaintiff merely labels the statements false and recites the element of malice. That is

insufficient as a matter of law. Accordingly, the common-interest privilege independently bars Counts I and III and likewise forecloses Count IV to the extent it is predicated upon the same allegedly defamatory communications.

**ii. <u>LLF is a Limited-Purpose Public Figure because it voluntarily injected itself into the public controversy underlying this Action, yet fails to plausibly plead actual malice as to the Avanti Defendants.</u>**

For substantially the same reasons discussed above, the Amended Complaint also establishes the existence of a public controversy concerning immigration-law practices, humanitarian immigration relief, and the adequacy of legal representation provided to members of the undocumented immigrant community. A defamation plaintiff who voluntarily injects itself into such a controversy assumes limited-purpose public figure status and must therefore plead and ultimately prove actual malice. *Kassouf v. Cleveland Mag. City Mags*., 142 Ohio App. 3d 413, 423 (2001). Therefore, when an organization such as Plaintiff places itself at the forefront of a public debate concerning its own practices, it becomes a limited-purpose public figure with respect to commentary on those practices.

**iii.** In this case, the Court need not infer LLF's prominence or participation in the controversy as the Amended Complaint's allegations leave little doubt that LLF voluntarily assumed that role. Plaintiff alleges that it is one of the largest immigration law firms serving the Spanish-speaking immigrant community, has amassed nearly one million social-media followers, and has cultivated a public reputation as a leading voice on immigration issues. *Amended Complaint* ¶ 15. Plaintiff further alleges that it publicly promoted specific legal positions concerning humanitarian immigration relief, including the evidentiary standards applicable to such petitions. *Amended Complaint* ¶¶ 16-17. Indeed, the very controversy from which this lawsuit arises concerns public disagreement over those positions and the immigration-law practices associated with them. *Amended Complaint* ¶¶ 16-18, 43-50. Having chosen to build a national platform and participate prominently in that debate, Plaintiff cannot now claim the protections afforded to a private plaintiff when criticism is directed toward those same publicly advocated positions. Plaintiff's status as a limited-purpose public figure independently requires it to plausibly plead actual malice. As discussed above, actual malice requires factual allegations demonstrating that Alvarez either knew his statements were false or acted with reckless disregard for their truth—yet the Amended Complaint contains no such allegations. Rather than pleading facts demonstrating knowing falsity, the

Amended Complaint merely recites that the Avanti Defendants acted with "actual malice" while simultaneously alleging only negligence. *Amended Complaint* ¶¶ 198-200, 217. There are no allegations that plausibly show Alvarez fabricating information, ignoring contradictory evidence, entertaining serious doubts regarding the truth of his statements, or otherwise possessing the subjective awareness required by the actual-malice standard. Given that LLF's own allegations establish that it is a limited-purpose public figure and because the Amended Complaint fails to plausibly plead actual malice, Counts I and III must be dismissed. **Statements connected to the Avanti Defendants' litigation-related conduct are independently protected by the Absolute Litigation Privilege.**

The Avanti Defendants' statements as counsel in, and in the investigation and preparation of, the *Ortega Class Action* and anticipated future litigation are absolutely privileged. Ohio's litigation privilege provides absolute immunity for statements made by attorneys, parties, and witnesses that are reasonably related to actual or anticipated judicial proceedings. *Hecht v. Levin,* 66 Ohio St.3d 458 (1993); see also *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497, 507 (1994) (applying absolute privilege to pre-suit communications reasonably related to anticipated judicial proceedings). The privilege extends beyond statements made in court and protects communications undertaken in the investigation, preparation, and prosecution of legal claims. *Surace v. Wuliger*, 25 Ohio St. 3d 229, 233-35 (1986). Because the privilege is absolute, it is not defeated by allegations of malice and is construed broadly to protect zealous advocacy and the integrity of the judicial process.

As discussed above, the Amended Complaint repeatedly characterizes Alvarez as counsel investigating grievances, evaluating potential claims, gathering information from clients and witnesses, and prosecuting the *Ortega* litigation. *Amended Complaint* ¶¶ 7, 62-65, 141-145, 163-168, 173. Plaintiff alleges that Alvarez spoke with prospective claimants, reviewed client concerns, developed claims, and ultimately pursued litigation arising from those concerns. *Amended Complaint* ¶¶ 141-145. Thus, under Plaintiff's own allegations, a substantial portion of the

communications attributed to Alvarez were undertaken in connection with actual or anticipated judicial proceedings.

Plaintiff cannot simultaneously characterize Alvarez as the attorney investigating and prosecuting claims against LLF and then seek tort liability based upon those same investigative and advocacy activities. Thus, to the extent Counts I and III rely upon communications made in connection with investigating, preparing, or prosecuting claims against LLF, those claims are barred by the absolute litigation privilege. The same is true of any conspiracy or interference theory that merely repackages the same litigation-related conduct under a different label.

**iv. The Amended Complaint fails to plead actionable defamation against the Avanti Defendant, and Count III adds nothing beyond Plaintiff's deficient defamation theory.**

Even apart from the privileges and constitutional protections discussed above, the Amended Complaint fails to plausibly allege actionable defamation by the Avanti Defendants. Rather than identifying specific false statements attributable to Alvarez and pleading facts demonstrating falsity, fault, and defamatory meaning, Plaintiff repeatedly relies upon collective allegations against "Defendants" as a group. *Amended Complaint,* ¶¶ 193, 196-200, 214-217. Such group pleading does not satisfy *Twombly* or *Iqbal*, both of which require factual allegations showing how a particular defendant engaged in actionable conduct. *Boxill v. O'Grady,* 935 F.3d 510, 518 (6th Cir. 2019). Simply put, the Amended Complaint never plausibly connects Alvarez to a false and actionable statement of fact.

The few statements specifically attributed to Alvarez are not actionable in any event. The Amended Complaint principally identifies comments expressing Alvarez's views regarding immigration-law practices, the adequacy of particular filings, and the exercise of professional judgment by attorneys handling those matters. *Amended Complaint* ¶¶ 46, 151. For example,

Alvarez's alleged statement that no "competent immigration attorney" would have approved certain filings is a subjective assessment of legal work, not a verifiable statement of fact. Ohio law does not permit defamation claims based upon professional opinions, rhetorical criticism, or statements that cannot be objectively proven true or false. *Scott v. News-Herald*, 25 Ohio St. 3d 243 (1986); *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 981 (N.D. Ohio 2003). The Amended Complaint alleges, at most, a disagreement concerning immigration-law practices and professional judgment, not actionable defamation.

Count III's label of "defamation by implication" does not cure these deficiencies. In cases involving alleged defamation by implication arising from otherwise factually accurate or non-defamatory statements, Ohio courts require evidence that the defendant intended, endorsed, or acted with utter disregard toward the allegedly defamatory implication. *Mucci v. Dayton Newspapers, Inc.*, 71 Ohio Misc.2d 71, 77-79 (C.P. 1995). Instead, in the present case, Count III simply repackages the same allegations underpinning Counts I and IV, asserting in conclusory fashion that statements "taken individually and collectively" created a negative impression of LLF. *Amended Complaint* ¶¶ 214-215. The Amended Complaint identifies no specific implication attributable to Alvarez, no facts demonstrating he intended such an implication, and no basis to avoid the privileges and protections discussed above merely by relabeling the claim. Count III therefore adds nothing to Plaintiff's deficient defamation theories and should be dismissed along with the remaining defamation-based claims.

**B. Plaintiff's Tortious Interference claims (Counts V, VI, and IX) fail because the Amended Complaint seeks to impose liability for core attorney functions, rather than actionable interference.**

Counts V, VI, and IX fail for the same reason the defamation-based claims fail: the Amended Complaint seeks to impose tort liability on Alvarez for performing functions that the

Amended Complaint itself repeatedly characterizes as those of legal counsel. As discussed above, Plaintiff alleges that Alvarez investigated grievances against LLF, communicated with current and former clients regarding potential claims, gathered information relevant to those claims, evaluated possible causes of action, and pursued litigation arising from those concerns. Those allegations place Alvarez's conduct squarely within his role as an attorney both investigating and pursuing actual or anticipated litigation and addressing legal issues of significant concern to affected immigrants.

Yet despite repeatedly describing Alvarez in that capacity, the Amended Complaint attempts to transform the same conduct into claims for tortious interference with non-disclosure agreements, client engagement agreements, and prospective business relationships. The pleading fails because it never plausibly alleges that Alvarez improperly procured the breach of any identifiable contract or business relationship through independently wrongful conduct. Instead, the allegations are entirely consistent with client counseling, litigation-related investigation, and ordinary competition among attorneys.

**i. <u>Count V fails as a matter of law because the Amended Complaint does not plausibly allege procurement of any identifiable breach of a non-disclosure agreement.</u>**

Count V of the Amended Complaint must be dismissed because conclusory allegations and speculation are insufficient to state a claim for tortious interference with contract. To state a claim for tortious interference with contract, Plaintiff must plausibly allege all required elements of the tort, including the existence of a contract, an actual breach, procurement of that breach, lack of justification, and resulting damages. *BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, 570 F. Supp. 3d 552, 558-59 (N.D. Ohio 2021). Count V does none of those things. Instead, Count V merely recites the elements of the claim without pleading facts that make those conclusions

plausible. Plaintiff specifically alleges that a former LLF employee declined to speak with Alvarez and that, had she accepted his call, Alvarez would have sought information that, if disclosed, would have violated her non-disclosure agreement. *Amended Complaint* ¶ 165. In other words, Plaintiff expressly alleges a hypothetical future breach that never occurred.

Rather than pleading facts showing that Alvarez procured an actual contractual breach, the Amended Complaint relies on speculation regarding what might have happened had a conversation occurred. Conclusory assertions that, "upon information and belief," Alvarez participated in procuring the breach of "at least one" non-disclosure agreement and convinced "at least one" employee to violate such an agreement also do not cure Count V's pleading deficiencies. *Amended Complaint* ¶¶ 234, 254. The Amended Complaint never identifies the information allegedly disclosed that was prohibited, or any specific act by Alvarez that caused a breach. Such conjecture cannot satisfy Rule 12(b)(6), and Count V must therefore be dismissed.

**ii. <u>Count VI fails as a matter of law for the independent reason that attorney-client engagement agreements are terminable at will, and therefore cannot support the breach required for a tortious interference claim.</u>**

Under Ohio law, a client may discharge an attorney at any time, with or without cause, and an attorney-client engagement is therefore terminable at will. *Fox & Assocs. Co., L.P.A. v. Purdon*, 44 Ohio St. 3d 69, 71 (1989). Consequently, a client's decision to retain different counsel cannot itself constitute the contractual breach on which Plaintiff's tortious-interference theory is premised. *Hillman v. Watkins*, 2023-Ohio-2594, ¶¶ 26, 34-35. Here, the Amended Complaint alleges only the termination of an at-will attorney-client relationship and identifies no specific act by Alvarez converting that decision into an actionable breach. Count VI merely alleges that Alvarez procured the termination of "at least one" engagement letter. *Amended Complaint* ¶ 241. Yet elsewhere, Plaintiff describes clients seeking second opinions, consulting other attorneys, and pursuing

potential claims they believed arose from LLF's representation. *Amended Complaint* ¶¶ 55-65, 173. Those allegations describe clients exercising their unquestioned right to seek alternative counsel, not the procurement of a contractual breach attributable to Alvarez.

**iii. Count VI also fails as a matter of law because the facts alleged establish the privilege of fair competition.**

Ohio has adopted Section 768 of the Section Restatement (Second) of Torts and recognizes the privilege of fair competition. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 179 (Ohio 1999). The fact that a law firm's clients have the right to change their legal representation triggers the availability of the justification of fair-competition justification recognized provided by Section 768. *Id.* Thus, where the alleged interfering party is a competitor and does not employ wrongful means, interference with a contractual relation is not improper. Competition is proper if: (a) the relation between the actor and the competitor concerns a matter involved in the competition, between them, (b) the actor does not employ wrongful means; (c) the actor's conduct does not create or continue an unlawful restraint of trade; and (d) the actor's purpose is at least in part to advance the actor's interest in competing with the other. *Id.*

Here, there is no dispute that Plaintiff's clients had the legal right to terminate Plaintiff's representation at will. Plaintiff has clearly alleged that the Avanti Defendants are its competitors and that they acted to advance their competing interests. *Amended Complaint ¶142.* There are no allegations of an unlawful restraint of trade. Further, there are no allegations that the Avanti Defendants employed wrongful means. Instead, just like Plaintiff, the Amended Complaint repeatedly alleges that the Avanti Defendants engaged in actions consistent with fair competition and lawful attorney advocacy: evaluating grievances, communicating with individuals concerning potential claims, reviewing immigration matters, gathering information relevant to those claims, and ultimately pursuing legal action arising from those concerns. *Amended Complaint* ¶¶ 58-65,

141-145, 163-168, 173. Those allegations do not plausibly establish improper interference with an at-will attorney-client relationship.

**iv. <u>Count IX fails as a matter of law because the Amended Complaint alleges lawful attorney advocacy and competition, not improper interference with an identifiable business relationship.</u>**

Count IX likewise is legally insufficient because Plaintiff neither identifies a specific prospective business relationship nor plausibly alleges improper conduct by Alvarez. A plaintiff must identify a specific prospective relationship or expectancy, the third party involved, and facts showing how the defendant improperly interfered with that relationship. *BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, 570 F. Supp. 3d 552, 559 (N.D. Ohio 2021). Ohio law requires more than a generalized expectation of future business. Just as importantly, the alleged interference must arise from improper conduct rather than lawful competition.

The Amended Complaint does neither. Rather than identifying a particular prospective client or business opportunity, Plaintiff alleges only a generalized expectation of future business from "those seeking immigration legal services." *Amended Complaint* ¶ 267. That allegation describes an entire market, not a cognizable prospective business relationship. Nor does the Amended Complaint identify a single prospective client who would have retained LLF but for any specific act by Alvarez. Instead, Count IX relies entirely on the conclusory assertion that Alvarez interfered with unspecified future business opportunities. *Amended Complaint* ¶¶ 268-270.

More fundamentally, the conduct the Amended Complaint attributes to Alvarez is not improper interference at all. As discussed above, Plaintiff repeatedly alleges that Alvarez communicated with current and former LLF clients, investigated grievances, evaluated potential claims, gathered information relevant to those claims, and pursued litigation arising from those concerns. Those allegations place Alvarez squarely in his role as counsel representing actual and

prospective clients. Imposing tort liability on an attorney for investigating claims, communicating with potential claimants, or evaluating whether litigation should be pursued would chill core functions of the legal profession and effectively expose attorneys to liability whenever they represent clients whose interests are adverse to another law firm. The law does not permit such a result. Consequently, Count IX must be dismissed.

**C. Plaintiff's Civil Conspiracy Claims fail because the Amended Complaint does not plausibly allege any unlawful agreement involving the Avanti Defendants.**

Civil conspiracy is not an independent tort under Ohio law. Rather, it requires a malicious combination of two or more persons to commit an underlying unlawful act and resulting damages caused by that act. *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App. 3d 40, 60 (2009*).* Here, the Amended Complaint repeatedly alleges coordination among individuals investigating grievances and preparing litigation; but allegations of coordinated activity are not allegations of an agreement to commit an unlawful act. Accordingly, where the underlying tort claims fail, the conspiracy claim necessarily fails with them. For the reasons discussed above, the Amended Complaint fails to plausibly allege actionable defamation or tortious interference by the Avanti Defendants. Counts IV and VII therefore fail on that basis alone. But even putting aside the deficiencies in the underlying tort claims, the Amended Complaint never plausibly alleges that Alvarez entered into an unlawful agreement.

Instead, the "agreement" repeatedly described throughout the pleading is an arrangement whereby grievances were reviewed, potential claims were investigated, information was gathered from claimants, and litigation was pursued if viable claims existed. *Amended Complaint* ¶¶ 58-65, 62-65, 141-145, 222-226. Plaintiff's own allegations consistently portray Alvarez not as a participant in a tortious scheme, but as an attorney evaluating client concerns, communicating with prospective claimants, developing legal claims, and pursuing litigation arising from those

concerns. Those allegations describe coordinated legal activity associated with investigating and prosecuting claims—not an agreement to defame LLF or unlawfully interfere with its business relationships.

Furthermore, Count VII suffers from the same defect. Although Plaintiff alleges that Alvarez communicated with former LLF personnel, the Amended Complaint itself ties those communications directly to investigating potential claims and anticipated litigation against LLF. *Amended Complaint* ¶¶ 148, 163-168, 249-254. The pleading never identifies any facts suggesting Alvarez acted with the purpose of causing a contractual violation rather than gathering information relevant to potential legal claims. At most, the Amended Complaint alleges attorney investigation and witness development. Those allegations are insufficient to establish the malicious combination necessary for civil conspiracy liability. Nor can LLF salvage its conspiracy theories by pairing Alvarez with Avanti. The Amended Complaint alleges that Alvarez acted within the course and scope of his relationship with Avanti at all relevant times (*Amended Complaint* ¶¶ 193, 213), making them a single legal actor incapable of forming the agreement necessary to support a conspiracy claim. *MV Cir. Design, Inc. v. Omnicell, Inc.,* 2015 WL 1321743, at *14 (N.D. Ohio Mar. 24, 2015). Accordingly, Counts IV and VII must be dismissed.

**D. Count X of the Amended Complaint must be dismissed because Plaintiff attempts to improperly stretch the Ohio Deceptive Trade Practices Act far beyond its intended role as a commercial advertising statute.**

Count X presents perhaps the clearest example of the disconnect between the conduct alleged and the cause of action asserted. The Ohio Deceptive Trade Practices Act ("ODTPA" or the "Act") is directed at commercial marketplace misconduct, such as false advertising, deceptive commercial promotions, misleading product descriptions, and similar representations made to influence consumer purchasing decisions. *Campfield v. Safelite Group, Inc.,* 91 F.4th 401, 411

(6th Cir. 2024). It is not a vehicle for litigating disputes arising from attorney commentary, legal advocacy, claim investigation, or professional disagreement regarding matters of public concern. While the Amended Complaint improperly seeks to transform criticism of LLF, investigation of potential claims, and commentary regarding immigration filings into a statutory unfair-competition claim, the Act provides no such cause of action.

Here, the Amended Complaint's principal example is Alvarez's Facebook comment expressing his professional view regarding the adequacy of certain immigration filings and the exercise of professional judgment by counsel involved in those matters. *Amended Complaint* ¶¶ 151; 277. Whatever Plaintiff's disagreement with those opinions, they are not commercial advertisements promoting Avanti's services, nor are they the type of marketplace representations the ODTPA was designed to regulate. Plaintiff does not allege that Alvarez disseminated false advertising concerning Avanti, misrepresented the characteristics of his firm's legal services, falsely claimed endorsements, or engaged in any traditional form of deceptive commercial promotion. Rather, Count X merely repackages the same conduct underlying Plaintiff's failed defamation and tortious interference theories.

The Act is narrowly directed at commercial marketplace conduct—not public debate, attorney advocacy, or litigation-related speech. To hold otherwise would transform virtually every public disagreement between attorneys regarding legal strategy, professional competence, or potential misconduct into a statutory deceptive-trade-practices claim. Neither the text nor the purpose of the ODTPA supports such an expansion. Therefore, this Court must dismiss Count X.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants Robert Alvarez and Avanti Law Group, PLLC respectfully request that the Court dismiss all counts asserted against them in the Amended

Complaint. Plaintiff's claims fail as a matter of law and cannot be cured by amendment. Therefore, the Avanti Defendants request that this Motion to Dismiss be granted in full, together with such further relief as the Court deems just and proper.

Respectfully submitted,

FREEMAN MATHIS & GARY, LLP

*/s/ James A. Lacey*
**Cara M. Wright (0084583), Trial Attorney**
**Jeffrey A. Yeager (0068062)**
**James A. Lacey (0105891)**
65 East State Street, Suite 2550
Columbus, OH 43215
Cara.Wright@fmglaw.com
Jeffrey.Yeager@fmglaw.com
James.Lacey@fmglaw.com
*Counsel for Defendants Robert Alvarez and Avanti Law Group, PLLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, a copy of the foregoing *Motion to Dismiss Plaintiff's First Amended Complaint* was filed electronically and accordingly served on counsel of record by operation of the Court's electronic filing system.

*/s/ James A. Lacey*
**James A. Lacey**
*Counsel for Defendants Robert Alvarez and Avanti Law Group, PLLC*