**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

THE LISINSKI LAW FIRM, LLC,

Plaintiff,

v.

CAMILA OVERMYER a/k/a
CAMELIA GUAD MAGANA MADRIGAL,
JAMES BETZOLD,
ROBERT ALVAREZ,
INNA SIMAKOVSKY,
BETZOLD LAW, PLC d/b/a VISA FELIZ,
AVANTI LAW GROUP, PLLC,
SIMAKOVSKY LAW GROUP, LLC, and
JOHN DOES 1–6,

Defendants.

Case No. 2:26-CV-00704-DRC-KAJ

JUDGE DOUGLAS R. COLE

MAGISTRATE JUDGE
KIMBERLY A. JOLSON

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ROBERT ALVAREZ AND AVANTI LAW GROUP, PLLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff The Lisinski Law Firm, LLC ("LLF") submits this opposition in response to Defendants Robert Alvarez ("Alvarez") and Avanti Law Group, PLLC's ("Avanti" and, together, the "Avanti Defendants") Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 38, the "Motion"). For the reasons set forth below, the Motion should be denied in its entirety.

## I. Introduction

The facts and circumstances giving rise to this action are set forth in detail in LLF's Amended Complaint. ECF No. 23 (the "Complaint"). In short, though, and as relevant here, this action stems from the Avanti Defendants' coordinated campaign to defame LLF and tortiously interfere with its business and contractual relationships, including by violation of Ohio's Deceptive Trade Practices Act ("ODTPA") to enrich themselves at LLF's expense. Specifically, the Avanti Defendants conspired with social media influencer Camila Overmyer and attorneys James Betzold

and Inna Simakovsky, and their respective law firms (together with the Avanti Defendants, the "Defendants"), to chastise LLF's business model to its clients and prospective clients so that those clients would instead hire the Avanti Defendants, Betzold, and Simakovsky.

Despite the detailed allegations in the Complaint, the Avanti Defendants contend the Complaint fails to state a claim against them. The Avanti Defendants are wrong, and their Motion asks this Court to do two things the law does not permit at the pleading stage. *First*, the Avanti Defendants seek to cloak their tortious conduct in the garb of attorney advocacy. But publishing defamatory accusations of fraud about LLF to hundreds of thousands of social-media viewers does not fall within the scope of protected attorney activity.

*Second*, the Motion improperly demands evidentiary proof and resolution of factual disputes that have no place at the pleading stage. The Avanti Defendants fault LLF for not delineating every detail of the conspiracy and identifying each breached contract with precision. *See* Mot. at 11–12. But that is not the law. To survive dismissal, a complaint need only allege facts that, accepted as true, state a claim to relief that is plausible on its face—not prove the case at the outset. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint satisfies this standard.

The Complaint sets forth a detailed and plausible account of the Defendants' coordinated scheme to defame LLF, siphon its clients, and enrich the Defendants beyond ordinary market competition. It alleges a specific conspiracy, including a WhatsApp group used to coordinate the effort and a sustained campaign of public accusations disseminated to hundreds of thousands of viewers, all aimed at steering LLF's clients to the Avanti Defendants' and other attorney defendants' own practices. *See, e.g.*, Am. Compl. ¶¶ 42, 51, 143, 144. The pleading identifies numerous false and defamatory statements attributable to Alvarez. *Id.*, ¶¶ 45, 46, 48-51, 151. It

further alleges Alvarez directly contacted over 200 LLF clients, including at least four current clients, and urged conduct that would breach non-disclosure agreements. *Id.*, ¶ 173. It alleges concrete resulting harm to LLF, including more than 475 concerned client calls referencing Defendants' statements and the loss of clients who departed LLF expressly because of Defendants' conduct. *Id.*

The Motion asks the Court to disregard well-pled factual allegations, draw inferences against LLF, and resolve the merits before discovery has even begun. The Motion should be denied in full, and this case should proceed to discovery.

## II. Legal Standard

A motion to dismiss for failure to state a claim must be denied where a complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 793-94 (S.D. Ohio 2024) (citation omitted). When determining whether the allegations plausibly state a claim for relief, a Court must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019). Plausibility "is not akin to a 'probability requirement,'" but simply "asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft*, 556 U.S. at 678. Thus, dismissal is inappropriate where the complaint's factual allegations, accepted as true, "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III. Argument

### A. The Avanti Defendant's Defamation Arguments Improperly Seek Resolution of Merits Issues at the Pleading Stage.

The Avanti Defendants' attacks on the Complaint's defamation claims (Counts I, III, and IV) improperly ask the Court to resolve fact-intensive defenses and merits questions on a Rule 12(b)(6) motion, before discovery even has begun. The Avanti Defendants invoke the common-interest privilege, LLF's purported status as a limited-purpose public-figure, and absolute litigation privilege as though each of these defenses were established by the face of the Complaint. They are not, and the Motion therefore must be denied.

#### 1. The Common-Interest Privilege Has No Application Here.

The common-interest privilege is a qualified affirmative defense applicable if a defendant establishes (1) the publication was made in good faith, (2) there was an interest to be upheld, (3) the publication was limited in scope to that interest, (4) the publication was made on the proper occasion, and (5) the publication was done in a proper manner and to the proper parties only. *Hilty v. Donnellon McCarthy Enters., Inc.*, 281 N.E.3d 333, 343 (Ohio Ct. App. 1st Distr. 2026); *Tharp v. Hillcrest Baptist Church of Columbus*, 204 N.E.3d 709, 724 (Ohio Cr. App. 10th Distr. 2022). Ohio's courts have recognized a common interest to be upheld exists where parties share a common business or church interest, or among fraternal groups. *Hilty*, 281 N.E.3d at 343; *Tharp*, 204 N.E.3d at n.1. Critically, the privilege exists when the defendant has, or believes he has, a duty to make a communication. *See A & B–Abell Elevator Co. v. Columbus/Central Ohio Building & Construction Trades Council*, 651 N.E.2d 1283, 1290 (Ohio 1995). Even where a qualified privilege exists, "it does not absolutely immunize statements from liability, but instead subjects the party claiming defamation to a heightened proof requirement" to "show that the subject communication was made with actual malice, meaning that the speaker knew it was false or

recklessly disregarded the truth." *Hilty*, 281 N.E.3d at 343.

Nothing in the four corners of the Complaint establishes the Avanti Defendants are entitled to raise the qualified affirmative defense of common interest. To the contrary, the allegations in the Complaint belie the elements necessary to establish the common interest defense and, regardless, the privilege does not apply because the Complaint alleges the Avanti Defendants acted with actual malice.

The Complaint alleges Alvarez, acting on behalf of and to enrich himself and the Avanti Defendants, broadcast accusations of fraud to "hundreds of thousands of viewers" and contacted "over 200 LLF clients," including current clients, as part of a coordinated effort to damage LLF and divert its clients to himself and his firm. Am. Compl. ¶¶ 169, 173. Nothing in the Complaint suggests the Avanti Defendants acted in good faith; they acted to enrich themselves. *Id.*, ¶¶ 65, 67, 145, 223, 226. Nor do any of the allegations suggest the Avanti Defendants had an interest to uphold, much less that the Avanti Defendants' defamatory statements were limited to upholding that interest. Rather, the Avanti Defendants' defamatory statements were false accusations designed to tear down a competitor, not to advance any cognizable interest. *Id.*, ¶¶ 142, 223, 226. Likewise, the Avanati Defendants' statements were aimed at the public at large, not limited to proper parties or even the co-defendants. *Id.*, ¶¶ 169, 194. Needless to say, the Avanti Defendants have no shared interest with the public at large, and certainly the Complaint does not allege one. *See Anderson v. WBNS-TV, Inc.*, 225 N.E.3d 755, 772 (Ohio Ct. App. 10th Distr. 2024) (qualified privilege unavailable where statements made to public at large "were not reasonably calculated to protect or further the shared interest"); *Hilty*, 281 N.E.3d at 345 (rejecting privilege where defendant's disparaging statements about competitor did not further mutual business interest).

The Avanti Defendants' statements accused LLF of fraud and misconduct and were

designed to harm LLF and steer its clients towards the Avanti Defendants' own practice, not to advance any shared legal or business interest. Am. Compl. ¶¶ 3, 4, 24, 173, 194. Public accusations of fraud disseminated to a vast social-media audience fall outside the narrow, interest-based communications the privilege protects. *See Anderson*, 225 N.E.3d 755 (holding, despite shared public interest in law enforcement, qualified privilege unavailable to broadcaster who, rather than accurately relaying information provided by police, "embellished and materially deviated" from that information and "of its own accord, falsely accused" plaintiffs of committing violent crime). Whatever public interest may exist in immigration issues or potential legal claims, it does not shield the Avanti Defendants from responsibility for their far-reaching, false accusations that LLF committed fraud. Put simply, the common-interest privilege does not protect defamatory accusations of criminal or unethical conduct disseminated to hundreds of thousands of online viewers who lack any association with the Avanti Defendants.

Further, "even assuming that a qualified privilege attached to the communications, . . . the [C]omplaint pled that the [Avanti Defendants] acted with 'malice.'" *Mangelluzzi v. Morley*, 40 N.E.3d 588, 597 (Ohio Ct. App. 8th Distr. 2015) (citations omitted); *see, e.g.,* Am. Compl. ¶¶ 199, 202, 217, 219, 223, 250. The Avanti Defendants are not entitled to protection of the qualified privilege for their malicious statements attacking LLF's business model without any reasonable basis to do so. "Because 'qualified privilege' only affects the burden of proof related to establishing malice and does not change the actionable quality of the defamation claim, it cannot be used in the instant case as a basis to dismiss the [C]omplaint." *Gallagher v. Stonegate Mtge. Corp.*, No. 99684, 2013 WL 6858040, at *5 (Ohio Ct. App. 8th Distr. Dec. 26, 2013).

At best, the Avanti Defendants' assertion of the qualified affirmative defense is premature, as the defense clearly is not apparent from the face of the Complaint. The Complaint does not

establish good faith, a proper occasion or manner, or publication only to proper parties. To the contrary, it alleges mass dissemination, economic motive, and malicious, targeted efforts to poach LLF's clients. *See, e.g.,* Am. Compl. ¶¶ 3, 4, 24, 169, 173, 194. These allegations must be taken as true at this stage and preclude dismissal of Counts I, III, and IV.

**2. LLF Is Not a Limited-Purpose Public Figure and, Even If It Is, the Complaint Pleads Malice.**

To determine whether a plaintiff is a limited-purpose public figure, the Court must ask whether a public controversy exists and, if so, whether the plaintiff voluntarily injected itself into that controversy. *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014)[1] (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). Neither requirement is satisfied here.

First, the Complaint does not establish a public controversy within the meaning of *Gertz*. A public controversy is "a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Cooley*, 759 F.3d at 529 (quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980)). While the Avanti Defendants broadcast their accusations about LLF to a large public audience, the dispute alleged here is not a broad, preexisting public debate over immigration law or humanitarian petitions. The Complaint arises from the Avanti Defendants' targeted campaign to accuse LLF of fraud and thereby divert its clients to the Avanti Defendants. In other words, the Complaint alleges a private commercial attack that Avanti Defendants chose to publicize, rather than a preexisting public controversy into which LLF voluntarily entered.

Second, even if some public controversy exists regarding immigration, the Complaint does

[1] While the Sixth Circuit applied Michigan law for other aspects of its analysis, the determination of whether a person is a public figure is question of federal law. *See, e.g.*, *Ralston v. Garabedian*, 676 F. Supp. 3d 325, 349 n.157 (E.D. Penn. 2021).

not establish that LLF voluntarily injected itself into it. In assessing whether a plaintiff assumed a role in a public controversy, courts consider "first, the extent to which participation in the controversy is voluntary; second, the extent to which there is access to channels of effective communication in order to counteract false statements; and third, the prominence of the role played in the public controversy." *Clark v. ABC, Inc.*, 684 F.2d 1208, 1218 (6th Cir. 1982). These factors cut against limited-purpose public-figure status here.

The Avanti Defendants attempt to define the alleged controversy at a high level of generality by pointing to LLF's size, social-media reach, and public discussion of immigration issues. Mot. at 7. However, the Complaint alleges that LLF was the target of the Avanti Defendants' accusations, not a voluntary participant in a public dispute. Am. Compl. ¶¶ 88, 133. LLF's advocacy for its clients seeking immigration benefits is not the same as voluntarily entering a controversy regarding immigration issues writ large. Nor does LLF's social-media presence establish meaningful access to channels of effective communication sufficient to counter the Avanti Defendants' campaign, particularly where the Defendants used those same social-media platforms to amplify their accusations on a massive scale. Am. Compl. ¶ 24. On the facts alleged, LLF was the object of the Avanti Defendants' attack, not a party that voluntarily assumed a prominent role in a public controversy. Moreover, the Avanti Defendants' attacks on LLF chastise LLF not for taking a position on immigration reform or some other topic of public concern, but for *advocating for its clients*. LLF's relationships with its clients are not a public controversy or matter of public concern.

Regardless, and as discussed in Section III.A.1., *supra*, LLF has pled the Avanti Defendants acted with actual malice in disparaging LLF. *See, e.g.*, Am. Compl., ¶ 223 ("This agreement or common understanding was done maliciously, as Defendants and Doe 6 knew that

the defamatory statements they made were false and were made to enrich themselves and to damage LLF, a competitor to Betzold, Alvarez, and Simakovsky's immigration legal practice."); *See also Id.*, ¶¶ 65, 67, 142, 145, 199, 217. Accordingly, even if LLF is a limited-purpose public figure (it is not), because the Avanti Defendants acted maliciously in defaming LLF, Counts I, III, and IV should not be dismissed. *See Ehrlich v. Kovack*, 135 F. Supp. 3d 638 (N.D. Ohio 2015) (denying in part defendant's motion for judgment on pleadings, which employs same legal standard as motion to dismiss, because "the Complaint alleges [defendant]'s statements 'were made with knowledge that they were false, or in reckless disregard of the truth.'").

**3. The Litigation Privilege Does Not Apply.**

Ohio's litigation privilege is designed to protect "the integrity of the judicial process" and the primary purpose of judicial proceedings: "ascertain[ing] the truth." *Willitzer v. McCloud*, 6 Ohio St.3d 447, 449 (1983). Ordinarily, the privilege is limited to statements made "in a written pleading or brief, or in an oral statement to a judge or jury in open court" and that bear "some reasonable relation to the judicial proceeding in which it appears." *Morrison v. Gugle*, 755 N.E.2d 404, 416 (Ohio Ct. App. 2001) (citation omitted). However, the privilege may extend, "with strict limitations, to extrajudicial communications." *Pincus v. Pincus*, 127 N.E.3d 393, 400 (Ohio Ct. App. 8th Distr. 2018) (citation omitted). For Ohio's litigation privilege to apply, the statement must be "(1) made in the regular course of preparing for and conducting a proceeding that is contemplated in good faith and under serious consideration, (2) pertinent to the relief sought, and (3) published only to those directly interested in the proceeding." *Id.* at 400–01 (citation omitted). The privilege "does not give a person *carte blanche* to defame another on the mere condition that a judicial proceeding is mentioned in, or somehow connected to, the defamatory statement." *Morrison*, 755 N.E.2d at 416 (quotation marks and citation omitted) (emphasis in original).

Here, the Avanti Defendants' statements do not fall under the cloak of Ohio's litigation privilege. LLF's defamation claims against the Avanti Defendants arise from statements ***on social media*** in which the Avanti Defendants stated (i) LLF's attorneys' fees and submitting a routine FOIA request could be an indicia of ***fraud*** (Am. Compl. ¶¶ 45-46); (ii) LLF claims nothing more than "stress in [a] marriage" is sufficient to qualify for relief under the Violence Against Women Act (*id.*, ¶ 48); (iii) no attorney reviewed clients' applications for immigration benefits or declarations supporting those applications (*id.*, ¶ 151); and (iv) no competent immigration attorney would have approved such filings (*id.*); and (v) when clients provide an electronic signature to their attorneys, those attorneys use that signature on other documents without the clients' knowledge (*id.*, ¶ 157, n.29). None of these statements could plausibly have been made in the course of preparing for a proceeding, nor are they pertinent to any relief the Avanti Defendants could be seeking for their clients.

Nor can it be said that the Avanti Defendants' falsehoods—published on social media for all to see—were published "only to those directly interested" in a judicial proceeding. *See Pincus*, 127 N.E.3d at 400-01; *Direct Interest*, Black's Law Dictionary (12th ed. 2024) ("A legal share in something"). Social-media content is, by design, disseminated to followers and the general public, including countless persons with no direct interest in any pending or contemplated lawsuit. The Alvarez Defendants' comments on Overmyer's platform were broadcast to hundreds of thousands of viewers, the overwhelming majority of whom had no connection to the Class Action or any other proceeding. Because the privilege applies only to statements published "only to those directly interested in the proceeding," it does not extend to accusations broadcast to the internet at large. *Pincus*, 127 N.E.3d at 401.

The cases the Avanti Defendants cite to support application of the litigation privilege are

inapposite, as none involved remarks broadly disseminated via social media to the public at large. In *Hecht v. Levin*, 66 Ohio St.3d 458 (1993), the court extended a limited application of the litigation privilege to statements made in a grievance filed with a certified grievance committee of a bar association. Likewise, in *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497 (1994), the court applied the litigation privilege only to affidavits, statements, or other information reporting the actual or possible commission of a crime provided to a prosecuting attorney. In *Surace v. Wuliger*, 25 Ohio St. 3d 229, 233-35 (1986), the court similarly held that under the doctrine of absolute privilege a defamatory statement made in a written pleading does not state a cause of action where the statement bears some reasonable relation to the judicial proceeding in which it appears. Accordingly, these cases do not support dismissal of Counts I, III, or IV.

Put simply, protected advocacy takes place in courtrooms and filings, not on TikTok and in Facebook comments. The litigation privilege has no application to the Avanti Defendants' defamatory statements, and the Motion should be denied as to Counts I, III, and IV.

**4. The Complaint Plausibly Pleads Defamation and Conspiracy to Defame Against the Avanti Defendants**

"To determine whether a statement constitutes protected opinion or actionable fact, courts consider the totality of the circumstances, including factors such as: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared." *Bentkowski v. Scene Magazine*, 637 F.3d 689, 693–94 (6th Cir. 2011) (quotations omitted) (citing *Vail v. The Plain Dealer Publ'g Co.*, 649 N.E.2d 182, 185 (Ohio 1995)). Under the first factor, courts consider "whether the allegedly defamatory statement has a precise meaning and thus is likely to give rise to clear factual implications." *Id.* at 694. A statement is verifiable where the speaker implies "first-hand knowledge that substantiates the opinions he asserts," because in that circumstance "the expression of opinion becomes as

damaging as an assertion of fact." *Mehta v. Ohio Univ.*, 958 N.E.2d 598, 609 (Ohio Ct. App. 2011) (quotation omitted). The context matters because some forms of speech signal opinion, while others convey factual assertions. *Id.* at 610. The Complaint identifies numerous specific false statements attributable to Alvarez stating plausible defamation claims.

***i. Statements About LLF's Filings and Professional Competence***

The Complaint alleges Alvarez publicly stated that no "competent immigration attorney would have signed off on" LLF's clients' applications for immigration benefits, and that no attorney reviewed those applications or the declarations supporting them. Am. Compl. ¶ 151. The meaning of that statement is precise: LLF's filings were so deficient that no minimally competent immigration attorney would have approved them, or ever even looked at them. *See Bentkowski*, 637 F.3d at 694 (accusations of disciplinary or professional misconduct are typical examples of actionable language). The assertion also is verifiable. Whether LLF's filings complied with applicable legal standards and whether competent immigration attorneys could and did approve them are matters capable of proof through testimony and expert evidence. The context reinforces that conclusion. Alvarez was speaking as an attorney to an audience of immigrants and prospective clients about specific immigration practices and filings. In that setting, a reasonable viewer would understand his statements as factual assertions about LLF's legal work, not mere opinion.

***ii. Statements Accusing LLF of Fraud and Criminal Conduct***

LLF also alleges that Alvarez accused LLF of fraud, including by stating: "It's a big surprise that they put at risk not only their licenses, but also their freedom." Am. Compl. ¶ 51. This statement carries a clear factual implication that LLF's attorneys engaged in conduct exposing them to criminal liability. Accusations of fraud and criminal conduct are paradigmatic examples of actionable defamation because they convey a precise meaning and are capable of verification.

*See Bentkowski*, 637 F.3d at 694. The general and broader context confirm these were factual assertions. Alvarez was addressing immigrants seeking advice about their legal status and the risks associated with their immigration filings. A reasonable listener would understand statements about fraud, criminal exposure, and attorney misconduct in that setting as factual claims.

***iii. Statements About FOIA Requests and Billing Practices***

The Complaint further alleges that Alvarez claimed attorneys like LLF used routine FOIA requests merely to "buy[] time" and "bill additionally." Am. Compl. ¶ 46. That statement is likewise actionable because it specifically accuses LLF of charging clients for unnecessary legal work to prolong representation and generate fees. The accusation is verifiable at a later stage through objective evidence, including billing records, case files, and accepted immigration-practice standards (which include submitting FOIA requests as LLF did). Here too, the context matters. Alvarez made the statement while discussing immigration representation and the handling of client matters. A reasonable audience would understand such a statement as a factual accusation that LLF was exploiting clients financially, rather than figurative criticism.

***iv. The Complaint Does Not Rely on Impermissible Group Pleading in Its Defamation Claims***

The Avanti Defendants argue the Complaint relies on improper group pleading. Mot. at 9–10. However, the Complaint attributes specific statements and conduct to Alvarez throughout, including a Facebook comment, livestream appearances, statements about criminal liability, the FOIA accusation, and the accusation that LLF engaged in fraud. Am. Compl. ¶¶ 46, 51, 151. Those allegations plead actionable conduct by Alvarez personally and on Avanti's behalf. LLF is not required at the pleading stage to catalog every defamatory statement with trial-level detail. Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). LLF identifies multiple false

statements, attributing them to Alvarez, alleging their falsity, and pleading resulting harm.

Taken as a whole, the Complaint plausibly alleges Alvarez made specific, verifiable, and defamatory factual assertions accusing LLF of fraud, criminal conduct, unethical billing, and professional incompetence. Those maliciously-published statements are not protected by the qualified common interest privilege, LLF's purported status as a limited-purpose public figure (it is not one), or the litigation privilege. Separately, these defenses certainly cannot be found to apply at the pleadings stage, where the Complaint's allegations must be taken as true and viewed in LLF's favor. Accordingly, the Motion should be denied as to Counts I, III, and IV.

**B. <u>The Complaint Plausibly States Tortious Interference Claims</u>**

The Avanti Defendants seem to think Alvarez's status as an attorney insulates him from liability for his tortious conduct, namely, for his efforts to tortiously interfere with LLF's contracts. Mot. at 10-11. Not so. If anything, the Avanti Defendants' conduct should be more closely scrutinized given the appropriately high bar to which attorneys are held.

The Avanti Defendants cannot defeat Counts V, VI, and IX by repackaging their misconduct as "core attorney functions." Ohio law does not confer immunity simply because tortious conduct was carried out by an attorney or occurred alongside legal representation. Rather, lawyers are required to respect the law, and contracts, even when advocating for their clients. *See, e.g.,* Ohio R. Prof. Conduct 4.4(a) ("In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, harass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.").

The Complaint alleges that Alvarez used wrongful means, including defamation, to interfere with LLF's employee non-disclosure agreements, client engagement letters, and business relationships. Am. Compl. ¶¶ 21–67, 128–157, 168–175, 241. The Complaint further alleges that

Alvarez publicly acknowledged that LLF's current and former employees are bound by non-disclosure agreements, yet Alvarez ***still*** invited them to divulge confidential information and encouraged them to violate those obligations. Am. Compl. ¶¶ 39, 163–66, 68. Conduct violating LLF's legal and contractual rights is not protected advocacy.

**1. Count V Plausibly Alleges Alvarez's Procurement of Breaches of LLF's Non-Disclosure Agreements.**

A plaintiff states a tortious interference claim by alleging: (1) a contract, (2) the defendant's knowledge of it, (3) intentional procurement of its breach, (4) lack of justification, and (5) damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 176 (1999).

The Complaint alleges that LLF entered into non-disclosure agreements with current and former team members, that Alvarez knew of those agreements, and that he intentionally sought to induce their breach by soliciting confidential information from individuals bound by them. Am. Compl. ¶¶ 39, 163–66, 68, 232–34. Indeed, the Complaint alleges that Alvarez contacted a former LLF team member and pressed her to disclose information covered by her non-disclosure agreement. *Id.*, ¶¶ 163–65. And it alleges that Defendants, including Alvarez, in fact procured the breach of at least one non-disclosure agreement. *Id.*, ¶¶ 168, 234, 254.

Alvarez points to Paragraph 165, which alleges that one former team member declined his call, to argue no breach occurred. However, Paragraph 165 concerns only ***one*** contact; the Complaint describes more. It alleges Alvarez solicited confidential information from individuals bound by non-disclosure agreements, and that at least one breach occurred. Read as a whole and with its allegations accepted as true, the Complaint plausibly and plainly alleges both attempted interference and a resulting breach. *See id.*, ¶¶ 168, 234, 254.

At the pleading stage, the Complaint need not identify the precise information disclosed or the full details of the Avanti Defendants' communications. Where, as here, key facts are "only

within the opposing party's knowledge," pleading on the basis of presently available information is proper. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988). The information disclosed and the full scope of Alvarez's efforts to obtain confidential information are matters for discovery. Accordingly, the Motion should be denied as to Count V.

**2. The At-Will Nature of LLF's Client Engagements Does Not Bar Count VI, and Any Privilege of Fair Competition Fails Because the Complaint Alleges Wrongful Means.**

Alvarez argues that Count VI fails because attorney-client engagements are terminable at will. While Ohio recognizes the privilege of fair competition in the legal profession, the at-will nature of an attorney-client relationship is not what determines whether interference with such a relationship is actionable. *See Fred Siegel Co., L.P.A.*, 85 Ohio St.3d at 180. Ohio courts permit tortious-interference claims involving at-will relationships, including attorney-client relationships, when, as here, the defendant employs improper means. *Id.*

That is what LLF alleges here. LLF alleges the Avanti Defendants carried out and participated in a coordinated campaign of defamation and deception to divert LLF's clients to the Avanti Defendants' own practice for their financial benefit. Am. Compl. ¶¶ 21–67, 128–157, 169–175. LLF further alleges Alvarez contacted current LLF clients while knowing they were represented by LLF in an effort to solicit them, which is violative of the rules of professional responsibility. Am. Compl. ¶ 173; Ohio R. Prof. Conduct 4.2 ("[A] lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter . . ."). Conduct of that kind falls outside any privilege of fair competition and states a claim for tortious interference. Wrongful competition is not privileged, and those allegations preclude dismissal of Count VI on that basis.

**3. Count IX Plausibly Alleges Tortious Interference with Prospective Business**

**Relationships.**

Tortious interference with a prospective business relationship occurs when "a person, without privilege, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another." *Maddox Def., Inc. v. GeoData Sys. Mgmt., Inc.*, 135 N.E.3d 1212, 1222 (Ohio Ct. App. 8th Distr. 2019). To state such a claim, a plaintiff must demonstrate the existence of the prospect of a business relationship; that the defendant knew of the plaintiff's prospective relationship; that the defendant intentionally and materially interfered with the plaintiff's prospective relationship without justification; and caused plaintiff to suffer damages. *Chrvala v. Borden, Inc.*, 14 F. Supp. 2d 1013, 1023 (S.D. Ohio 1998).

The Complaint plausibly alleges each element of this claim. It alleges LLF had ongoing and prospective business relationships with individuals seeking legal services, including prospective clients considering whether to retain LLF and existing clients deciding whether to continue their matters with LLF. Am. Compl. ¶¶ 267–70. It further alleges the Avanti Defendants knew of those relationships and intentionally interfered with them by publicly accusing LLF of fraud and misconduct, targeting LLF's clients and potential clients, and using other wrongful means to drive business away from LLF and to the Avanti Defendants' own practice. *Id.*, ¶¶ 173–75, 267–70 (including specific comments and contacts from LLF's client base raising concerns because of the Defendants' wrongdoing). The Complaint's allegations also plausibly establish lack of justification, because competition through defamation, deception, and improper client solicitation is not justified nor proper; that Alvarez is a lawyer does not mean his wrongdoing is justified. *See supra*, § III.B. The Complaint alleges resulting harm to LLF, including lost business and damage to its client relationships. *See, e.g.*, Am. Compl. ¶¶ 169–75. At this stage, LLF is not required to identify every specific prospective client it lost—this is a matter for discovery. LLF's allegations of prospective business relationships about which the Avanti Defendants were aware

and a reasonable expectancy of continued client relationships are sufficient.

**C. LLF Sufficiently Pleads its Conspiracy Claims.**

Under Ohio law, a civil conspiracy claim requires "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 538 (6th Cir. 2000). The Avanti Defendants challenge the fourth element, arguing that because LLF's tort claims fail, its conspiracy claims (Counts IV and VII) likewise fail. Mot. at 15. As set forth above, though, each of LLF's tort claims against the Avanti Defendants are viable and sufficient to withstand a motion to dismiss. *See* § III.A-B, *supra*. Accordingly, the Complaint satisfies the fourth element required to plead a conspiracy claim.

The Avanti Defendants also challenge whether the Complaint pleads a malicious combination, once again suggesting the Avanti Defendants are insulated from liability because Alvarez is a lawyer. Mot. at 15-16. As explained in Section III.B., *supra*, this argument is misguided at best. Lawyers still are liable for their wrongdoing; disparaging a competitor on social media is not protected advocacy. Further, pleading a malicious combination "does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Aetna*, 219 F.3d at 538. "[A]ll that must be shown is that the alleged coconspirator shared in the general conspiratorial objective." *Id.* In proving the agreement, "the evidence of an agreement does not have to be direct. Rather, it is sufficient if the evidence supports a reasonable inference that an agreement was made." *S&T Bank, Inc. v. Advance Merch. Servs., LLC*, 255 N.E.3d 164, 180 (Ohio Ct. App. 1st Distr. 2024).

Here, LLF has pleaded sufficient facts at the motion to dismiss stage to plausibly allege a civil conspiracy to defame LLF and tortiously interfere with its contracts. LLF alleges, among

other things set forth in Sections III.A-B. *supra*, that the Avanti Defendants, together with the other named Defendants, "created a WhatsApp group to coordinate their campaign against LLF . . . and all seven named Defendants use it as a tool to systematically expand their coordinated effort to destroy LLF's reputation and convince LLF's clients that LLF is engaged in fraud." Am. Compl. ¶ 42. It further alleges that Simakovsky sent a former LLF attorney an email accusing LLF of spreading "misinformation/false promises," while copying Alvarez, thereby supporting the inference that Alvarez was participating in the broader coordinated effort.[2] *Id.*, ¶ 148; *see also id.*, ¶¶ 158-68, 225. The Avanti Defendants also stand to profit from defaming LLF, thereby supplying a motive to engage in the conspiracies. *See, e.g., id.*, ¶¶ 65, 66, 68. Taken together, these allegations plausibly support the existence of a shared plan to defame LLF and interfere with its contractual and business relationships. Therefore, the Motion should be denied as to Counts IV and VII.

**D. LLF States a Claim under the ODTPA.**

The ODTPA prohibits, in part, any person who "in the course of the person's business, vocation, or occupation . . . [d]isparages the goods, services, or business of another by false representation of fact[.]" Ohio Rev. Code Ann. § 4165.02(A)(10). "Courts 'evaluate an [ODTPA] claim under the same analysis as that used for Lanham Act claims.'" *The Hillman Grp., Inc. v. Minute Key, Inc.*, 317 F. Supp. 3d 961, 968 (S.D. Ohio 2018) (quoting *Papa Ads, LLC v. Gatehouse Media, Inc.*, 485 Fed. App'x 53, 55 (6th Cir. 2012)). To plead a commercial disparagement claim under the Lanham Act, a plaintiff must allege:

> (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely

---

[2] Defendants' single-actor argument misses the point. LLF does not allege that Alvarez and Avanti conspired only with each other. It alleges that they joined a broader conspiracy with the other named Defendants. Am. Compl. ¶¶ 36, 42, 148. Thus, even where Alvarez acted within the scope of his relationship with Avanti, that does not defeat LLF's conspiracy claims.

> influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 725 (N.D. Ohio 2009).

As discussed in Section III.A.4. above, the Avanti Defendants made defamatory statements regarding LLF and the services it provides. *See supra* § III.A.4. Those statements are material: they relate to LLF's competency to provide legal services, which is the very core of LLF's business, and they tended to deceive hundreds—if not thousands—of potential and actual consumers of LLF's legal services. Am. Compl., ¶¶ 169-75 (describing consumers' reaction to the defamation campaign, including calls and other outreach to LLF raising concerns about the defamatory statements). Finally, these online statements harmed LLF. *Id.* The Complaint clearly pleads a violation of the ODTPA.

The Avanti Defendants quibble with whether their defamatory statements were advertisements, but that is not the relevant inquiry. *See Allied*, 649 F. Supp. 2d at 725. Regardless, the Complaint alleges the statements were advertisements disseminated for the Avanti Defendants' commercial gain. *See, e.g.,* Am. Compl. ¶¶ 11, 23, 65, 68, 142. Ultimately, the Complaint alleges that the Avanti Defendants, in the course of their business, made false representations disparaging LLF's services in order to divert clients and business to themselves. That states a claim under the ODTPA, and the Motion should be denied as to Count X.

## IV. Conclusion

Lawyers are not exempt from ordinary tort principles. Although the law affords limited protection to certain litigation-related conduct, those protections do not reach the conduct alleged in the Complaint. Accepting LLF's well-pleaded allegations as true, as the Court must at this stage, LLF has stated plausible claims for relief against the Avanti Defendants.

WHEREFORE, LLF respectfully requests that the Court enter an Order (a) denying the Motion; and (b) granting LLF such other and further relief as the Court deems proper.


Jason P. Mehta (*pro hac vice*)
Primary email: jmehta@foley.com
Secondary email: jwilliams@foley.com
Heather A. Lee (*pro hac vice*)
Primary email: hlee@foley.com
Secondary email: jwilliams@foley.com
**FOLEY & LARDNER LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Phone: (813) 229-2300

Olivia Singelmann (*pro hac vice* pending)
Primary email: osingelmann@foley.com
**FOLEY & LARDNER LLP**
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Phone: (206) 672-5300

*/s/ David J. Butler*
David J. Butler (0068455), Trial Attorney
Email: dbutler@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
41 S. High Street, Suite 1800
Columbus, Ohio 43215-4213
Phone: (614) 221-2838

David M. DeVillers (0059456)
Email: David.DeVillers@btlaw.com
**BARNES & THORNBURG LLP**
41 S. High St. Suite 3300
Columbus, Ohio 43215
Phone: (614) 628-0096

*Counsel for Plaintiff The Lisinski Law Firm, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 12, 2026, a true and correct copy of the foregoing was electronically filed through the Florida e-filing Portal and served on Defendant Camila Overmyer a/k/a Camelia Guad Magana Madrigal, *pro se*, via (a) United States Mail to 4020 Eagle Drive, Gosport, IN 47433; and (b) electronic mail to camilaovermyer@icloud.com.

*/s/ David J. Butler*
Attorney