**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

THE LISINSKI LAW FIRM, LLC,

Plaintiff,

v.

CAMILA OVERMYER a/k/a
CAMELIA GUAD MAGANA MADRIGAL,
JAMES BETZOLD,
ROBERT ALVAREZ,
INNA SIMAKOVSKY,
BETZOLD LAW, PLC d/b/a VISA FELIZ,
AVANTI LAW GROUP, PLLC,
SIMAKOVSKY LAW GROUP, LLC, and
JOHN DOES 1–6,

Defendants.

Case No. 2:26-CV-00704-DRC-KAJ

JUDGE DOUGLAS R. COLE

MAGISTRATE JUDGE
KIMBERLY A. JOLSON

**PLAINTIFF'S OPPOSITION TO DEFENDANTS INNA SIMAKOVSKY AND SIMAKOVSKY LAW GROUP, LLC'S MOTION TO DISMISS**

Plaintiff The Lisinski Law Firm, LLC ("LLF") submits this opposition in response to Defendants Inna Simakovsky ("Simakovsky") and Simakovsky Law Group's ("Simakovsky Law" and, together, the "Simakovsky Defendants") Motion to Dismiss (ECF No. 36, the "Motion"). For the reasons set forth below, the Motion should be denied or, if it is granted, LLF should receive leave to amend its Amended Complaint (ECF No. 23, the "Complaint").

## I. Introduction

The Simakovsky Defendants participated in a coordinated campaign to defame, tortiously interfere with, and otherwise damage LLF for their own financial benefit at the expense of LLF and, more importantly, the persons the Simakovsky Defendants purportedly seek to protect. The Simakovsky Defendants have made defamatory statements about LLF to LLF's clients and the general public; pressured former LLF attorneys to violate their non-disclosure agreements with LLF; conspired with certain other co-defendants to commit the same; and engaged in unfair competition by disparaging LLF's services. Because of the harm the Simakovsky Defendants have inflicted upon LLF, LLF brings claims for defamation, civil conspiracy to defame and to tortiously interfere with contract, tortious interference with contract and prospective business relationships, and Ohio's Deceptive Trade Practices Act (the "ODTPA").

In seeking dismissal, the Simakovsky Defendants rely upon facts not alleged in or, even worse, contradicted by LLF's Complaint. While the Simakovsky Defendants may view the facts differently, at this early stage the Court must construe the Complaint in the light most favorable to LLF and accept LLF's allegations as true. The Simakovsky Defendants also assert numerous faulty legal positions. *First*, the Simakovsky Defendants take the extraordinary position that third parties always lack standing to sue lawyers for their tortious conduct, even though Simakovsky's tortious conduct was untethered to her representation of any client. *Second*, the Simakovsky Defendants claim their wrongdoing is protected by Ohio's litigation privilege even though their statements

were, again, untethered to any judicial proceeding. *Third*, the Simakovsky Defendants claim Ohio's inapplicable qualified privilege is a basis for dismissal when, even if it were applicable, it would simply alter LLF's burden of proof. *Fourth*, the Simakovsky Defendants assert that LLF is a limited-purpose public figure; it is not. *Fifth*, *at the pleadings stage* and based purely on speculation, the Simakovsky Defendants ask the Court to declare LLF's non-disclosure agreements void as against public policy – without the agreements even being before the Court. The Simakovsky Defendants arguments lack factual or legal support and, as such, the Motion should be denied.

## II. Legal Standard

A motion to dismiss for failure to state a claim must be denied where a complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F.Supp.3d 787, 793-94 (S.D. Ohio 2024) (citation omitted). When determining whether the allegations plausibly state a claim for relief, a Court must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019). Plausibility "is not akin to a 'probability requirement,'" but simply "asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009). Thus, dismissal is inappropriate where the complaint's factual allegations, accepted as true, "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III. Argument

### A. LLF Has Standing to Assert Claims Against the Simakovsky Defendants.

"[T]o establish standing, a plaintiff must allege: (1) injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) redressability." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012) (quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The Complaint satisfies each requirement. LLF suffered a particularized injury in the form of lost reputation and income because of the Simakovsky Defendants' defamatory campaign. *See* Am. Compl. ¶¶ 200, 218, 229, 236, 246, 255, 271, 279. LLF's injuries can be redressed through money damages and injunctive relief. Accordingly, LLF has standing.

The Simakovsky Defendants do not credibly argue otherwise. Rather, they assert LLF lacks standing because courts "typically treat *all* claims against attorneys under the rubric of malpractice, regardless of how the plaintiff chooses to style a particular claim." Mot. at 5.[1] The Simakovsky Defendants ignore that each and every case they cite involved a plaintiff who had a professional relationship with the defendant and tried to frame their claim as something other than malpractice to avoid the applicable statute of limitations. *See Grenoble v. Rion, Rion, Rion, L.P.A., Inc.*, No. CA2014-07-006, 2015 WL 1159401, at *4 (Ohio 12th DCA Mar. 16, 2015) (client sued former attorney); *Hensley v. Durrani*, 2013-Ohio-4711, ¶ 1 (Ohio Ct. App. 1st Distr. 2013) (patient sued doctor and medical practice); *Muir v. Hadler Real Est. Mgmt. Co.*, 446 N.E.2d 820 (Ohio Ct. App. 10th Distr. 1982) (client sued former attorney); *Hibbett v. City of Cincinnati*, 446 N.E.2d 832 (Ohio Ct. App. 1st Distr. 1982) (client sued former attorneys); *Nwabara v. Schoby*, No. 51211, 1986 WL 12852, at *1 (Ohio Ct. App. 8th Distr. 1986) (client sued former counsel); *Gullatte v. Rion*, 763 N.E.2d 1215, 1217 (Ohio Ct. App. 2nd Distr. 2000) (client sued former counsel).

It is incredulous to contend, as the Simakovsky Defendants do, that a lawyer cannot be liable to third parties with whom they shared no professional relationship for conduct entirely

[1] All emphasis in quoted material contained herein is supplied unless otherwise noted.

untethered to any legal representation. Taken to its logical conclusion, the Simakovsky Defendants' argument would preclude a lawyer who caused an accident while driving to court from being sued by the other driver. Needless to say, that is not the law. Because the Simakovsky Defendants' tortious conduct injured LLF, and this Court can provide a remedy for that injury, LLF has standing to bring its claims against the Simakovsky Defendants.

### B. Neither Attorney Immunity nor the Litigation Privilege Shields the Simakovsky Defendants from Liability.

LLF's claims are not barred by attorney immunity or the litigation privilege. Mot. at 6-11. "[A]ttorneys enjoy immunity from liability to third persons arising from acts performed in good faith on behalf of, and with the knowledge of, their clients. There is no immunity, however, where attorneys act maliciously." *Vector Rsch., Inc. v. Howard & Howard Att'ys P.C.*, 76 F.3d 692, 700-01 (6th Cir. 1996) (holding district court erred in dismissing tort claims against attorney-defendants). Malice may be averred generally (*id.*) and includes "bad faith, or collusion," and conduct "with an ulterior motive separate and apart from the good-faith representation of the client's interests." *Silveous v. 5 Starr Salon & Spa, LLC*, 210 N.E.3d 1020, 1035 (Ohio Ct. App. 10th Distr. 2023).

Similarly, Ohio's litigation privilege is designed to protect "the integrity of the judicial process" and the primary purpose of judicial proceedings: "ascertain[ing] the truth." *Willitzer v. McCloud*, 6 Ohio St.3d 447, 449 (1983). Ordinarily, the privilege has been limited to statements made "in a written pleading or brief, or in an oral statement to a judge or jury in open court" and that bear "some reasonable relation to the judicial proceeding in which it appears." *Morrison v. Gugle*, 755 N.E.2d 404, 416 (Ohio Ct. App. 2001) (citation omitted). However, the privilege may extend, "with strict limitations, to extrajudicial communications." *Pincus v. Pincus*, 127 N.E.3d 393, 400 (Ohio Ct. App. 8th Distr. 2018) (citation omitted). For Ohio's litigation privilege to apply,

the statement must be "(1) made in the regular course of preparing for and conducting a proceeding that is contemplated in good faith and under serious consideration, (2) pertinent to the relief sought, and (3) published only to those directly interested in the proceeding." *Id.* at 400–01 (citation omitted). The privilege "does not give a person *carte blanche* to defame another on the mere condition that a judicial proceeding is mentioned in, or somehow connected to, the defamatory statement." *Morrison*, 755 N.E.2d at 416 (quotation marks and citation omitted) (emphasis in original); *see also Reister v. Gardner*, 174 N.E.3d 713, 717 (Ohio 2020) ("[The privilege] is not applicable, however, to conduct that is simply connected in some way to litigation.").

Here, the Simakovsky Defendants' conduct is wholly outside of their representation of any client or any judicial proceeding. LLF's claims arise from tortious statements the Simakovsky Defendants made online and in their efforts to interfere with LLF's contractual and business relationships. *See, e.g.,* Am. Compl. ¶¶ 146, 148, 149. LLF's claims against the Simakovsky Defendants stem from at least three statements or communications: (1) contacting a former LLF attorney in an attempt to breach the attorney's non-disclosure agreement with LLF (Am. Compl. ¶¶ 148, 166, 167); (2) posting a defamatory statement about LLF in a Facebook group, (*id.* ¶ 149); and (3) telling LLF clients that LLF and Lisinski were "scammers" (*id.* ¶ 278). Nothing in the Complaint suggests the Simakovsky Defendants were acting on behalf of clients when contacting its former employees, posting comments on Facebook, or defaming LLF to its client. *See Vector Rsch., Inc.* 76 F.3d at 700. Separately, even ignoring this, no facts in the Complaint plead the Simakovsky Defendants undertook their defamation of LLF with their clients' knowledge. *See id.* Accordingly, the concepts of attorney immunity or litigation privilege have no application here, at the very least not at the pleading stage. *See id.*

The Simakovsky Defendants' reliance on cases like *Simon v. Zipperstein*, 512 N.E.2d 636

(1987), *Shoemaker v. Gindlesberger*, 887 N.E.2d 1167 (Ohio 2008), and *Omega Riggers & Erectors, Inc. v. Koverman*, 65 N.E.3d 210 (Ohio Ct. App. 2nd Distr. 2016) therefore is misplaced. Those cases involved third parties attempting to assert malpractice claims against attorneys related to work the attorneys did for others closely connected to the plaintiffs. LLF's claims do not arise from work the Simakovsky Defendants performed for any clients. Nor do LLF's claims arise from statements the Simakovsky Defendants made during any judicial proceeding, making their reliance on *Stout*, a *summary judgment* decision where the allegedly defamatory statement was made in a judicial complaint, inapposite. *See Stout v. Columbia Gas of Ohio, Inc.*, No. 2020-CA-42, 2021 WL 840961, at ¶ 82 (Ohio Ct. App. 2nd Distr. 2021). Rather, its claims arise from the Simakovsky Defendants' online postings and efforts to interfere with LLF's business and contracts. The Simakovsky Defendants' lengthy discussion of privity and *Scholler v Scholler*, 462 N.E.2d 158 (Ohio 1984) is wasted ink for the same reason. LLF's claims do not arise out of the Simakovsky Defendants' work for any client, so the concepts of attorney immunity and litigation privilege are inapplicable, and LLF need not plead any exception, such as privity, to such concepts.

Even if attorney immunity or litigation privilege did apply (they do not), LLF has plead malice, thus the Complaint survives dismissal. Am. Compl. ¶¶ 37, 65, 67-68, 141-42, 145-46, 199, 202, 223, 250; *Vector Rsch., Inc.*, 76 F.3d at 700 ("The liberal federal pleading rules . . . enable a plaintiff . . . to allege malice coupled with tortious acts and survive a motion to dismiss."). Defaming a competitor to take its client for one's own fee, trying to dismantle a competitor's confidentiality protections, and spreading defamatory statements about it to the public and to its clients is extra-legal activity. These acts serve only the Simakovsky Defendants' own commercial interests and cause harm far "beyond that which legal action necessarily may inflict." *See* Am. Compl. ¶¶ 149, 248, 145–46, 148; *Omega Riggers*, 65 N.E.3d 210, ¶ 35. Clearly, then, the

Simakovsky Defendants' wrongdoing is not shielded by the concept of attorney immunity or litigation privilege. The Court should deny the Motion on this ground.

**C. Neither Ohio Public Policy nor the Ohio Rules of Professional Conduct Prohibit Non-Disclosure Agreements Between Law Firms and Their Employees.**

As an initial matter, the Simakovsky Defendants' unenforceability argument fails because it is premised upon the false assumption that Count V is based upon a non-disclosure agreement between LLF and an attorney. Not so. *See* Am. Compl. ¶¶ 232, 234 (alleging breach of LLF's non-disclosure agreement with "current or former LLF team member."). This argument also fails for the independent reason that it turns on the terms of LLF's non-disclosure agreements, yet those agreements ***are not before the Court***. The Simakovsky Defendants argue LLF's non-disclosure agreements violate Ohio public policy because LLF's agreements "sought to impose greater restrictions on the disclosure of information related to the representation than imposed by the Ohio Rules of Professional Conduct." Mot. at 12. But it is impossible for the Court to assess this without reviewing the agreements, which are beyond the four corners of the Complaint. Accordingly, this argument is – at best – premature, and the Motion should be denied as to Count V.

Even ignoring these failings, to the extent that the Simakovsky Defendants suggest law firms can ***never*** have any non-disclosure agreements with employees, that is not the law. *See* Mot. at 11. "The Supreme Court has firmly established a constitutional right to contract freely." *Prosonic Corp. v. Stafford,* 539 F. Supp. 2d 999, 1008 (S.D. Ohio 2008) (citing *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 572 (1972)); *Minc, LLC v. Stebbins,* No. 22-cv-1655, 2024 WL 4041432, at *11–13 (N.D. Ohio Sept. 4, 2024) (rejecting argument on motion to dismiss that non-disclosure agreement between law firm and former attorney employee was unenforceable); *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1133 (6th Cir. 1990) (applying Ohio law) ("Employment severance contracts, where a departing employee agrees to not . . . reveal trade or

other company secrets . . . are not uncommon and are not prohibited by Title VII or comparable state law provisions.").

Nor do the Ohio Rules of Professional Conduct prohibit non-disclosure agreements between law firms and attorneys. Mot. at 11–12. Rule 1.6(d) requires an attorney to "reveal information relating to the representation of a client . . . to the extent the lawyer reasonably believes necessary to comply with Rule 3.3 or 4.1." In turn, Ohio Rules of Professional Conduct 3.3 and 4.1 concern attorneys' obligation of candor to tribunals and to avoid aiding clients in crimes or fraud. A non-disclosure agreement is not inconsistent with these rules; a lawyer may abide by a confidentiality agreement completely when candor to the tribunal does not require the disclosure of protected information, and such disclosure is not required to avoid aiding a client in wrongdoing. A non-disclosure agreement *may* be unenforceable in specific instances where abiding by the duty of candor to the tribunal would require disclosure of confidential information, but that is a far cry from the situation presented here. Indeed, under *no* circumstances would an LLF team member have a duty to disclose information *to the Simakovsky Defendants.*

Nor does Ohio Rule of Professional Conduct 5.6(a) prohibit non-disclosure agreements; it prevents attorneys from participating in agreements that restrict a lawyer's right to practice. LLF's non-disclosure agreement is not alleged to have restricted any of its attorneys from practicing law. Rather, it is alleged to have prevented employees – including non-attorneys to whom Rule 5.6 does not apply – from disclosing confidential and proprietary information. LLF's non-disclosure agreements with its employees, attorneys or not, do not violate the Ohio Rule of Professional Conduct or Ohio public policy. Further, even if a specific provision of LLF's non-disclosure agreements was overbroad or unenforceable, that would not require invalidation of the agreement in its entirety. *See Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 25–26 (1975). The Simakovsky

Defendants' categorical assertion that LLF's non-disclosure agreements are unenforceable as a matter of law is misguided at best, and the Motion should be denied as to Count V.

**D. The Complaint Pleads Defamation.**

To plead defamation, a plaintiff must allege "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Anthony List v. Driehaus*, 779 F.3d 628, 632–33 (6th Cir. 2015) (citation and quotation marks omitted). The Simakovsky Defendants only challenge the first and fifth elements. *See* Mot. at 14, 19.

**1. The Simakovsky Defendants Made False Statements of Fact.**

"Ohio courts apply a totality-of-the-circumstances analysis and consider four factors to determine whether a statement is a fact or opinion." *Mehta v. Ohio Univ.*, 958 N.E.2d 598, 608 (Ohio Ct. App. 10th Distr. 2011) (citing *Scott v. News Herald*, 496 N.E.2d 699 (Ohio 1986)). Specifically, courts consider "the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared." *Id.* (quoting *Vail v. The Plain Dealer Publ'g Co.*, 649 N.E.2d 182, 185 (Ohio 1995)). "[T]he analysis should be fluid and flexible" and "consideration of the factors should be used more like a compass to provide guidance rather than a map to establish rigid, delineated boundaries." *Id.* (citations omitted). Thus, "[w]hile each factor must be considered, the weight afforded to each varies based upon the circumstances presented in each case." *Id.* (citation omitted).

Under the first factor, courts consider "whether the allegedly defamatory statement has a precise meaning and thus is likely to give rise to clear factual implications." *Bentkowski v. Scene Magazine*, 637 F.3d 689, 694 (6th Cir. 2011). A statement is verifiable if the author implies he has first-hand knowledge that substantiates the opinions he asserts. *Mehta*, 958 N.E.2d at 609 (quoting



305048214v1

*Vail*, 649 N.E.2d at 182). This is because "[i]f such an implication is made, 'the expression of opinion becomes as damaging as an assertion of fact.'" *Id.* (quoting *Scott*, 496 N.E.2d at 699). In assessing general context, courts consider whether the "language surrounding the averred defamatory statements may place the reasonable reader on notice that what is being read is the opinion of the writer." *Id.* at 610. Lastly, in assessing the broader context, courts analyze "the broader social context into which the statement fits" because "[s]ome types of writing or speech by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* (citation omitted).

LLF specifically alleges that the Simakovsky Defendants made at least three defamatory statements: one in a Facebook comment, another via email to a former LLF attorney, and another to an LLF client. When considering the totality of the circumstances at the motion to dismiss stage, it is plausible that the Simakovsky Defendants' statements were false statements of fact.

***i. The Facebook Post***

On June 4, 2026, Simakovsky commented on a Facebook post that her firm was "local counsil [*sic*] filing against the biggest [A.S.S.] mill" and claimed "for years we have seen clients from [LLF] and it is truly horrific." Am. Compl. ¶ 149. The Simakovsky Defendants argue these statements constitute opinion because they purportedly are unverifiable. *See* Mot. at 15. Yet, by claiming to be local counsel in a lawsuit against LLF and personally seeing LLF's clients, "[the Simakovsky Defendants] implied that they had first-hand knowledge of facts supporting their conclusions," thereby making the statements verifiable. *Mehta*, 958 N.E.2d at 610 (holding statements are verifiable where speaker implies they "had first-hand knowledge of facts supporting their conclusions" and a "reasonable reader would perceive the statement as verifiable").

The Simakovsky Defendants also assert the specific language they used is ambiguous hyperbole. Mot. at 15. In *Mehta*, the plaintiff-appellant, a former professor and program director,

sued his former employer for defamation following its publication of a report on thesis plagiarism allegations. *See* 958 N.E.2d at 601–04. Though there was "no direct statement that [the] appellant failed to perform his duties as [a thesis advisor]," the specific language factor supported actionability because "the clear impact of the specific language impart[ed] this assertion." *Id.* at 609. Similarly, here, regardless of the meaning of the specific words Simakovsky used, the precise meaning of her post was clear: LLF failed to perform its duties in representing its clients. Consequently, the Facebook post is a statement of fact.

***ii. The Email***

"Simakovsky, using a Simakovsky Law-issued email address, emailed a former LLF attorney, copying her new boss and [co-Defendant] Alvarez" stating LLF spread "'misinformation/false promises[.]'" Am. Compl. ¶ 148.[2] Although the email did not specify what misinformation or false promises LLF made, because of the Simakovsky Defendants' coordination with the other co-Defendants, *see* Am. Compl. ¶¶ 1, 37, 42, it is plausible to infer Simakovsky was referring to the purported claim that LLF tells its clients that "nothing more than 'stress' in a marriage' is enough to qualify for relief under the Violence Against Women Act ('VAWA')," Am. Compl. ¶ 48. Such a claim is an assertion of fact because its specific language has a precise meaning: LLF falsely promises clients that stress in a marriage is enough to qualify for VAWA. That assertion can be objectively verified through testimony, emails, and other evidence. *See Scott v. News-Herald*, 496 N.E.2d 699, 707 (Ohio 1986) ("Whether or not [plaintiff] did indeed perjure himself is certainly verifiable by a perjury action with evidence adduced from the transcripts and

---

[2] The Simakovsky Defendants' claim the "misinformation/false promises" language characterized non-party "Lisinski's view that a sworn declaration can support a humanitarian petition." Mot. at 15. That assertion relies on facts outside of the pleadings, and the email itself does not even mention Lisinski. Am. Compl. ¶ 148. At the motion to dismiss stage, even if there is an inference that Simakovsky was referring to Lisinski's legal opinions, the court must resolve conflicting inferences in LLF's favor. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

witnesses present at the hearing."). Moreover, while the email contains no general context because it is a single email, the broader context—an email sent from a lawyer's professional email address, copying other attorneys, and addressed to another attorney—reasonably signals it was an assertion of fact rather than a personal opinion; certainly, this was not a casual, flippant communication. *See Hartman v. Kerch*, 217 N.E.3d 881, 900 (Ohio Ct. App. 8th Distr. 2023) (holding context of letter was such that average reader would expect statements to be fact, not opinion).

***iii. Statements to LLF Clients***

"On at least one occasion, Simakovsky told an LLF client who sought a second opinion regarding the client's immigration case that Lisinski and LLF were 'scammers.'" Am. Compl. ¶ 146. It is plausible that Simakovsky's "scammer" claim was based on Simakovsky's first-hand knowledge of LLF, *see supra* Part D.1.a., supporting verifiability, and that such knowledge might have been shared with LLF's clients during that conversation to bolster that extraordinary claim.

The Simakovsky Defendants attempt to distinguish authority from this Court holding the term "scammers" is actionable. *See* Mot. at 16 (citing *N. Am. Recycling, LLC v. Texamet Recycling, LLC*, 2:08-cv-579, 2010 WL 1226403, at *3 (S.D. Ohio Mar. 24, 2010)). They instead contend this case is more analogous to *Kirkland v. Environmental Landscape, LLC*, reasoning the statement that LLF "are scammers" is insufficiently "factual or verifiable." No. 1:22-CV-414, 2025 WL 474232, at *14 (S.D. Ohio Feb. 12, 2025); *see* Mot. at 16. However, the *Kirkland* court evaluated statements such as "con man" and "crook" on a developed factual record at summary judgment, not at the pleading stage. *Id.* This case should at least make it as far as *Kirkland*.

The Simakovsky Defendants incorrectly assert that these allegations are insufficient because the Complaint "supplies no date, no location, nothing said before the remark, and nothing said after it." Mot. at 17. However, such detailed allegations are only required when pleading fraud or mistake. *Compare* Fed R. Civ. P. 8 *with* Fed. R. Civ. P. 9(b). Further, the Simakovsky

Defendants' citations to *Kirkland*, a summary judgment decision, and *Concrete Creations & Landscape Design LLC v. Wilkinson*, No. 20-CA-0946, 2021 WL 3088752 (Ohio Ct. App. 7th Distr. 2021), a bench trial decision, are inapposite at the motion to dismiss stage because, to the extent further information is required, it will be developed during discovery. On a motion to dismiss non-fraud claims, LLF need only allege such "short and plain" statements to show that it is entitled to relief. Fed. R. Civ. P. 8(a)(2). LLF has done so here.[3]

**2. No Absolute or Qualified Privilege Applies.**

"Qualified privilege is an affirmative defense to a claim of defamation" applicable if the defendant establishes "(1) the publication was made in good faith, (2) there was an interest to be upheld, (3) the publication was limited in scope to that interest, (4) the publication was made on the proper occasion, and (5) the publication was done in a proper manner and to the proper parties." *Hilty v. Donnellon McCarthy Enters., Inc.*, 281 N.E.3d 333, 343 (Ohio Ct. App. 1st Distr. 2026) (citation omitted). Ohio's courts have recognized a common interest to be upheld exists where parties share common business or church interests, or among fraternal groups. Even if a qualified privilege exists, "it does not absolutely immunize statements from liability, but instead subjects the party claiming defamation to a heightened proof requirement" to show the communication was made with actual malice. *Id.* (citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 243 (1975)).

Nothing in the four corners of the Complaint establishes the Simakovsky Defendants are entitled to raise absolute privilege, discussed in Section III.B., *supra*, or qualified privilege for the defamatory Facebook comment and scammers statement. The Simakovsky Defendants argue Simakovsky's proclamation on Facebook that she was "local council [sic]" insulated her from liability for everything that followed. Of course, this is not the law. *See* § III.B. Nor do the

[3] Because each of the three statements are assertions of fact rather than opinion, Article I, Section 11 of Ohio's Constitution, which protects opinions, does not apply. *See* Mot. at 17–18.

Simakovsky Defendants even attempt to argue they have satisfied the elements of qualified privilege, such as good-faith publication limited to upholding an interest, made by proper means only to proper parties. *See id.* Even if they had, qualified privilege does not apply because LLF plead the Simakovsky Defendants acted with actual malice. *See* § III.B.

**3. LLF Is Not a Limited-Purpose Public Figure and the Complaint Pleads Malice.**

To determine if a plaintiff is a limited-purpose public figure, courts ask if a public controversy exists and, if so, if the plaintiff voluntarily injected itself into the controversy. *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014)[4] (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). Neither requirement is satisfied here.

First, the Complaint does not establish a public controversy within the meaning of *Gertz*. A public controversy is "a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Cooley*, 759 F.3d at 529 (quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980)). While the Defendants broadcast their accusations about LLF to a large public audience, the dispute alleged here is not a broad, preexisting public debate over immigration law or humanitarian petitions. The Complaint arises from the Defendants' targeted campaign to accuse LLF of fraud and thereby enrich themselves by diverting LLF's clients to the attorney Defendants and enrich Overmyer through increased viewership. In other words, the Complaint alleges a private commercial attack that the Defendants chose to publicize, rather than a preexisting public controversy into which LLF voluntarily entered.

Second, even if some public controversy exists regarding immigration, the Complaint does not establish that LLF voluntarily injected itself into it. In assessing whether a plaintiff injected itself into a public controversy, courts consider "the extent to which participation in the

[4] While the Court applied Michigan law to some aspects of its analysis, the determination of if a person is a public figure is question of federal law. *See, e.g.*, *Ralston v. Garabedian*, 676 F. Supp. 3d 325, 349 n.157 (E.D. Penn. 2021).



305048214v1

controversy is voluntary; second, the extent to which there is access to channels of effective communication in order to counteract false statements; and third, the prominence of the role played in the public controversy." *Clark v. ABC, Inc.*, 684 F.2d 1208, 1218 (6th Cir. 1982). These factors cut against limited-purpose public-figure status here. Nowhere does the Complaint allege there was a dispute about immigration firms' practices prior to the Defendants' own conduct. Consequently, there is no public controversy; "[c]learly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Croce v. Sanders*, 459 F. Supp. 3d 997, 1016 (S.D. Ohio 2020); *see also Worldnet Software Co. v. Gannett Satellite Info. Network, Inc.*, 702 N.E.2d 149, 155 (Ohio Ct. App. 1st Distr. 1997) ("[A] plaintiff does not become a public figure merely because the allegedly defamatory statements create a controversy; the controversy must have existed prior to the statements.") (citing *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 688 (4th Cir. 1989)).

The Simakovsky Defendants' position that Lisinski—not LLF—"advanced" her "'position' on declaration-only evidence . . . publicly" is based on a clear misreading of the Complaint. Mot. at 20 (citing Am. Compl. ¶ 16). The Complaint alleges that "*Overmyer* began her attacks on LLF by targeting Lisinski's position" and that *Overmyer* "garnered the social media attention she so desperately craved" "[i]n publicly contradicting and generating controversy against well-known LLF[.]" Am. Compl. ¶ 16.[5]

In any event, limited-purpose public-figure status is a fact-intensive issue ill-suited for resolution on a motion to dismiss. *See Fuchs*, 868 N.E.2d at 1034 ("The decision whether a plaintiff is a limited-purpose public figure or a private person must be made on a case-by-case basis by

[5] Even if the Complaint alleged LLF, publicly responded to the Defendants' defamatory statements, that does not transform LLF into limited-purpose public figure. *See Fuchs v. Scripps Howard Broadcasting Co.*, 868 N.E.2d 1024, 1035 (Ohio 1st DCA 2006) ("[D]efamers cannot, by provoking a response to an attack, make the subject of the statements—the one attacked—a public figure simply because the attacked person responds.").

considering all the relevant facts and circumstances.”). Whether a qualifying public controversy existed, whether it predated the alleged defamation, and whether the plaintiff voluntarily assumed a role of special prominence in that controversy all require a factual inquiry. Because those issues cannot be resolved at this stage, dismissal on public-figure grounds is unwarranted. Further, even if the Court concludes LLF is a limited-purpose public figure that must plead actual malice, LLF does so. The Complaint alleges the Defendants acted with knowledge of falsity or, at minimum, reckless disregard for the truth “to convert their months-long coordinated campaign of lies, manipulation, and exploitation into a financial windfall.” Am. Compl. ¶ 67; § III.B., *supra*.

**4. The Defamation Claim Against Simakovsky Law Survives.**

LLF sufficiently pleads a claim of defamation against Simakovsky. *See supra* § III.D, *supra*. The defamation claim against Simakovsky Law therefore is viable through the doctrine of respondeat superior. Mot. at 20; Am. Compl. ¶ 193. This conclusion is further supported by Simakovsky’s use of her firm email address to make defamatory statements, thus acting within the scope of her relationship with Simakovsky Law when making the statement. Am. Compl. ¶ 148.

**E. LLF Pleads Defamation by Implication.**

It is well-settled that Ohio recognizes defamation per quod, which permits a defamation claim “when a statement is found to be defamatory through interpretation, innuendo, or the consideration of extrinsic evidence[.]” *Dayton Bar Ass’n v. Baker*, --- N.E.3d ---, 2026 WL 2034918, at *4 n.2 (Ohio July 15, 2026). Defamation per quod describes the allegations underlying LLF’s defamation by implication claim. *See Cogent Sols. Grp., LLC v. Brown*, No. 2:12-cv-665, 2013 WL 6116052, at *15 (S.D. Ohio Nov. 20, 2013) (citing *N.E. Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 916 N.E.2d 484, 487 (Ohio Ct. App. 9th Distr. 2009)) (“Ohio law does allow for a defamation claim based on implication, or ‘innuendo,’” referring to defamation per quod).

While “Ohio does not recognize *libel* through implied statements,” *Woods v. Sharkin*, 192

N.E.3d 1174, 1192 (Ohio Ct. App. 8th Distr. 2022), courts do recognize claims for defamation (including slander) by implication. *See AIX Specialty Ins. Co. v. Big Limo, Inc.*, 547 F. Supp. 3d 757, 768 (S.D. Ohio 2021) (concluding plaintiff stated a plausible defamation claim premised upon implication); Christopher M. Ernst, Baldwin's Oh. Prac. Tort L. § 40:178 (2d ed. Nov. 2025) ("In order to be defamatory, a charge need not be direct or positive . . . In cases involving defamation by implication . . . plaintiff must show more than mere negligence").

Regardless, even if Ohio does not recognize claims for defamation by implication, Count III survives. Under Federal Rule of Civil Procedure 8(f), "[p]leadings must be construed so as to do justice." As a result, "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action." *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003) (quoting *United States v. Louisville & Nashville RR Co.*, 221 F.2d 698, 701 (6th Cir. 1955)). Indeed, "dismissal on the basis of a mislabeled legal claim is not warranted as long as correction of the legal theory does not prejudice the opposing party." *Minger v. Green*, 239 F.3d 793, 801 (6th Cir. 2001) (citing *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995)).[6]

**F. LLF Sufficiently Pleads Civil Conspiracy to Defame.**

A conspiracy claim requires "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 538 (6th Cir. 2000). The Simakovsky Defendants challenge the first element.[7] The malicious combination "does not require a showing of an express agreement between defendants, but only a common understanding or

[6] As explained in Section III.D., LLF's defamation per se claim survives dismissal, thus the Simakovsky Defendants' argument that Count III "fails for the same reasons Count I fails" falls flat. Mot. at 21.

[7] The Simakovsky Defendants argue the fourth element is unmet because the unlawful acts alleged in Counts I and III fail. Mot. at 22–23. These counts plead viable causes of action. *See supra* § III.D-E. Additionally, the Simakovsky Defendants renew their argument that their actions are absolutely privileged, but they are wrong. *Id.* § III.B.

design, even if tacit, to commit an unlawful act." *Id.* "[A]ll that must be shown is that the alleged coconspirator shared in the general conspiratorial objective." *Id.* (citation omitted). In proving the agreement, "the evidence of an agreement does not have to be direct. Rather, it is sufficient if the evidence supports a reasonable inference that an agreement was made." *S&T Bank, Inc. v. Advance Merch. Servs., LLC*, 255 N.E.3d 164, 180 (Ohio Ct. App. 1st Distr. 2024).

Here, LLF has pled sufficient facts to state a claim for conspiracy to defame. Along with the other named Defendants, the Simakovsky Defendants "created a WhatsApp group to coordinate their campaign against LLF . . . and all seven named Defendants use it as a tool to systematically expand their coordinated effort to destroy LLF's reputation and convince LLF's clients that LLF is engaged in fraud." Am. Compl. ¶ 42. Further, when telling a former LLF attorney that LLF spread "misinformation/false promises," Simakovsky copied co-conspirator Alvarez. *Id.* ¶ 148. The Simakovsky Defendants also stand to profit from defaming LLF, thereby supplying a motive to engage in the conspiracy. *See, e.g., id.* ¶¶ 65–66. From these facts, it is plausible to infer the Simakovsky Defendants conspired to defame LLF. *Woods v. Sharkin*, 192 N.E.3d 1174, 1200-01 (Ohio Ct. App. 8th Distr. 2022) ("Woods alleged that [defendants] acted together in a malicious manner in their attempts to defame him, place him in false light, interfere with business and contractual relationships, and engage in other tortious conduct. Because Woods sufficiently pleaded those causes of action, which are independent from the conspiracy itself, we also find that Woods's adequately pleaded a claim for civil conspiracy to survive a . . . motion to dismiss."). That Simakovsky did not appear in co-conspirator Overmyer's videos does not change that conclusion because "the acts of coconspirators are attributable to each other." *Gevedon v. Decker*, No. 2020-CA-21, 2021 WL 141237, at *8 (Ohio Ct. App. 2nd Distr. 2021); *cf. United States v. Jones*, No. 96-5635, 1997 WL 68217, at *1 (6th Cir. 1997) ("The government need not

show that a defendant participated in all aspects of the conspiracy.").

The Simakovsky Defendants argue the Complaint's use of the phrase "additionally separately" somehow concedes Simakovsky acted outside any agreement. Mot. at 23 (citing Am. Compl. ¶ 227). It does no such thing. Read in context, this language alleges additional acts in furtherance of the same coordinated campaign described throughout the Complaint, including the WhatsApp-based coordination. Am. Compl. ¶ 42. That "Simakovsky additionally separately defamed LLF and Lisinski to current LLF clients" merely identifies further conspiratorial acts beyond those already described. It does not suggest those acts were independent of the conspiracy.

### G. LLF States a Claim under Ohio's Deceptive Trade Practices Act

The ODTPA prohibits, in part, any person who "in the course of the person's business, vocation, or occupation . . . [d]isparages the goods, services, or business of another by false representation of fact[.]" Ohio Rev. Code Ann. § 4165.02(A)(10). "Courts 'evaluate an [ODTPA] claim under the same analysis as that used for Lanham Act claims.'" *The Hillman Grp., Inc. v. Minute Key, Inc.*, 317 F. Supp. 3d 961, 968 (S.D. Ohio 2018) (quoting *Papa Ads, LLC v. Gatehouse Media, Inc.*, 485 Fed. App'x 53, 55 (6th Cir. 2012)). To plead a commercial disparagement claim under the Lanham Act, a plaintiff must allege:

> (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 725 (N.D. Ohio 2009). With respect to the first element, the Simakovsky Defendants are alleged to have made misleading statements of fact. *See supra* § III.D.1.

The Simakovsky Defendants' claim that Simakovsky only is alleged to have told "a single

person" during a "private," "one-on-one conversation" LLF and Lisinski were scammers is a misreading of the Complaint. Mot. at 24–25. Instead, LLF alleged "Simakovsky told *at least* one current LLF client that LLF and Lisinski were 'scammers' . . . [and] she has told this to *other* LLF client*s* as well[.]" Am. Compl. ¶ 278. Nor does the Complaint allege that these comments were made as part of a private, one-to-one conversation. While it may be plausible to infer that the conversation was private, it is also plausible to infer that the statements were made to more than one LLF client at a time. The Court must resolve that conflict in LLF's favor at this stage.

The Simakovsky Defendants also argue a claim for commercial disparagement requires the statement be "directed at the market" or constitute "commercial advertising or promotion." Mot. at 24. However, that purported requirement does not appear in the text of the statute. Ohio Rev. Code Ann. § 4165.02(A)(10); *Hall v. Crawford Cnty. Job & Fam. Servs.*, 188 N.E.3d 1138, 1149 (Ohio Ct. App. 3rd Distr. 2022) (citation omitted) (recognizing courts are only to consult federal materials "when the terms of the federal statute are consistent with Ohio law" or when an Ohio statute "leaves a term undefined."). Nor do the Simakovsky Defendants cite any authority applying the Lanham Act's analogous "commercial advertising or promotion" requirement to this Ohio statutory claim. Accordingly, the Motion should be denied as to Count X.

### H. The Simakovsky Defendants' Do Not Challenge Counts VI, VII, or IX.

The Simakovsky Defendants' do not challenge Counts VI, VII, or IX, for tortious interference with LLF's engagement agreements, conspiracy to tortiously interfere, and tortious interference with prospective business relationships, respectively. They therefore forfeited any count-specific challenges regarding these claims. *See Aetna*, 219 F.3d 519 at 545.

## III. Conclusion

Accepting LLF's well-pled allegations as true, as the Court must, LLF has stated plausible claims for relief against the Simakovsky Defendants. The Motion therefore should be denied.

WHEREFORE, LLF respectfully requests that the Court enter an Order (a) denying the Motion or in the alternative, granting leave to amend; and (b) granting LLF such other and further relief as the Court deems proper.

*/s/ David J. Butler*
David J. Butler (0068455), Trial Attorney
Email: dbutler@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
41 S. High St., Suite 1800
Columbus, Ohio 43215-4213
Phone: (614) 221-2838

David M. DeVillers (0059456)
Email: David.DeVillers@btlaw.com
**BARNES & THORNBURG LLP**
41 S. High St. Suite 3300
Columbus, Ohio 43215
Phone: (614) 628-0096

*Counsel for Plaintiff The Lisinski Law Firm, LLC*

Jason P. Mehta (*pro hac vice*)
Primary email: jmehta@foley.com
Secondary email: jwilliams@foley.com
Heather A. Lee (*pro hac vice*)
Primary email: hlee@foley.com
Secondary email: jwilliams@foley.com
**FOLEY & LARDNER LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300

Olivia Singelmann (*pro hac vice* pending)
Primary email: osingelmann@foley.com
**FOLEY & LARDNER LLP**
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Phone: (206) 672-5300

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 12, 2026, a true and correct copy of the foregoing was electronically filed through CM/ECF, which will provide electronic notice to all counsel of record, and served on Defendant Camila Overmyer a/k/a Camelia Guad Magana Madrigal, *pro se*, via (a) United States Mail to 4020 Eagle Drive, Gosport, IN 47433; and (b) electronic mail to camilaovermyer@icloud.com.

*/s/ David J. Butler*
David J. Butler