**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

THE LISINSKI LAW FIRM, LLC,

Plaintiff,

v.

CAMILA OVERMYER a/k/a
CAMELIA GUAD MAGANA MADRIGAL,
JAMES BETZOLD,
ROBERT ALVAREZ,
INNA SIMAKOVSKY,
BETZOLD LAW, PLC d/b/a VISA FELIZ,
AVANTI LAW GROUP, PLLC,
SIMAKOVSKY LAW GROUP, LLC, and
JOHN DOES 1–6,

Defendants.

Case No. 2:26-CV-00704-DRC-KAJ

JUDGE DOUGLAS R. COLE

MAGISTRATE JUDGE
KIMBERLY A . JOLSON

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS JAMES BETZOLD AND BETZOLD LAW, PLC, UNDER RULE 12(B)(2)**

Plaintiff The Lisinski Law Firm, LLC ("LLF"), by and through its undersigned counsel, submits this opposition in response to Defendants James Betzold ("Betzold") and Betzold Law, PLC d/b/a Visa Feliz's ("Betzold Law" and, together with Betzold, the "Betzold Defendants") Motion to Dismiss of Defendants James Betzold and Betzold Law, PLC, Under Rule 12(B)(2) (ECF No. 37, the "Motion"). For the reasons set forth below, the Motion should be denied.

## I. Introduction

This action concerns, in relevant part, the Betzold Defendants' campaign to defame, tortiously interfere with, and otherwise damage LLF. The Betzold Defendants seek dismissal of this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In an apparent attempt to further malign LLF and its non-party founder, Angelyne Lisinski ("Ms. Lisinski"), the Betzold Defendants improperly attach to the Motion documents outside the

pleadings that are irrelevant to determining personal jurisdiction.[1] *See* Mot., Exs. 1, 2, 3, 4, 6; *Doe v. Roman Catholic Diocese of Greensburg*, 581 F. Supp. 3d 176, 189 (D.D.C. 2022) (recognizing on a motion to dismiss under Rule 12(b)(2) that "[t]he court may consider, receive, and weigh affidavits and other *relevant* materials outside the pleadings to assist it in determining the pertinent jurisdictional facts.") (emphasis added).

The Motion should be denied. *First*, LLF met its initial burden of alleging a basis for personal jurisdiction under Ohio's long-arm statute because the Betzold Defendants caused tortious injuries in Ohio by sufficient acts in or outside Ohio. *Second*, the exercise of personal jurisdiction over the Betzold Defendants would not violate due process because the Betzold Defendants engaged in torts against LLF, which the Betzold Defendants knew was an Ohio law firm, and caused harm in Ohio. *Third*, the sole admissible evidence that the Betzold Defendants attached to the Motion—Betzold's affidavit, Exhibit 5—does not refute the bases that LLF relies upon to establish personal jurisdiction, as further established in the declaration of Olivia Singelmann, attached hereto as **Exhibit 1.** Accordingly, and as set forth in more detail below, the Motion should be denied.

## II. Legal Standard

"Ohio courts apply a two-step analysis to determine whether personal jurisdiction exists over a non-resident defendant: 1) the defendant must be amenable to suit under Ohio's long-arm

[1] Further, to the extent that the Betzold Defendants rely upon these materials to argue that no claim has been stated against them, *see, e.g.*, Mot. at 13, such reliance is improper at this stage. *See Pac. Reign Offshore Adventures LLC v. Armstrong Consol., LLC*, No. 3:25-cv-5692, 2025 WL 3469902, at *6 (W.D. Wash. Dec. 3, 2025) ("While the court may consider extra-pleading material when determining whether it has personal jurisdiction over defendants, it must exclude that same evidence when considering whether the complaint states a claim, even when the two questions turn on the same issue."). Because the Motion was brought under Rule 12(b)(2), LLF only addresses arguments relevant to personal jurisdiction.

statute; and 2) [the] exercise of personal jurisdiction over the defendant must not violate due process." *PNC Equip. Fin., LLC v. Mariani*, No. 1:14-cv-663, 2015 WL 4464810, at *2 (S.D. Ohio July 21, 2015) (citation omitted); *accord Burnshire Dev. LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 429 (6th Cir. 2006) ("The Ohio [state] courts apply the same two-step test described by the Sixth Circuit to determine whether specific personal jurisdiction is appropriate."). The plaintiff need only make a prima facie showing that these two elements are satisfied. *Musto v. Zaro*, No. 2:17-CV-506, 2018 WL 1565604, at *3 (S.D. Ohio Mar. 30, 2018) ("To defeat [a] motion to dismiss [for lack of personal jurisdiction], [p]laintiffs need only make a prima facie showing of jurisdiction.") (citation omitted); *see also PNC Equip. Fin., LLC,* 2015 WL 4464810, at *2. This prima facie showing may be made "merely through the complaint . . . The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citation omitted).

If the defendant supports his motion to dismiss with proper evidence, "the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "The court has discretion to select which method it will follow, and will only be reversed for abuse of that discretion." *Id.*. When the court decides the motion without evidentiary hearing, the plaintiff's burden "consists of a prima facie showing that personal jurisdiction exists," which can be done through the complaint. *Malone*, 965 F.3d at 504 (quotation marks and citation omitted).

Regardless of which approach the court takes, in ruling on a motion to dismiss for lack of personal jurisdiction, the court must construe the allegations and evidence "in a light most favorable to the plaintiff and resolv[e] all reasonable competing inferences in favor of the

plaintiff." *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E. 2d 784, 790 (Ohio 2010) (quotation marks omitted); *see also, e.g., Musto*, 2018 WL 1565604, at *3.

## III. Argument

### A. The Court's Exercise of Personal Jurisdiction Over the Betzold Defendants is Proper Under Ohio's Long-Arm Statute.

The Betzold Defendants contend LLF failed to make a prima facie showing that this Court's exercise of jurisdiction over the Betzold Defendants is consistent with Ohio's long-arm statute because the Betzold Defendants were not in Ohio when they engaged in their tortious conduct. Mot., § I, p. 9-10. The Betzold Defendants' simplistic argument is misguided at best. As explained below, where a defendant is located is not the only relevant inquiry when assessing whether Ohio's long-arm statute has been satisfied. Rather, "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [c]ausing tortious injury by an act or omission in this state," or "[c]ausing tortious injury in this state to any person *by an act outside this state* committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A)(3), (6).[2]

As set forth below, the Betzold Defendants caused tortious injury by an act or omission in Ohio because their defamatory statements were published online to tens—if not hundreds—of thousands of viewers, including, on information and belief, Ohioans. *See* Ohio Rev. Code

[2] While the Complaint cites to Ohio Rev. Code § 2307.382(A)(3), LLF may rely upon additional, uncited subsections of the long-arm statute when personal jurisdiction is challenged. *See Triad Hunter, LLC v. Eagle Natrium, LLC*, 132 N.E.3d 1272, 1281 (Ohio Ct. App. 7th Distr. 2019) ("Where certain facts are alleged in the complaint, legal arguments can thereafter be made as to why additional subdivisions may apply besides those cited or paraphrased in the complaint."); *see also Baker v. Bensalz Prods., Inc.*, 480 F. Supp. 3d 792, 804 n.7 (S.D. Ohio 2020) (recognizing that plaintiff's memorandum in opposition to a motion to dismiss "could have, but did not, make other arguments in support of specific personal jurisdiction over Defendants.").

§ 2307.382(A)(3). The Betzold Defendants also caused tortious injury by acts outside of Ohio with the purpose of injuring LLF, an Ohio entity that the Betzold Defendants reasonably expected to injure in Ohio. *Id.* at § 2307.382(A)(6). The Betzold Affidavit does not, because it cannot, challenge this reality. Accordingly, this Court's exercise of personal jurisdiction over the Betzold Defendants complies with Ohio's long-arm statute.

**1. Defamation Per Se (Count I), Defamation by Implication (Count III), and Conspiracy to Defame (Count IV)**

"The tort of libel occurs in the locale where the offending material is circulated (published) by the defendant to a third party." *Kauffman Racing Equip., L.L.C.*, 930 N.E.2d at 791 (quoting *Keeton v. Hustler Magazine, Inc.* (1984), 465 U.S. 770, 777). In *Kauffman*, an out-of-state defendant, Roberts, posted allegedly defamatory comments on the internet about an Ohio limited liability company such as that he was "[j]ust trying to help other potential victims" of the Ohio company. *Id.* at 788. "Despite the fact that Roberts's publication of his comments did not emanate from Ohio" and that Roberts had "never physically entered Ohio," the court held that personal jurisdiction under Ohio's long-arm statute was satisfied. *Id.* at 787, 791. The court explained that because "at least five Ohioans saw Roberts's statements," his "comments were thus published in Ohio" and, accordingly, "his alleged tort was committed in Ohio," thereby subjecting Roberts to personal jurisdiction under Ohio Rev. Code § 2307.382(A)(3). *Id.* at 791. Further, the court reasoned that Ohio Rev. Code § 2307.382(A)(6) was satisfied because it was "clear from the postings that Roberts's statements were made with the purpose of injuring" an Ohio resident, which would cause a person to reasonably expect that an injury would occur in Ohio. *Id.* at 792; *see also Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 163 (S.D. Ohio 2012) (explaining Ohio Rev. Code § 2307.382(A)(6) "confers personal jurisdiction where a non-resident allegedly committed . . . civil conspiracy outside of Ohio knowing" targeted company is Ohio company).

Here, too, LLF has met its initial burden to allege a basis for personal jurisdiction for Counts I, III and IV because the Amended Complaint (ECF No. 23, the "Complaint") alleges that the Betzold Defendants' defamatory statements were viewed in Ohio. *See* Am. Compl. ¶¶ 27, 53, 88, 129, 194. These statements, therefore, were published in Ohio, and the Betzold Defendants engaged in defamation in Ohio, thereby satisfying Ohio Rev. Code § 2307.382(A)(3). Further, like the comments in *Kauffman*, the Betzold Defendants' statements clearly were made with the purpose of injuring LLF, an Ohio entity, thereby also satisfying Ohio Rev. Code § 2307.382(A)(6). *See* Am. Compl. ¶ 53 (alleging Betzold "repeatedly refer[s] to LLF clients as 'victims' of LLF"); *Id.*, ¶¶ 193, 213 (alleging Betzold's defamatory statements were made within the scope of his employment at Betzold Law).

**2. Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A)(10) (Count X)**

Claims alleging that defamatory statements and false factual representations resulted in disparagement of services or a plaintiff's business under Ohio's Deceptive Trade Practices Act ("ODTPA") are evaluated in the same manner as defamation claims for purposes of establishing personal jurisdiction under Ohio Rev. Code § 2307.382(A)(6). *See J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08-CV-977, 2009 WL 385611, at *11 (N.D. Ohio Feb. 13, 2009). Here, LLF's ODTPA claim is predicated upon the same conduct encompassed in its defamation claims against the Betzold Defendants. *Compare* Am. Compl. ¶ 16, *with* Am. Compl. ¶¶ 275-276. "Accordingly, applying the analysis from the preceding section to this claim," the Betzold Defendants are subject to personal jurisdiction for Count X under Ohio Rev. Code § 2307.382(A)(6). *J4 Promotions, Inc.*, 2009 WL 385611, at *11.

**3. Tortious Interference with Contract (Engagement Letters) (Count VI), Tortious Interference with Prospective Business Relationship (Count IX), and Conspiracy (Count VII)**

"A defendant is amenable to suit in Ohio for tortious interference pursuant to O.R.C. § 2307.382(A)(6) where he engages in tortious interference out of state which he reasonably expects will injure the plaintiff in Ohio." *Id.*; *see also Kinzie Advanced Polymers, LLC v. Calyx Containers, LLC*, No. 1:24-cv-1887, 2025 WL 2418908, at *13 (N.D. Ohio Aug. 21, 2025) (employing same analysis as for tortious interference with business relations and contract); *Dayton Superior Corp.*, 288 F.R.D. at 163 (holding Ohio's long-arm statute is satisfied with respect to conspiracy claims if conspirators knowingly target Ohio entity). In *J4 Promotions*, the court concluded that the plaintiff, a corporation with its principal place of business in Ohio, made out a prima facie case of personal jurisdiction under Ohio Rev. Code § 2307.382(A)(6) for its tortious interference with business relations claim. *See* 2009 WL 385611, at *11. There, the defendants were alleged to have asked the plaintiff's sponsors to stop sponsoring or reduce their sponsorship of the plaintiff while knowing that the plaintiff and the contacted entities were engaged in business relations. *See id.* The defendants, therefore, committed tortious interference outside of Ohio under circumstances they reasonably expected would injure the plaintiff in Ohio, subjecting them to jurisdiction under Ohio's long-arm statute. *See id.*

Similarly, the Betzold Defendants are alleged to have interfered with LLF's contracts and prospective business relationships by making false, defamatory statements about LLF while knowing of these relationships and that LLF was an Ohio entity. *See* Am. Compl. ¶¶ 240, 244, 266, 268, 269. Under these circumstances, as in *J4 Promotions*, the Betzold Defendants did expect—or should have reasonably expected—to injure LLF, an Ohio entity, in Ohio. Accordingly, Ohio Rev. Code § 2307.382(A)(6) is satisfied for LLF's tortious interference counts against the Betzold Defendants.

**4. Lanham Act (Count VIII)**

Where it is reasonable to assume that a defendant knew that a plaintiff was an Ohio company and might suffer losses as a result of the conduct underlying a Lanham Act claim, an out-of-state defendant is amenable to suit for that claim under Ohio Rev. Code § 2307.382(A)(6). *See LeafFilter N., LLC v. Home Craft Builders, Inc.*, 487 F. Supp. 3d 643, 647 (N.D. Ohio 2020). In *LeafFilter*, the court determined that Ohio Rev. Code § 2307.382(A)(6) was satisfied for the plaintiff's Lanham Act claims,[3] among others, because the defendant was alleged to be familiar with the plaintiff's "website, former employees, and marketing materials." *Id.* Thus, the court found it was reasonable to assume that the defendant knew the plaintiff was an Ohio company and may suffer losses as a result of defendant's conduct in Ohio. *Id.*

Likewise, here, the Betzold Defendants are alleged to be competitors to LLF and familiar with LLF's current and former employees, non-disclosure agreements, current and former client files, and legal positions. *See* Am. Compl. ¶ 41, 42, 48, 62, 142, 159. Therefore, as in *LeafFilter*, it is reasonable to assume that the Betzold Defendants knew that LLF was an Ohio company and might reasonably expect that LLF would suffer losses in Ohio as a result of the Betzold Defendants' Lanham Act violation. *See* Am. Compl. ¶¶ 239, 268. Accordingly, the effect of the Betzold Defendants' Lanham Act violation satisfies Ohio Rev. Code § 2307.382(A)(6). *See LeafFilter N., LLC*, 487 F. Supp. 3d at 647.

---

[3] The court made a typographical error in describing the plaintiff's Lanham Act claims as false advertising claims under 15 U.S.C. § 112(a)(1)(B) and federal unfair competition under 15 U.S.C. § 112(a)(1)(A). *See LeafFilter N., LLC*, 487 F. Supp. 3d at 646. Those statutes do not exist, and the court was instead referring to 15 U.S.C. § 1125(a)(1)(A) and (B).

### B. **The Court's Exercise of Personal Jurisdiction Over the Betzold Defendants Does Not Offend Due Process.**

Due process merely requires that a defendant possess such "minimum contacts" "with the forum State . . . such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980). Courts in the Sixth Circuit utilize a three-part test to determine whether due process is satisfied in specific jurisdiction cases, such as this action:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Musto*, 2018 WL 1565604 at *4 (quoting *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012)).

Each element is easily satisfied here. Indeed, as recognized in *Musto*, the due process analysis for defamation and defamation-related claims, such as the ODTPA and tortious interference with business relationships, does not require "much explanation" because "[d]efamatory statements published online about an Ohio resident and seen by Ohio residents is enough to subject the alleged defamer to personal jurisdiction in Ohio without offending the defendant's due process rights." *Id.* at *6 (citing *Kauffman Racing Equip., L.L.C.*, 930 N.E.2d 784). In *Musto*, because the plaintiffs asserted that the defendant "made multiple disparaging statements about the [plaintiffs] that were false and directed to or seen by" Ohio residents, the plaintiffs "alleged all they need[ed] to satisfy . . . due process." *Id.* at *7.

Likewise, here, due process is satisfied because (a) each of LLF's claims against the Betzold Defendants are defamation or defamation-related claims, *see* Am. Compl. Counts I, III, IV, ¶¶ 244, 260, 269, 275, and (b) LLF alleges that the Betzold Defendants made defamatory

statements about LLF that were published online and viewed by Ohio residents, *see* Am. Compl. ¶¶ 27, 53, 88, 129, 194. Neither the Motion nor its exhibits refute that Ohio residents viewed the Betzold Defendants' defamatory statements. *See generally* Mot. Consequently, LLF has made a prima facie case of personal jurisdiction that the Betzold Defendants do not rebut, and the Motion should be denied.

1. **The Betzold Defendants Purposefully Directed Their Tortious Conduct Towards, and Caused Consequences in, Ohio.**

In intentional torts cases, courts apply the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984) to determine whether the first part of the due process test is satisfied. *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1076 (S.D. Ohio 2022) (applying "effects test" and finding court's exercise of jurisdiction over defendant did not violate due process). In *Calder*, a California resident brought a libel action in California against defendants who published a story in a nationwide magazine. 465 U.S. at 785. Neither defendant resided in California, nor did they physically enter California for reasons related to the story. *See id.* at 785–86. Nevertheless, the Court held that jurisdiction was proper because "[t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm . . . was suffered in California." *Id.* at 788–89. Plus, the defendants "knew that the brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works[.]" *Id.* at 789–90. "In sum, California [was] the focal point both of the story and of the harm suffered." *Id.* at 789. As a result, "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause[d] the injury in California." *Id.* at 790.

In short, then, *Calder's* "effects test" is met when the defendant purposefully aims his conduct at the forum state with the intent to cause harm there. *See Chulsky*, 583 F. Supp. 3d at 1076 (citing *Calder*, 465 U.S. at 790); *see also Kauffman Racing Equip., L.L.C.,* 930 N.E.2d at 794 (applying the effects test and finding due process satisfied because defendant's "[i]nternet commentary reveals a blatant intent to harm [plaintiff]'s reputation. [Defendant] knew that [plaintiff] was an Ohio company. [Defendant] impugned the activities that [plaintiff] undertakes in Ohio. [Defendant] hoped that his commentary would have a devastating effect on [plaintiff] and that if there were fallout from his comments, the brunt of the harm would be suffered in Ohio."); *Kubyn v. Follett*, 141 N.E. 3d 512 (Ohio Ct. App. 11th Distr. 2019). In *Kubyn,* the court held due process was satisfied when a non-resident defendant, the plaintiffs' competitor, "utilized social media to wage a defamatory campaign against the [plaintiffs] personally and against their [dog] breeding business. These statements have been published to thousands of people, including Ohio residents." 141 N.E. 3d at 517, 519-20. The court, "[c]onstruing the rather limited allegations and evidence in the [plaintiff]s' favor, as we must in the absence of an evidentiary hearing or jurisdictional discovery," found "the purposeful availment element satisfied. [Plaintiffs] have established a prima facie case that [defendant] has, if not exactly availing herself of the privilege of acting in Ohio, purposefully undertaken to cause harmful consequences in Ohio." *Id.* at 520.

This action closely parallels *Kubyn* and *Kauffman.* Here, the Betzold Defendants':

> [i]nternet commentary reveals a blatant intent to harm [LLF]'s reputation [*see, e.g.,* Am. Compl., ¶¶ 88, 129–30, 157]. [The Betzold Defendants] knew that [LLF] was an Ohio company [Am. Compl., ¶¶ 71, 268]. [The Betzold Defendants] impugned the activities that [LLF] undertakes in Ohio [Am. Compl., ¶¶ 50, 92, 129–30]. [The Betzold Defendants] hoped that [their] commentary would have a devastating effect on [LLF] and that if there were fallout from [their] comments, the brunt of the harm would be suffered in Ohio [Am. Compl., ¶¶ 27, 53, 71, 88, 129, 194].

*Kauffman Racing Equip., L.L.C.,* 930 N.E.2d at 793. Indeed, the Betzold Defendants even contacted Ohioans. Am. Compl. ¶¶ 41, 65.

And as in *Kubyn*, the Betzold Defendants "utilized social media to wage a defamatory campaign against [LLF] personally and against [its legal] business [Am. Compl., ¶¶ 24, 31, 32, 45, 48, 49, 57, 59, 169]. [The Betzold Defendants'] statements have been published to thousands of people, including Ohio residents [*see, e.g.,* Am. Compl. ¶¶ 27, 53, 88, 129, 194]." *Kubyn,* 141 N.E. 3d at 517; *see also* Ex. 1. Accordingly, as in *Kauffman* and *Kubyn*, "the purposeful availment element [is] satisfied. [LLF] ha[s] established a prima facie case that [the Betzold Defendants] ha[ve], if not exactly availing [themselves] of the privilege of acting in Ohio, purposefully undertaken to cause harmful consequences in Ohio." *See Kubyn,* 141 N.E. 3d at 520.

This action also closely parallels *Calder*. The Betzold Defendants' defamatory statements about LLF concerned the activities—providing legal immigration services—of an Ohio resident that took place in Ohio, among other states. *See* Am. Compl. ¶¶ 15, 50, 92. These statements impugned the professional reputation of an Ohio company centered in Ohio. *See id.,* ¶ 69. The Betzold Defendants directed their tortious conduct into Ohio, and the brunt of that harm was and continues to be suffered in Ohio. *See id.*, ¶¶ 41, 69, 88. Additionally, because of the Betzold Defendants' familiarity with LLF, they knew that LLF was an Ohio company and that the brunt of the harm would be suffered in Ohio.

The Betzold Defendants ignore these directly on point cases and instead rely on *Walden v. Fiore*, 571 U.S. 277 (2014), *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021), and *Carbone v. Kaal*, 140 F.4th 805 (6th Cir. 2025), but such reliance is misplaced. *Walden* involved a Fourth Amendment *Bivens* claim against a police officer accused of seizing cash from Nevada residents at a Georgia airport and submitting a false probable cause affidavit in Georgia. *See* 571 U.S. at 280-81. The Court found Nevada courts lacked personal jurisdiction over the officer because the unlawful seizure giving rise to the plaintiffs' claim took place in Georgia; because

"the defendant's suit-related conduct" did not "create a substantial connection with the forum State," the court lacked jurisdiction over the defendant. *Id.* at 284. *Walden*, then, stands for the unremarkable point that "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 289-90. Indeed, the Court recognized "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff," and in *Calder*, the tort actually occurred in the forum state. *Id.* at 287. Indeed, the *Walden* Court recognized that the case did "not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State. To the contrary, there [was] no question where the conduct giving rise to this litigation took place[.]" *Id.* at 290 n.9. Thus, the Court "le[ft] questions about virtual contacts for another day." *Id.*

Similarly, in *Blessing*, the out-of-state defendants made isolated remarks about the plaintiffs' out-of-state conduct that were "not specifically directed at the forum state," and the complaint lacked allegations that anyone in the forum state even saw the remarks. 988 F. 3d at 905. *Blessing*, then, is inapposite, as is *Carbone*. There, the Connecticut plaintiff brought defamation, tortious interference, breach of fiduciary duty, and negligent misrepresentation claims in Ohio against non-Ohio defendants who were alleged to have posted defamatory statements about the plaintiff on websites that used an Ohio-based web server. *Carbone*, 140 F.4th at 807–08. The court held the defendants "did not purposefully avail themselves of the privilege of acting in Ohio through their alleged tortious conduct" because (1) "Defendants never visited Ohio or contacted anyone there"; (2) "the complaint does not allege that anyone in Ohio read the defamatory statements"; (3) "Defendants' allegedly tortious actions never targeted anyone in Ohio"; (4) unlike *Calder*, the plaintiff "never asserted that the defamatory statements concerned conduct occurring in Ohio or Ohio residents"; and (5) the plaintiff did not contend that "he suffered

an injury in Ohio." *Id.* at 812. None of these facts from *Carbone* are analogous to the instant case. Instead, LLF is an Ohio plaintiff, as explained above the Complaint asserts Ohio residents viewed the Betzold Defendant's defamatory statements, and the Betzold Defendants targeted their tortious conduct at Ohio and to Ohioans. As in *Calder, Kubyn*, and *Kauffman*, this Court may exercise personal jurisdiction over the Betzold Defendants without offending due process.

Betzold's bare-bones declaration, focused myopically on whether Betzold physically entered Ohio, does not change the analysis. Again, when a defendant targets his conduct at Ohio through virtual or other means, this Court may exercise jurisdiction over him without offending due process. *See, e.g., Kauffman Racing Equip., L.L.C.,* 930 N.E.2d at 793.[4]

**2. The Claims Against the Betzold Defendants Arise From Their Ohio Contacts.**

Demonstrating that a cause of action arises from a defendant's contacts in the forum state is a "lenient standard that asks whether the causes of action are related to or connected with the defendant's contacts with the forum state." *Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 452 (S.D. Ohio 2023) (citation and quotation marks omitted). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Kauffman Racing Equip., L.L.C.*, 930 N.E. 2d at 796–97.

Here, it is the Betzold Defendants' Ohio-directed conduct, as described in Sections III.A-B.1, that gives rise to LLF's causes of action for defamation (Counts I and III), tortious interference

[4] Betzold's affidavit's claim that "[b]ased upon information and belief, [he] did not communicate with anyone in Dublin, Ohio on or about June 2, 2026" should not be considered. Mot., Ex. 5 ¶ 9; *see Drago v. Live Nation Entm't, Inc.*, 555 F. Supp. 3d 519, 535 (N.D. Ohio 2021) ("Affidavits based on mere 'information and belief,' as opposed to facts the affiant *knows* to be true, are not proper.") (quoting *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007)); *Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co.*, No. 08-487, 2008 WL 5190049, at *5 (S.D. Ohio Dec. 9, 2008) ("[A]ffidavits must be based on 'personal knowledge' and statements of 'belief' will not be considered.").

with LLF's contracts and business relationships (Counts V, VI, and IX), conspiracy to defame and tortiously interfere with contracts (Counts IV and VII), and Lanham Act and ODTPA violations (Counts VIII and X). Each of these causes of action arise from the Betzold Defendants' targeted defamation campaign. Not only do these claims arise from and relate to the Betzold Defendants' Ohio conduct, it is the Betzold Defendants' tortious conduct in Ohio that provides the very basis for these claims. The second part of the due process test therefore is satisfied. *See, e.g., Kubyn*, 141 N.E. 3d at 521–22 (finding "second element readily satisfied" where defendant's defamatory statements were the "conduct/contacts" from which the plaintiff's claims arose).

**3. It is Reasonable for the Court to Exercise Jurisdiction Over the Betzold Defendants.**

The final part of the due process tests is determining whether the court's exercise of jurisdiction over the defendant is reasonable. *Id.* at 522. "When the first two elements of a prima facie case [are satisfied] then an inference arises that this third factor is also present and [o]nly the unusual case will not meet this third criterion." *Id.* (citations and quotation marks omitted, alteration in *Kubyn*); *see also Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988) (explaining where "the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion.") (citation omitted). In evaluating reasonableness, courts consider several factors, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) (quoting *Am. Greetings Corp.*, 839 F.2d at 1169–70).

Here, the Betzold Defendants do not present any evidence suggesting the Court's exercise of jurisdiction over them is unreasonable or burdensome. Nor is "it at all unreasonable that [LLF] should seek redress for [its] alleged wrongs in the forum where those wrongs have been suffered or that Ohio should provide a forum for their redress." *Kubyn*, 141 N.E. 3d at 522. Indeed:

> Ohio's long-arm statute expressly sanctions the exercise of jurisdiction over those who cause tortious injury within [Ohio] regardless of where the tortious conduct occurred when such exercise is consistent with constitutional due process requirements. Admittedly such conduct is greatly facilitated and enabled by the development of the internet and social media, but this development does not alter the scope of the jurisdiction of Ohio's courts.

*Id.* The Betzold Defendants targeted an Ohio law firm in their defamatory social media campaign and false advertising; they reasonably should expect to be hailed into Ohio's courts to account for their tortious acts. *See id.*; Ex. 1 ¶ 13.

Additionally, Ohio has a "significant interest" in this action because it concerns "redressing injuries that actually occur[ed] within the State." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 776 (1984). "Ohio has a legitimate interest in protecting the business interests of its citizens[.]" *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). LLF "has a substantial interest in obtaining relief. Nor does any other state have a greater interest in resolving the controversy given that the injury occurred here." *Snabel v. Great States Corp.*, No. 1:19-cv-2052, 2020 WL 1814148, at *4 (N.D. Ohio Apr. 9, 2020). As such, the exercise of personal jurisdiction over the Betzold Defendants is reasonable and is harmonious with due process.

### C. Alternatively, the Court should Defer Ruling on the Motion until the Plaintiff Conducts Jurisdictional Discovery and the Court has an Evidentiary Hearing.

The foregoing authorities make clear that LLF easily satisfied its burden of making a prima facie showing that this Court's exercise of due process over the Betzold Defendants is consistent with Ohio's long-arm statute and due process, and the Court should decide this matter on the affidavits alone. *See Malone*, 965 F.3d at 504. Should the Court disagree, though, the Court should "permit discovery in aid of deciding the motion" and conduct an evidentiary hearing after that evidence is collected to resolve factual questions regarding the Betzold Defendants' contacts in Ohio, such as whether they have represented any Ohio-based clients, including LLF clients, among other facts relevant to jurisdiction. *See Theunissen*, 935 F.2d at 1458.

LLF has already pleaded a concrete factual basis for personal jurisdiction. *See supra* § III.A-B. The Complaint alleges that the Betzold Defendants made defamatory statements about LLF—an Ohio law firm—that were viewed in Ohio, that those statements were made with the purpose of injuring LLF in Ohio, and that the Betzold Defendants interfered with LLF's contracts and prospective business relationships, knowing that the resulting injury would be suffered in Ohio. *See* Am. Compl. ¶¶ 27, 53, 88, 129, 193, 213, 240, 244, 266, 268. There is a reasonable basis to expect discovery will uncover additional evidence supporting jurisdiction because the relevant facts concerning the Betzold Defendants' Ohio-directed conduct are largely within their possession. *See Malone*, 965 F.3d at 506 (rejecting argument that plaintiff's inability to come forward with jurisdictional evidence at pleading stage justifies denying jurisdictional discovery).

Moreover, Betzold's affidavit raises factual questions that would be resolved through limited jurisdictional discovery. Even if Betzold's affidavit is taken at face value, it does not foreclose the possibility that Betzold did, in fact, have Ohio-directed contacts beyond what the affidavit discloses, such as representing clients in Ohio, including LLF's clients or former clients. As in *Malone*, while Betzold's affidavit may describe some things the Betzold Defendants say they did not do, "it leaves plenty of questions about what [they] did do." *Malone,* 965 F.3d at 506. Jurisdictional discovery would fill those factual gaps. Should the Court require jurisdictional discovery, LLF would seek discovery concerning: (1) records of the Betzold Defendants' communications with LLF's Ohio-based clients and Ohio-based former team members; (2) analytics and traffic data for visafraud.law showing the number and location of Ohio-based visitors; (3) documents and communications reflecting Betzold's coordination with other Defendants in connection with conducting outreach to LLF's Ohio-based clients and team members, including any communications related to the June 2, 2026 contact with a former LLF

team member based in Dublin, Ohio; and, among other things, (4) documents and communications reflecting the Betzold Defendants' contact with Ohioans regarding LLF and other disparagement, or efforts to interfere with contracts and business relationships of, LLF.

Accordingly, if the Court is not prepared to deny the Motion based upon the affidavits alone, it should defer ruling and permit limited jurisdictional discovery and an evidentiary hearing.

## IV. Conclusion

Because the Betzold Defendants knowingly targeted an Ohio entity, impugned the activities LLF undertakes in Ohio, among other states, and the brunt of the harm the Betzold Defendants caused was—and continues to be—felt in Ohio, this Court's exercise of personal jurisdiction over the Betzold Defendants is consistent with both Ohio's long arm statute and due process. The Motion and Betzold Affidavit fail to rebut LLF's prima facie showing of personal jurisdiction, and the Motion therefore should be denied.

WHEREFORE, LLF respectfully requests that the Court enter an Order (a) denying the Motion; and (b) granting LLF such other and further relief as the Court deems proper.

Jason P. Mehta (*pro hac vice*)
Primary email: jmehta@foley.com
Secondary email: jwilliams@foley.com
Heather A. Lee (*pro hac vice*)
Primary email: hlee@foley.com
Secondary email: jwilliams@foley.com
**FOLEY & LARDNER LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300

Olivia S. Singelmann (*pro hac vice*)
Primary email: osingelmann@foley.com
Secondary email: acunningham@foley.com
**FOLEY & LARDNER LLP**
3000 K St. NW, Suite 600
Washington, DC 20007
Telephone: (202) 672-5300

*/s/ David J. Butler*
David J. Butler (0068455), Trial Attorney
Email: dbutler@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
41 S. High Street, Suite 1800
Columbus, Ohio 43215-4213
Phone: (614) 221-2838

David M. DeVillers (0059456)
Email: David.DeVillers@btlaw.com
**BARNES & THORNBURG LLP**
41 S. High St. Suite 3300
Columbus, Ohio 43215
Phone: (614)-628-0096

*Counsel for Plaintiff The Lisinski Law Firm, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on October 12, 2026, a true and correct copy of the foregoing was electronically filed through the Florida e-filing Portal and served on Defendant Camila Overmyer a/k/a Camelia Guad Magana Madrigal, *pro se*, via (a) United States Mail to 4020 Eagle Drive, Gosport, IN 47433; and (b) electronic mail to camilaovermyer@icloud.com.

*/s/ David J. Butler*
Attorney