**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

THE LISINSKI LAW FIRM, LLC,

Plaintiff,

v.

CAMILA OVERMYER a/k/a
CAMELIA GUAD MAGANA MADRIGAL,
JAMES BETZOLD,
ROBERT ALVAREZ,
INNA SIMAKOVSKY,
BETZOLD LAW, PLC d/b/a VISA FELIZ,
AVANTI LAW GROUP, PLLC,
SIMAKOVSKY LAW GROUP, LLC, and
JOHN DOES 1–6,

Defendants.

Case No. 2:26-CV-00704-DRC-KAJ

JUDGE DOUGLAS R. COLE

MAGISTRATE JUDGE
KIMBERLY A . JOLSON

**RESPONSE TO DEFENDANT CAMILA OVERMYER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)**

Plaintiff The Lisinski Law Firm, LLC ("LLF"), by and through its undersigned counsel, submits this response to Defendant Camila Overmyer's ("Overmyer") Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) (ECF No. 42, the "Motion"). For the reasons set forth below, the Motion should be denied.

## I. Introduction

This action arises from Overmyer and her co-conspirators' unrelenting efforts to disparage LLF, ruin its reputation, and engender fear and distrust in LLF's clients and potential clients to enrich Overmyer and LLF's competitors. Overmyer began her attacks in 2025 and, since that time, has intentionally directed her vitriol towards LLF, an Ohio law firm. Overmyer has published dozens, if not hundreds, of videos on social media, namely TikTok, that contain crass and defamatory statements about LLF and that (i) were accessible in Ohio; (ii) were accessed by

persons in Ohio; (iii) financially benefited Overmyer through, in part, Ohio residents' viewership; (iv) were made with knowledge that they were about an Ohio law firm; and (v) harmed an Ohio law firm. Yet, Overmyer now argues – in an unverified Motion lacking any evidentiary support – that this Court lacks jurisdiction over her because she lives in Indiana. Mot., p. 4.

Overmyer is wrong. As explained below, this Court's exercise of jurisdiction over Overmyer is consistent both with Ohio's long-arm statute, Ohio Rev. Code § 2307.382(A), and due process. The declaration of Olivia Singelmann, attached hereto as **Exhibit 1**, verifies the jurisdictional allegations set forth in the Complaint. Overmyer's unverified Motion, which was submitted without any supporting affidavit or declaration, does not set forth facts or law to the contrary. Accordingly, the Motion should be denied.

## II. Legal Standard

"To defeat [a] motion to dismiss [for lack of personal jurisdiction], [p]laintiffs need only make a prima facie showing of jurisdiction" *Musto v. Zaro*, No. 2:17-CV-506, 2018 WL 1565604, at *3 (S.D. Ohio Mar. 30, 2018); *see also PNC Equip. Fin., LLC v. Mariani*, No. 1:14-cv-663, 2015 WL 4464810, at *2 (S.D. Ohio July 21, 2015). This showing may be made "merely through the complaint . . . . The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citation omitted). Without evidence from the defendant, or when the Court decides the motion without evidentiary hearing, the plaintiff's burden "consists of a prima facie showing that personal jurisdiction exists," which can be done through the complaint. *Id.* at 505. (quotation marks and citation omitted). Further, in ruling on a motion to dismiss for lack of jurisdiction, courts must construe the allegations and evidence "in a light most favorable to the plaintiff and resolv[e] all reasonable competing inferences in favor of the plaintiff." *Kauffman Racing Equip., L.L.C. v.*

*Roberts*, 930 N.E.2d 784, 790 (2010) (quotation marks omitted); *see also, e.g., Musto*, 2018 WL 1565604, at *3.

When faced with a motion to dismiss for lack of personal jurisdiction, then, the court, taking the complaint's allegations as true and in the light most favorable to the plaintiff, must assess 1) whether the non-resident defendant is "amenable to suit under Ohio's long-arm statute; and 2) [whether the] exercise of personal jurisdiction over the defendant [would] violate due process." *PNC Equip. Fin., LLC*, 2015 WL 4464810, at *2 (citation omitted).

## III. <u>Argument</u>

Overmyer does not dispute that the Complaint satisfies Ohio's long-arm statute; she argues only that the Court's exercise of jurisdiction over her does not comport with due process. *See generally* Mot., & p. 6. Accordingly, this Response does not address Ohio's long-arm statute, which indisputably is satisfied here, other than to say "Ohio's long-arm statute provides jurisdiction over parties that publish defamatory statements on the internet directed at Ohio residents and other Ohio residents see those statements" because "this act constitutes '[c]ausing tortious injury by an act or omission in'" Ohio. *Musto*, 2018 WL 1565604, at *4 (quoting Ohio Rev. Code § 2307.382(A)(3)); *see also* Compl., ¶¶ 27, 53, 88, 129, 194, 234, 239, 242, 250-51, 268-69 (alleging Overmyer's defamatory statements were viewed by Ohio residents, that Overmyer tortiously interfered with LLF's clients, and that Overmyer knew LLF is an Ohio entity).[1]

[1] In *Kauffman*, an out-of-state defendant posted defamatory comments online about an Ohio entity, such as that he was "[j]ust trying to help other potential victims" of the entity. *Id.* at 788. "Despite the fact that [defendant]'s publication of his comments did not emanate from Ohio" and he had "never physically entered Ohio," the court held Ohio's long-arm statute was satisfied because "[t]he tort of libel occurs in the locale where the offending material is circulated (published) by the defendant to a third party." *Id.* at 787, 791. It explained that because "at least five Ohioans saw [the defendant]'s statements," his "comments were thus published in Ohio" and "his alleged tort

Overmyer does challenge whether the Court's exercise of jurisdiction over her comports with due process. *See generally*, Mot. Because Overmyer's Motion is unsupported by any evidence LLF need only make a prima facie showing of jurisdiction, which may be based on the complaint's allegations, taken as true and in the light most favorable to LLF. *See Malone*, 965 F.3d at 504–05; *Musto*, 2018 WL 1565604, at *3. LLF has met its burden of making a prima facie showing that this Court's exercise of jurisdiction over Overmyer comports with due process, thus the Motion should be denied. *See Malone*, 965 F.3d at 504.

Due process requires "there exist minimum contacts between the defendant and the forum State" such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980). Courts in the Sixth Circuit utilize a three-part test to determine whether due process is satisfied in specific jurisdiction cases:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Musto*, 2018 WL 1565604, at *4 (quoting *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012)). Notably, "[d]efamatory statements published online about an Ohio resident and

---

was committed in Ohio," subjecting him to personal jurisdiction under Ohio Rev. Code § 2307.382(A)(3). *Id.* at 791. The Court held Ohio Rev. Code § 2307.382(A)(6) also was satisfied because it was "clear from the postings that [the defendant]'s statements were made with the purpose of injuring" an Ohio resident, which would cause a person to reasonably expect that an injury would occur in Ohio. *Id.* at 792; *see also J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08-CV-977, 2009 WL 385611, at *11 (N.D. Ohio Feb. 13, 2009) ("A defendant is amenable to suit in Ohio for tortious interference pursuant to O.R.C. § 2307.382(A)(6) where he engages in tortious interference out of state which he reasonably expects will injure the plaintiff in Ohio."); *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 163 (S.D. Ohio 2012) (Ohio's long-arm statute "confers personal jurisdiction where a non-resident allegedly committed . . . civil conspiracy outside of Ohio knowing that" the targeted entity is an Ohio entity).

seen by Ohio residents is enough to subject the alleged defamer to personal jurisdiction in Ohio without offending the defendant's due process rights." *Id.* at *6-7 (citing *Kauffman Racing Equip., L.L.C.*, 126 Ohio St.3d 81). LLF has made a prima facie showing that each part of the due process test is satisfied.

**A. Overmyer Purposefully Directed Her Tortious Conduct Towards, and Caused Consequences, in Ohio.**

In intentional torts cases, courts apply the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984) to determine whether the first part of the due process test is satisfied. *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1076 (S.D. Ohio 2022) (applying "effects test" and finding court's exercise of jurisdiction over defendant did not violate due process). In *Calder*, a California resident brought a libel action in California against defendants who published a story in a nationwide magazine. 465 U.S. at 785. Neither defendant resided in California, and whether they physically entered California for reasons related to the story was irrelevant to the Court's holding. *See id.* at 785–86. Nevertheless, the Court held that jurisdiction was proper because "[t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm . . . was suffered in California." *Id.* at 788–89. Plus, the defendants "knew that the brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works[.]" *Id.* at 789–90. "In sum, California [was] the focal point both of the story and of the harm suffered." *Id.* at 789. As a result, "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly caused the injury in California." *Id.* at 790.

In short, then, *Calder's* "effects test" is met when the defendant purposefully aims her conduct at the forum state with the intent to cause harm there. *See Chulsky*, 583 F. Supp. 3d at

1076 (citing *Calder*, 465 U.S. at 790); *see also Kauffman Racing Equip., L.L.C.,* 930 N.E.2d at 794 (applying the effects test and finding due process satisfied because defendant's "[i]nternet commentary reveals a blatant intent to harm [plaintiff]'s reputation. [Defendant] knew that [plaintiff] was an Ohio company. [Defendant] impugned the activities that [plaintiff] undertakes in Ohio. [Defendant] hoped that his commentary would have a devastating effect on [plaintiff] and that if there were fallout from his comments, the brunt of the harm would be suffered in Ohio."); *Kubyn v. Follett*, 141 N.E. 3d 512 (Ohio Ct. App. 2019). In *Kubyn,* the Court held due process was satisfied when a non-resident defendant, the plaintiffs' competitor, "utilized social media to wage a defamatory campaign against the [plaintiffs] personally and against their [dog] breeding business. These statements have been published to thousands of people, including Ohio residents." 141 N.E. 3d at 517, 519-20. The Court, "[c]onstruing the rather limited allegations and evidence in the [plaintiff]s' favor, as we must in the absence of an evidentiary hearing or jurisdictional discovery," found "the purposeful availment element satisfied. [Plaintiffs] have established a prima facie case that [defendant] has, if not exactly availing herself of the privilege of acting in Ohio, purposefully undertaken to cause harmful consequences in Ohio." *Id.* at 520.

This action closely parallels *Kubyn* and *Kauffman.* Here, Overmyer's:

> [i]nternet commentary reveals a blatant intent to harm [LLF]'s reputation [*see, e.g.,* Am. Compl., ¶ 88]. [Overmyer] knew that [LLF] was an Ohio company [Am. Compl., ¶¶ 71, 121]. [Overmyer] impugned the activities that [LLF] undertakes in Ohio [Am. Compl., ¶¶ 28, 71, 88, 123]. [Overmyer] hoped that [her] commentary would have a devastating effect on [LLF] and that if there were fallout from [her] comments, the brunt of the harm would be suffered in Ohio [Am. Compl., ¶¶ 66, 129].

*Kauffman Racing Equip., L.L.C.,* 930 N.E.2d at 794.

And as in *Kubyn*, Overmyer "utilized social media to wage a defamatory campaign against [LLF] personally and against [its legal] business [Am. Compl., ¶¶ 12, 14, 32, 47, 110, 123, 169]. [Overmyer's] statements have been published to thousands of people, including Ohio residents

[*see, e.g.,* Am. Compl. ¶¶ 27, 53, 88, 129, 194]." 141 N.E. 3d at 517, 519-20; *see also* Ex. 1. Accordingly, as in *Kauffman* and *Kubyn*, "the purposeful availment element satisfied. [LLF] ha[s] established a prima facie case that [Overmyer] has, if not exactly availing herself of the privilege of acting in Ohio, purposefully undertaken to cause harmful consequences in Ohio." *See Kubyn,* 141 N.E. 3d at 520.[2]

**B. LLF's Claims Against Overmyer Arise From Overmyer's Ohio Contacts.**

Demonstrating that a cause of action arises from the defendant's contacts in the forum state is a "lenient standard that asks whether the causes of action are related to or connected with the defendant's contacts with the forum state." *Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 452 (S.D. Ohio 2023) (citation and quotation marks omitted). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Kauffman Racing Equip., L.L.C.*, 930 N.E. 2d at 796–97 (citation and quotation marks omitted).

[2] Overmyer ignores these directly on point cases and instead relies on *Walden v. Fiore*, 571 U.S. 277 (2014) and *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021), but such reliance is misplaced. *Walden* involved a Fourth Amendment *Bivens* claim against a police officer accused of seizing cash from Nevada residents at a Georgia airport and submitting a false probable cause affidavit in Georgia. *See* 571 U.S. at 280-81. The Court found Nevada courts lacked personal jurisdiction over the officer because the unlawful seizure giving rise to the plaintiffs' claim took place in Georgia; because "the defendant's suit-related conduct" did not "create a substantial connection with the forum State," the court lacked jurisdiction over the defendant. *Id.* at 284. *Walden*, then, stands for the unremarkable point that "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 289-90. Indeed, the Court recognized "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff," and in *Calder*, the tort actually occurred in the forum state. *Id.* at 287. Similarly, in *Blessing*, the out-of-state defendants made isolated remarks about the plaintiffs' out-of-state conduct that were "not specifically directed at the forum state," and the complaint lacked allegations that anyone in the forum state even saw the remarks. 988 F. 3d at 905. *Blessing*, then, is inapposite.

Here, it is Overmyer's Ohio-directed conduct, as described in Section III.A, that gives rise to LLF's causes of action for defamation (Counts I and III), tortious interference with LLF's contracts and business relationships (Counts V, VI, and IX), and conspiracy to defame and tortiously interfere with contracts (Counts IV and VII). Each of these causes of action arise from Overmyer's targeted defamation campaign. Not only do these claims arise from and relate to Overmyer's Ohio conduct, it is Overmyer's tortious conduct in Ohio that provides the very basis for these claims. The second part of the due process test therefore is satisfied. *See, e.g., Kubyn*, 141 N.E. 3d at 521–22 (finding "second element readily satisfied" where defendant's defamatory statements were the "conduct/contacts" from which the plaintiff's claims arose).

**C. It is Reasonable for the Court to Exercise Jurisdiction Over Overmyer.**

The final part of the due process tests is determining whether the court's exercise of jurisdiction over the defendant is reasonable. *Id.* at 522. "When the first two elements of a prima facie case [are satisfied] then an inference arises that this third factor is also present and [o]nly the unusual case will not meet this third criterion." *Id.* (citations and quotation marks omitted, alteration in *Kubyn*); *see also Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988) (where "the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion.") (citation omitted). In evaluating reasonableness, courts consider several factors, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) (quoting *Am. Greetings Corp.*, 839 F.2d at 1169–70).

Here, Overmyer does not present any evidence suggesting the Court's exercise of jurisdiction over her is unreasonable or burdensome. Nor is "it at all unreasonable that [LLF] should seek redress for [its] alleged wrongs in the forum where those wrongs have been suffered

or that Ohio should provide a forum for their redress." *Kubyn*, 141 N.E. 3d at 522. Indeed:

> Ohio's long-arm statute expressly sanctions the exercise of jurisdiction over those who cause tortious injury within [Ohio] regardless of where the tortious conduct occurred when such exercise is consistent with constitutional due process requirements. Admittedly such conduct is greatly facilitated and enabled by the development of the internet and social media, but this development does not alter the scope of the jurisdiction of Ohio's courts.

*Id.* Overmyer targeted an Ohio law firm in her defamatory social media campaign; she reasonably should expect to be hailed into Ohio's courts to account for her tortious acts. *See id.*; Ex. 1 ¶ 13.

Additionally, Ohio has a "significant interest" in this action because it concerns "redressing injuries that actually occur[ed] within the State." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 776 (1984). "Ohio has a legitimate interest in protecting the business interests of its citizens[.]" *Bird v. Parsons*, 289 F.3d 865, 875(6th Cir. 2002). LLF "has a substantial interest in obtaining relief. Nor does any other state have a greater interest in resolving the controversy given that the injury occurred here." *Snabel v. Great States Corp.*, No. 1:19-cv-2052, 2020 WL 1814148, at *4 (N.D. Ohio Apr. 9, 2020). As such, the exercise of personal jurisdiction over Overmyer is reasonable and is harmonious with due process.

## IV. Conclusion

Because Overmyer knowingly targeted an Ohio entity, impugned the activities LLF undertakes in Ohio, among other states, and the brunt of the harm Overmyer caused was – and continues to be – felt in Ohio, this Court's exercise of personal jurisdiction over Overmyer is consistent with both Ohio's long arm statute and due process. The Motion fails to rebut LLF's prima facie showing of personal jurisdiction and therefore should be denied.

Respectfully submitted,


Jason P. Mehta (*Pro hac vice*)
Primary email: jmehta@foley.com
Secondary email: jwilliams@foley.com
Heather A. Lee (*pro hac vice*)

*/s/ David J. Butler*
David J. Butler (0068455), Trial Attorney
Email: dbutler@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**

Primary email: hlee@foley.com
Secondary email: jwilliams@foley.com
**FOLEY & LARDNER LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300

Olivia Singelmann
Primary email:
osingelmann@foley.com
**FOLEY & LARDNER, LLP**
Washington Harbour
3000 K Street N.W, Suite 600
Washington, D.C. 20007-5109
Phone: 206-672-5300

41 S. High Street, Suite 1800
Columbus, Ohio 43215-4213
Phone: (614) 221-2838

David M. DeVillers (0059456)
Email: David.DeVillers@btlaw.com
**BARNES & THORNBURG LLP**
41 S. High St. Suite 3300
Columbus, Ohio 43215
Phone: (614)-628-0096

*Counsel for Plaintiff The Lisinski Law Firm, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 12, 2026, a true and correct copy of the foregoing was electronically filed through CM/ECF, which will provide electronic notice to all counsel of record, and served on Defendant Camila Overmyer a/k/a Camelia Guad Magana Madrigal, *pro se*, via (a) United States Mail to 4020 Eagle Drive, Gosport, IN 47433; and (b) electronic mail to camilaovermyer@icloud.com.

*/s/ David J. Butler*
David J. Butler