**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

THE LISINSKI LAW FIRM, LLC,

Plaintiff,

v.

CAMILA OVERMYER a/k/a CAMELIA GUAD MAGANA MADRIGAL, JAMES BETZOLD, ROBERTO ALVAREZ, INNA SIMAKOVSKY, BETZOLD LAW, PLC d/b/a VISA FELIZ, AVANTI LAW GROUP, PLLC, SIMAKOVSKY LAW GROUP, LLC, and JOHN DOES 1–6,

Defendants.

Case No. 2:26-cv-00704-DRC-KAJ
Judge Douglas R. Cole
Magistrate Judge Kimberly A. Jolson

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS JAMES BETZOLD AND BETZOLD LAW, PLC, UNDER RULE 12(b)(2)**

Defendants James Betzold and Betzold Law, PLC ("Betzold Law," and together, the "Betzold Defendants") submit this Reply in further support of their Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) (ECF No. 37, the "Motion") and in response to Plaintiff's Opposition (ECF No. 55, the "Opposition" or "Opp.").

## I. Introduction.

The Amended Complaint does not attribute to Mr. Betzold, as opposed to other Defendants, a single statement or act that was made in Ohio, aimed at Ohio, or seen by anyone in Ohio. Mr. Betzold supported his Motion with a sworn affidavit. The Opposition was Plaintiff's opportunity to come forward with specific facts. Instead it attempts to abandon the only long-arm provision pleaded in either complaint in favor of a new one; repackages group allegations against "the Betzold Defendants" or "Betzold and Overmyer" as Mr. Betzold's own conduct; and offers a declaration from its own counsel describing three TikTok videos, none of which mentions Ohio, and one of which is not Mr. Betzold's statement at all. Meanwhile, Plaintiff's founder alleged in

her own Florida lawsuit over the same controversy that the content "specifically targeted Lisinski, a Florida resident." (Motion, Ex. 2 ¶ 34.) And the principal federal decision Plaintiff cites for its theory, *LeafFilter, infra*, held that the court lacked personal jurisdiction.

Under *Walden v. Fiore* and the Sixth Circuit's internet-speech decisions in *Blessing*, *Johnson*, and *Carbone* – which Ohio intermediate appellate decisions cannot displace – the question is whether Mr. Betzold himself expressly aimed his conduct at Ohio. Nothing in the Amended Complaint, the Opposition, or the Singelmann Declaration says he did. The Betzold Defendants should be dismissed from this case.

## II. Plaintiff cannot stand on its pleadings in the face of Mr. Betzold's affidavit.

Plaintiff emphasizes that a *prima facie* showing "may be made 'merely through the complaint.'" (Opp. at 3, quoting *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020).) But once the defendant supports its motion with evidence, the plaintiff "may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Carbone v. Kaal*, 140 F.4th 805, 808–09 (6th Cir. 2025); *Baker v. Bensalz Prods., Inc.*, 480 F. Supp. 3d 792, 800–01 (S.D. Ohio 2020) (Cole, J.). Although the Court does not weigh a defendant's controverting assertions, *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991), it should "consider the defendant's undisputed factual allegations." *Baker*, 480 F. Supp. 3d at 801. Plaintiff disputes none of the facts in Mr. Betzold's affidavit.

That affidavit establishes that Mr. Betzold resides in western Michigan; that Betzold Law's offices are in Holland and Wyoming, Michigan; that he was never in Ohio when interviewed by Ms. Overmyer or when setting up or amending his firm's website; and that he has never lived in Ohio or worked for an Ohio business. (Motion, Ex. 5 ¶¶ 1–8.) Plaintiff calls the affidavit "bare-bones" and "focused myopically" on physical presence. (Opp. at 14.) But the affidavit is limited

because the allegations it answers are limited. Where a complaint attributes nearly everything to "Defendants" collectively, the burden of identifying what Mr. Betzold did in or toward Ohio remains with Plaintiff.

Plaintiff also faults Mr. Betzold for denying, "[b]ased upon information and belief," any communication with anyone in Dublin, Ohio on or about June 2, 2026. (Opp. at 14 n.4.) But that paragraph answers an allegation that "Betzold and/or Alvarez" contacted an unnamed former LLF employee, and Mr. Betzold stated that "[i]f Plaintiff were to identify this person, I could be more definitive." (Motion at 14; Motion, Ex. 5 ¶ 9.) Plaintiff still has not done so. It cannot use its own vagueness both to excuse its pleading and to fault Mr. Betzold's answer.

Nor are Exhibits 1–4 and 6 "irrelevant." (Opp. at 1–2 & n.1.) They are court filings and a public disciplinary record offered not on the merits but for jurisdictional context: Exhibit 2 shows Plaintiff's principal characterizing the same controversy as aimed at Florida, and Exhibit 6 shows that Plaintiff was told, before amending, that its pleading failed to identify Mr. Betzold's individual conduct. Plaintiff correctly notes that, on a Rule 12(b)(2) motion, the Court "may consider, receive, and weigh affidavits and other relevant materials outside the pleadings." (Opp. at 2, quoting *Doe v. Roman Catholic Diocese of Greensburg*, 581 F. Supp. 3d 176, 189 (D.D.C. 2022).)

## III. Neither the Amended Complaint nor the Singelmann Declaration identifies any Ohio-directed act by Mr. Betzold.

Under both the long-arm statute and due process, the question is what Mr. Betzold himself did. The statute reaches only a person "who acts directly or by an agent," Ohio Rev. Code § 2307.382(A), and Plaintiff alleges no agency. Forum contacts "must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). And because Plaintiff's theory as to Betzold Law is purely derivative of Mr. Betzold's conduct (Opp. at 6, citing Am. Compl. ¶¶ 193, 213), if his conduct does not support jurisdiction, neither does the firm's.

**A. The Amended Complaint.**

Plaintiff's principal allegation is that "Betzold and Overmyer repeatedly refer to LLF clients as 'victims' of LLF." (Opp. at 6, citing Am. Compl. ¶ 53.) That is group pleading. It does not say when, where, on what platform, or to whom Mr. Betzold said this, or that any Ohioan saw it. The Motion raised these questions (Motion at 15); the Opposition does not answer them.

Plaintiff cites paragraphs 27, 53, 88, 129, and 194 of its Amended Complaint to supposedly show that "the Betzold Defendants' defamatory statements were viewed in Ohio." (Opp. at 6.) But Plaintiff cites the identical paragraphs as proof that Ms. Overmyer's statements were viewed in Ohio. (Compare Opp. at 6, 10, 12 with ECF No. 56 at 3, 6–7.) The same allegations cannot supply defendant-specific jurisdictional facts for two different defendants. And Plaintiff asserts that Ohioans viewed the statements only "on information and belief" (Opp. at 4) – the very formulation it asks the Court to reject in Mr. Betzold's affidavit. (Opp. at 14 n.4.)

For the tortious-interference counts, Plaintiff cites paragraphs 240, 244, 266, 268, and 269 of the Amended Complaint as alleging that "the Betzold Defendants" interfered with LLF's contracts. (Opp. at 7.) All but paragraph 244 plead collectively and identify no statement by Mr. Betzold; paragraph 244 merely incorporates earlier allegations that contain no Ohio-specific conduct by him. Plaintiff identifies no Ohio client, engagement, or prospective relationship with which Mr. Betzold interfered.

Plaintiff asserts in one sentence that "the Betzold Defendants even contacted Ohioans." (Opp. at 11, citing Am. Compl. ¶¶ 41, 65.) To the extent this refers to the alleged June 2, 2026 contact with a former LLF employee in Dublin, Ohio, that allegation is pleaded against "Betzold and/or Alvarez," is denied under oath, and is unsubstantiated. (Motion, Ex. 5 ¶ 9.) And a contact with a former employee is not a statement to Plaintiff's clients and caused no identified injury.

**B. The Singelmann Declaration.**

Plaintiff's only evidence is a declaration from one of its own attorneys describing TikTok content. (ECF No. 55-1, the "Singelmann Decl.") Its three substantive paragraphs show no Ohio-directed conduct by Mr. Betzold:

Paragraph 5 describes a May 21, 2026 video in which Mr. Betzold states that authorities "are going to investigate all the cases involving all the attorneys suspected" of fraud and "are not going to want to show you mercy," and that a client who "timely retract[s]" a case may have a better chance of retaining immigration benefits. (Singelmann Decl. ¶ 5.) These general statements about immigration enforcement do not name Plaintiff, do not reference Ohio, and are not alleged to be false. (*See* Motion at 15–16, citing 18 U.S.C. §§ 1546(a), 1015.)

Paragraph 6 describes a May 19, 2026 video posted by Ms. Overmyer, not Mr. Betzold. (Singelmann Decl. ¶ 6.) But the forum relationship "must arise out of contacts that the defendant himself creates." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation and internal quotation marks omitted).

Paragraph 7 describes a May 21, 2026 video in which Mr. Betzold allegedly urged LLF clients to have their cases reviewed, noting that fraudulently procured work permits would be lost anyway but that a civil action might allow them to recover compensation. (Singelmann Decl. ¶ 7.) Taken at face value, that accurately describes a client's rights to seek a second opinion and to pursue claims against a lawyer. *See Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St. 3d 570, 574, 629 N.E.2d 431 (1994). And nothing in it references Ohio or Ohio residents.

The statements actually attributed to Mr. Betzold are national in scope, directed to Spanish-speaking immigrants wherever they reside, and silent about Ohio.

## IV. The exercise of jurisdiction over the Betzold Defendants would violate due process.

The Court may address the statutory and constitutional questions "in either order," and in *Baker* it began and ended with due process. 480 F. Supp. 3d at 801. The same analysis is appropriate here: the due-process question is governed by binding federal precedent, it is dispositive, and it is where Plaintiff's authorities fall short.

### A. Controlling federal authority governs, and Plaintiff's cases are distinguishable.

Plaintiff relies primarily on *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784 (Ohio 2010), *Kubyn v. Follett*, 141 N.E.3d 512 (Ohio Ct. App. 2019), and *Musto v. Zaro*, No. 2:17-cv-506, 2018 WL 1565604 (S.D. Ohio Mar. 30, 2018). But the scope of due process is a federal question on which this Court is bound by the Supreme Court and the Sixth Circuit. *Kauffman* predates *Walden*, which rejected the view that the *Calder* effects test is satisfied merely by an intentional tort aimed at a known forum resident. 571 U.S. at 289–90. *Kubyn* and *Musto* predate *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021), *Johnson v. Griffin*, 85 F.4th 429 (6th Cir. 2023), and *Carbone*. To the extent these decisions treat online statements about an Ohio resident, seen by some Ohioans, as sufficient without more, they cannot be reconciled with that authority.

Each also rests on facts absent here. In *Kauffman*, the posts arose from the defendant's own purchase from the Ohio plaintiff, "specifically mention[ed] Ohio," and prompted Ohio readers to contact the plaintiff, whose "sole base of operations" was in Ohio. 930 N.E.2d 784, 796. Even so, two Justices dissented. *Id.* at 799 (O'Donnell, J., dissenting). *Kubyn* acknowledged that *Walden* "narrowed" the effects test and found jurisdiction only because the defendant marketed to and solicited Ohio purchasers, used Ohio dog-club names to steer internet traffic, and declared an "active goal" of interfering with the plaintiffs' Ohio business. 141 N.E.3d at 517, 520–21. In

*Musto*, the defendant had negotiated with the Ohio plaintiffs and "transacted business in Ohio." 2018 WL 1565604, at *4. Plaintiff identifies no comparable conduct by Mr. Betzold.

**B. *Walden*, *Blessing*, and *Carbone* control. Plaintiff's attempts to distinguish them fail.**

Plaintiff seeks to confine *Walden* to its facts, noting that it left "questions about virtual contacts for another day." (Opp. at 12–13, quoting 571 U.S. at 290 n.9.) But *Walden* made explicit that its principles "apply when intentional torts are involved." 571 U.S. at 286. Footnote 9 reserved only how virtual conduct translates into forum contacts – a question the Sixth Circuit has since answered in a consistent line of internet-speech cases.

In *Blessing*, jurisdiction was absent as a matter of law because the tweets were "not specifically directed at the forum state," even though they concerned Kentucky residents and urged others to contact their school. 988 F.3d at 904–06. Plaintiff responds that the *Blessing* complaint did not allege that anyone in Kentucky saw the remarks. (Opp. at 13.) But the court stressed that there was "no evidence that the defendants posted the tweets hoping to reach Kentucky specifically as opposed to their Twitter followers generally," and endorsed the rule that posting defamatory comments online "does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)." *Id.* at 905 n.15, 906 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)). That "something more" "most likely means a sufficient showing of intent" to reach the forum. *Johnson*, 85 F.4th at 437 (Cole, J., concurring). In any event, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden*, 571 U.S. at 291.

In *Carbone*, there was no purposeful availment where the defendants never visited or contacted anyone in Ohio, no Ohioan was alleged to have read the statements, and Ohio was not the focal point of the story or the harm. 140 F.4th at 812. Plaintiff says *Carbone* is inapposite

because LLF is an Ohio plaintiff. (Opp. at 14.) But the plaintiff's residence is exactly what cannot "drive the jurisdictional analysis." *Walden*, 571 U.S. at 289; *Ross v. Robinson, Hoover & Fudge, PLLC*, 173 F.4th 745, 754 (6th Cir. 2026). Set LLF's domicile aside, and every *Carbone* factor applies here.

By contrast, in *Johnson*, the posts accused the plaintiff of specific conduct in Tennessee, identified him as a Tennessee resident, and tagged his Nashville employer, sending the communications directly to a Tennessee decisionmaker. 85 F.4th at 431–34; *see Carbone*, 140 F.4th at 812. Mr. Betzold is not alleged to have done anything similar.

**C. Ohio is not the "focal point" of any statement by Mr. Betzold.**

Plaintiff asserts that Mr. Betzold's statements concerned an Ohio resident's activities "in Ohio, among other states." (Opp. at 12, 18.) The qualifier is fatal. In *Calder*, California was "the focal point both of the story and of the harm suffered." 465 U.S. at 789. LLF, by contrast, has "sixteen offices across multiple states," and its founder resides in Florida. (Motion, Ex. 2 ¶ 3; Motion at 13, 16.) Indeed, in her Florida suit over the same controversy, Ms. Lisinski alleged that the content was "directed into Florida," "caused injury to Lisinski in Florida," and "specifically targeted Lisinski, a Florida resident." (Motion, Ex. 2 ¶¶ 32, 34.) Plaintiff cannot claim the same controversy is aimed at Florida when suing there and at Ohio when suing here. Nor does Mr. Betzold's alleged knowledge that LLF is an Ohio company (Opp. at 8, 12) change the result; that is the plaintiff-focused connection *Walden* held insufficient. 571 U.S. at 289–90.

**D. Plaintiff's claims do not arise from any Ohio contact by Mr. Betzold.**

The "arising from" prong is lenient, but it still requires that the defendant "purposefully direct[ed] communications into the forum, and those communications form the heart of the cause of action." *Carbone*, 140 F.4th at 814 (quotation omitted); *see Baker*, 480 F. Supp. 3d at 806. The

prong failed in *Carbone* because the plaintiff did not contend that the statements were directed toward Ohio. 140 F.4th at 814. So too here: Plaintiff's claims rest on statements made in Michigan to a national audience. And *Kubyn* found this prong satisfied only because the defendant specifically targeted the plaintiffs' in-state business. 141 N.E.3d at 520–22.

**E. Exercising jurisdiction would be unreasonable.**

Because the first two prongs fail, the Court need not reach reasonableness, *Baker*, 480 F. Supp. 3d at 807, and the inference of reasonableness Plaintiff invokes (Opp. at 15) never arises. *Kubyn*, 141 N.E.3d at 522. In any event, Mr. Betzold's undisputed affidavit establishes the burden of litigating in Ohio for a Michigan lawyer practicing through a Michigan firm. (Motion, Ex. 5 ¶¶ 1–8.) Plaintiff's reliance on Ohio's interest in protecting its businesses (Opp. at 16, citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002), and *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 776 (1984)) is misplaced: the *Bird* defendant had "transacted business with 4,666 Ohio residents," 289 F.3d at 875, and the *Keeton* publisher "deliberately exploi[ted]" the forum market. *Walden*, 571 U.S. at 285. As this Court observed, Ohio's interest in protecting its residents "would be true in any case involving an Ohio plaintiff," which is not a "reasonable" basis "for this Court to exercise jurisdiction over the out-of-state Defendants." *Baker*, 480 F. Supp. 3d at 807.

Ohio's interests emphatically point the other way. Ohio's Uniform Public Expression Protection Act, Ohio Rev. Code Chapter 2747, reflects a policy against suits targeting speech on matters of public concern. That policy undercuts any Ohio interest in hosting a suit against an out-of-state lawyer for warning immigrants about immigration fraud and offering to review their files.[1]

---

[1] The Amended Complaint faults Mr. Betzold for reviewing client files to determine whether Plaintiff committed ethical violations. Plaintiff's counsel was advised before amending that such allegations could be construed to interfere with regulatory authorities' ability to investigate and regulate the conduct of licensed attorneys. (Motion, Ex. 6.)

Concerns about attorney conduct belong to the disciplinary system, not to an Ohio suit against a Michigan lawyer over commentary that never mentions the State.

## V. Plaintiffs' new long-arm theory fails in any event.

### A. The Opposition relies on a subsection neither Complaint invokes.

Both complaints invoke only Ohio Rev. Code § 2307.382(A)(3), "[c]ausing tortious injury by an act or omission in this state." (Am. Compl. ¶ 87.) Plaintiff amended after defense counsel advised at the July 14, 2026 meet-and-confer that the Complaint "does not identify conduct of Mr. Betzold specifically" (Motion, Ex. 6), yet added no new long-arm basis and no Ohio-specific allegations about him. The Opposition now relies principally on (A)(6) – and, for the ODTPA, tortious-interference, conspiracy, and Lanham Act counts, exclusively. (Opp. at 4–8.)

Plaintiff asserts in a footnote that it "may rely upon additional, uncited subsections of the long-arm statute." (Opp. at 4 n.2.) The cited authorities do not support this argument. The first authority, *Triad Hunter, LLC v. Eagle Natrium, LLC*, 132 N.E.3d 1272, 1281 (Ohio Ct. App. 2019), applied Ohio state practice to a complaint whose "operative facts" already "encompass[ed]" the other subsections, against defendants who "did not specifically contest" the statute. Neither is true here. Its second authority, footnote 7 of *Baker*, concerns unmade due-process arguments – and holds them waived: "Because they failed to do so, the Court considers any other arguments in support of specific personal jurisdiction waived." 480 F. Supp. 3d at 804 n.7. Whatever subsection applies, the record contains no facts about Mr. Betzold's own conduct that satisfy it.

### B. Plaintiff has not shown any act by Mr. Betzold satisfying either (A)(3) or (A)(6).

As shown in Section III, no paragraph Plaintiff cites identifies an act by Mr. Betzold in or aimed at Ohio. Subsection (A)(6) also requires an act "committed with the purpose of injuring persons." In *Kauffman*, that purpose was "clear from the postings" (Opp. at 5, quoting 930 N.E.2d

at 792), which named the plaintiff and mentioned Ohio. Mr. Betzold's identified statements – warnings about immigration fraud and an offer of a second opinion – do neither, and they reveal a purpose of protecting immigrants, not injuring an Ohio law firm.

**C. Plaintiff's federal (A)(6) authorities do not help it.**

Plaintiff's federal (A)(6) authorities (Opp. at 5–8) do not help it. *LeafFilter N., LLC v. Home Craft Builders, Inc.*, 487 F. Supp. 3d 643 (N.D. Ohio 2020), held that (A)(6) "may" be satisfied but held that under *Walden*, "injury to a forum resident is not enough, on its own, to establish personal jurisdiction," and transferred the case. *Id.* at 647–49. Plaintiff quotes the long-arm half of *LeafFilter* and omits the due-process holding that disposed of the case. *J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08-cv-977, 2009 WL 385611 (N.D. Ohio Feb. 13, 2009), and *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151 (S.D. Ohio 2012), involved defendants with direct Ohio ties – a prior working relationship and contracts "based in Ohio" in one, an employee of the Ohio plaintiff in the other. Plaintiff alleges nothing comparable against Mr. Betzold.

**VI. Jurisdictional discovery is not warranted.**

Plaintiff's alternative request for jurisdictional discovery into Ohio website analytics, Mr. Betzold's "Ohio-based clients," and his "coordination with other Defendants" (Opp. at 16–18) should be denied. Plaintiff identifies no specific fact that, if found, would show that Mr. Betzold expressly aimed his conduct at Ohio, and courts decline to permit "an unspecified and speculative fishing expedition." *LeafFilter*, 487 F. Supp. 3d at 650 n.4 (citing *C.H. ex rel. Shields v. United States*, 818 F. App'x 481, 483–84 (6th Cir. 2020)).

Each proposed topic confirms the point. Ohio website traffic would show only unilateral third-party activity, which *Walden* and *Blessing* hold insufficient. "Coordination" discovery seeks to impute others' contacts to Mr. Betzold, which *Calder* forbids. And unrelated Ohio clients could

not supply specific jurisdiction over claims that do not arise from them. Nor does *Malone* (Opp. at 17) help Plaintiff: there, the defendant conceded purposeful availment and the complaint itself made the *prima facie* showing. 965 F.3d at 503–06. Where, as here, the complaint does not, discovery is properly denied. *LeafFilter*, 487 F. Supp. 3d at 650 n 4. Finally, Plaintiff's complaint that the affidavit leaves "questions about what [he] did do" (Opp. at 17) inverts the burden: it is Plaintiff that must identify Ohio-directed conduct with reasonable particularity. *Carbone*, 140 F.4th at 808–09.

**VII. Conclusion.**

Plaintiff had two complaints and an opposition brief to identify what Mr. Betzold himself said or did that was directed at Ohio. It has failed to do so. The Betzold Defendants respectfully request that the Court grant their Motion and dismiss them, without prejudice, for lack of personal jurisdiction, and deny Plaintiff's alternative request for jurisdictional discovery.

Respectfully submitted,

*/s/ David M. Saperstein*

David M. Saperstein (0070736)
Trial Attorney pursuant to Limited Appearance
Jesse L. Roth
MADDIN, HAUSER, ROTH & HELLER, P.C.
One Towne Square, Fifth Floor
Southfield, MI 48076
(248) 827-1885
dsaperstein@maddinhauser.com
jroth@maddinhauser.com
Counsel for Defendants James Betzold and
Betzold Law, PLC

Dated: November 9, 2026

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on **November 9, 2026** the foregoing document was submitted for filing with the Clerk of the Court via the Court's ECF system and accordingly served on counsel of record by operation of the Court's electronic filing system. The following parties have not entered appearances through counsel at this time and were accordingly served via electronic mail and USPS Firs-Class mail, postage prepaid, as follows:

Camila Overmyer
4020 Eagle Drive
Gosport, IN 47433
camilaovermyer@icloud.com
*Pro Se Defendant*

*/s/ David M. Saperstein*
David M. Saperstein (0070736)
Trial Attorney pursuant to Limited Appearance