**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE LISINSKI LAW FIRM, LLC,** <br><br> **Plaintiff,** <br> **vs.** <br><br> **CAMILA OVERMYER a/k/a CAMELIA GUAD MAGANA MADRIGAL,** <br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **Case No. 2:26-cv-00704-ALM-SCS** <br><br> **JUDGE SARAH D. MORRISON** <br><br><br> **REPLY IN SUPPORT OF DEFENDANTS INNA SIMAKOVSKY AND SIMAKOVSKY LAW GROUP, LLC'S MOTION TO DISMISS** |

---

Now come the Defendants, Inna Simakovsky and Simakovsky Law Group, LLC ("Simakovsky"), by and through undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully submit this Reply Brief in Support of Defendants' Motion to Dismiss the Plaintiff's Amended Complaint.

## I. INTRODUCTION AND SUMMARY

The circumstances under which a non-client can sue an attorney under Ohio law are extremely limited. Attorneys must be able to zealously represent clients without fear of retribution from disgruntled third parties, such as litigation adversaries. Only in rare circumstances, such as when an attorney goes beyond the role of counsel and engages in extra-legal activity, may a third party claim be maintained. Here, the specific allegations against Simakovsky in the Amended Complaint fail to overcome the protections put in place by the Ohio Supreme Court by suits against disgruntled non-clients. Moreover, Plaintiff's attempt to recast their allegations in the Amended Complaint in their Opposition fail to overcome the immunities provided to Simakovsky by law.

Plaintiff's Amended Complaint contains four specific allegations against Simakovsky, all of which involved her role as an attorney, and more particularly, her role as local counsel in a class

action case against the Plaintiff. The Amended Complaint claims that Simakovsky: (1) acted as local counsel in the class action filed on May 28, 2026; (2) emailed a former Lisinski attorney on May 24, 2026 as a potential witness in the class action; (3) posted on Facebook on June 4, 2026 that she was class counsel and made an allegedly disparaging comment; and (4) purportedly told a client seeking a second opinion that Plaintiffs were "scammers". Each action is specifically tied to activities undertaken by Simakovsky as a lawyer in the class action litigation. Recognizing the limitations placed on third-party non-clients in suing their adversary's lawyer, Plaintiff claims that a simple recitation of the word "malice" suffices to overcome dismissal. However, to constitute "malice" under Ohio law that will suffice to substitute for an attorney-client relationship, facts must be alleged that demonstrate "extra-legal activity". In addition, Plaintiff's argument proposes a dangerous precedent. If all that were necessary under Ohio law to sue the opposition's attorney were the formulaic recitation of the word "malice", any disgruntled party could sue his or her adversary's counsel for any reason or conduct simply by crying "malice." Plaintiff has not plead facts supporting malice, and the regurgitation of legal conclusions cannot supplant actual facts necessary to support a cause of action. *Eidson v. Tenn. Dep't of Children's Servs.,* 510 F.3d 631 (6th Cir. 2007)("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.")(citations omitted).

Even if Plaintiff's Amended Complaint were to clear the first hurdle of standing or immunity, the Complaint still fails on the claims of defamation and civil conspiracy. To that end, Plaintiff's Opposition concedes the ground on which this Motion rests. It admits the former employee email "did not specify" any misinformation or false promise. It defends the "scammers" remark with facts that "might have been" shared in a conversation the Amended Complaint never describes. It rewrites the Facebook post into words Simakovsky never used. A statement whose

meaning the plaintiff itself cannot supply is not a verifiable assertion of fact. That ends Count I. The remaining counts fare no better. Plaintiff pleads a public controversy that began fourteen months before Simakovsky said a word. It defends Count III as a *per quod* claim the Amended Complaint does not plead. It builds a conspiracy on a paragraph that never names Simakovsky and alleges a different agreement for a different purpose. And it adopts the Lanham Act framework for Count X, quotes the advertising element, then asks the Court to ignore it. Plaintiff's answer at every turn is inference — about what the email meant, what Simakovsky knew, and what "Defendants" agreed to. Inferences fill gaps between pleaded facts. They do not replace them. For these reasons, and as articulated more fully below, Simakovsky's Motion to Dismiss should be granted.

## II. LEGAL ANALYSIS

### A. **<u>Plaintiffs' Reply Erroneously Ignores Well-Established Ohio Law That Precludes Them from Standing to Bring Their Third-Party Claims Against Inna Simakovsky and Simakovsky Law Group, LLC</u>.**

Plaintiffs' Opposition erroneously contends that, as third-parties, they have standing to bring tort claims against Defendants Inna Simakovsky and her firm under the elements for ordinary "standing" under Ohio law as their basis for the contention. However, well-established Ohio law contradicts Plaintiffs' arguments and requires significantly more when a party not in privity with the attorney seeks to bring a claim against that attorney. The Opposition argues that, to bring a claim against an Ohio lawyer, a third-party need merely allege the existence of an injury, a causal connection between the defendant's conduct and the injury, and redressability. (See Opposition, Doc. 54, at PAGEID # 504, citing *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012)). Yet, this stands in contradiction to well-established Ohio law.

Contrary to Plaintiffs' assertion, claims against Ohio lawyers are treated differently by law. That is because, in Ohio, "[g]enerally, a party outside the direct attorney-client relationship 'lacks standing to complain of conflicts that arise from that relationship.'" *Luce v. Alcox*, 165 Ohio App.3d 742, 748, 848 N.E.2d 552 (10th Dist.2006) (quoting *Morgan v. N. Coast Cable Co.*, 63 Ohio St.3d 156, 586 N.E.2d 88 (1992)). Typically, Ohio courts treat all claims against attorneys under the rubric of malpractice, regardless of how the plaintiff chooses to style a particular claim. *Grenoble v. Rion, Rion, Rion, L.P.A.*, 12th Dist. Preble No. CA2014-07-006, 2015-Ohio-971, ¶ 23; *Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, ¶ 19; *Muir v. Hadler Real Estate Mgmt.*, 4 Ohio App.3d 89, 90, 446 N.E.2d 820 (12th Dist.1982). Indeed, the Ohio Supreme Court has expressed a strong policy against third-party action against attorneys, recognizing that "[t]he obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client" and that to hold otherwise could mean that an "attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself." *Simon v. Zipperstein*, 32 Ohio St. 3d 74, 76, 512 N.E. 2d 636 (1987).

Rather than address this well-established Ohio law, Plaintiffs offer an absurd analogy involving an attorney who causes a car accident. The obvious difference between the facts they have alleged in the Amended Complaint and the attorney involved in their analogy is that Plaintiffs' claims against Defendant Simakovsky and her firm in this case all involve Ms. Simakovsky's professional conduct as a lawyer. Specifically, Plaintiffs' Complaint contends that, as part of her pursuit of class action claims against Plaintiffs, Ms. Simakovsky purportedly "emailed one of LLF's former attorneys … evidently in an effort to embarrass the former LLF attorney into ceding to Simakovsky's request [for information on LLF's ethics training]." (Amended Complaint, Doc.

23, at PAGEID # 172). Plaintiffs further allege that the same former LLF attorney was then sued in the class action lawsuit. (See id.). Because Plaintiffs' own allegations in the Amended Complaint make clear that the conduct complained of relates to Ms. Simakovsky's investigation and pursuit of the class action lawsuit, the claims arise out of Ms. Simakovsky's profession as a lawyer and are therefore subject to Ohio's "malpractice-is-malpractice" rule. *See Muir v. Hadler Real Estate Mgmt.*, 4 Ohio App.3d 89, 90, 446 N.E.2d 820 (12th Dist.1982); *Hibbett v. Cincinnati*, 4 Ohio App.3d 128, 446 N.E.2d 832 (1st Dist.1982).

Plaintiffs cannot maintain a claim against Simakovsky for her conduct as an attorney because they lack proper standing under Ohio law. The Opposition fails to demonstrate that the Amended Complaint's allegations are capable of conferring some status sufficient to establish standing notwithstanding the malpractice-is-malpractice rule and the lack of privity through an attorney-client relationship. As a consequence, Plaintiffs' claims against Ms. Simakovsky and her firm must fail and dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper.

### B. In Addition to Lacking Standing, Plaintiffs' Also Cannot Maintain Claims Against Ms. Simakovsky and Her Firm Because those Claims Are Barred by the Litigation Privilege.

Notwithstanding that Plaintiffs' claims against Ms. Simakovsky and her firm are barred for lack of standing, Plaintiffs' Opposition also fails to show that Ohio's attorney immunity or "litigation privilege" rule does not bar their claim. Their arguments that neither apply are undermined by their erroneous reliance on cases that are factually distinguishable from the present matter and a mischaracterization of Ohio law.

As Ohio courts have stated, the immunity extended to attorneys for conduct related to litigation and their professional conduct extends to all tort claims, not just those that the plaintiff elects to garb in the nomenclature of "malpractice":

> "A claim against an attorney for actions taken in his professional capacity is a claim sounding in legal malpractice no matter how artfully the pleadings attempt to raise some other claim." *Omega Riggers & Erectors*, *Inc. v. Koverman*, 2d Dist. Montgomery No. 26590, 2016-Ohio-2961, ¶ 22, 65 N.E.3d 210, 65 N.E.3d 210. Accordingly, Ohio courts have consistently applied the qualified immunity recognized in *Scholler* and *Simon* to third party claims of tortious conduct directly related to an attorney's representation of a client even when the cause of action asserted is not "legal malpractice." *See Hahn* at ¶ 55-69 (applying rule to invasion of privacy claim against third party attorney); *Omega Riggers* at ¶ 22-44 (analyzing claims for negligence and violation of a fiduciary duty in the context of legal malpractice); *Moffitt v. Litteral*, 2d Dist. Montgomery No. 19154, 2002-Ohio-4973, ¶ 75-82 (applying rule to claim for conversion against third party attorney); *Lisboa v. Lisboa*, 8th Dist. Cuyahoga No. 95673, 2011-Ohio-351, ¶ 24-28 (analyzing claims for third party malpractice, fraud, conspiracy, civil aiding and abetting, and intentional infliction of emotional distress together); *FV-I*, *Inc.*, *In Trust for Morgan Stanley Mtge. Capital Holdings*, *L.L.C. v. Townsend-Young*, 8th Dist. Cuyahoga No. 109191, 2020-Ohio-5184, ¶ 64-66 (applying rule to claim of fraud against a third-party attorney). *See also Andrews v. Carmody*, 145 Ohio App.3d 27, 34, 761 N.E.2d 1076 (11th Dist.2001) (tortious interference with a contract).

*Kim v. Randal A. Lowry Assocs.*, 2021-Ohio-51, ¶14, 166 N.E.3d 146 (9th Dist.). Nonetheless, Plaintiffs' Opposition attempts to circumvent these clear obstacles to their claims by recharacterizing what they have alleged in the Amended Complaint.

Plaintiffs' primary argument as to why attorney immunity and/or the litigation privilege does not apply ostensibly relies on a selective interpretation of what they themselves alleged in the Amended Complaint. Plaintiffs now argue that the conduct they alleged in the Amended Complaint as attributable to Ms. Simakovsky and her firm are purportedly "untethered" to any representation of a client. They specifically contend that their allegation that Ms. Simakovsky purportedly "contact[ed] a former LLF attorney in an attempt to breach the attorney's non-disclosure agreement with LLF" is unrelated whatsoever to litigation so the litigation privilege cannot apply. (Opposition, Doc. 54, at PAGEID # 506). However, this new argument is directly at odds with the plain language of the Amended Complaint, which is *crystal clear* about Plaintiffs' contention that Defendants' purported conduct in this case derives entirely from the ostensible "scheme" to bring

a class action lawsuit against Plaintiffs.[1] It is therefore unfathomable that now – purely to avoid dismissal – Plaintiffs could reasonably argue that there is no "reasonable relation" between the alleged conduct and litigation activities.

In addition to this bizarre recharacterization of their own allegations, Plaintiffs unreasonably rely on cases that are not instructive to the present issue of attorney immunity/litigation privilege. Plaintiffs' Opposition chiefly relies on cases that are not factually on all fours with the present case.

The first case Plaintiffs cite to – *Vector Rsch., Inc. v. Howard & Howard Att'ys P.C.*, 76 F.3d 692 (6th Cir. 1996) – is entirely distinct from the facts alleged in the present case. In *Vector*, the court considered claims against a law firm defendant for conduct that purportedly included performing a search of the plaintiffs' facility for copyrighted materials without proper oversight

---

[1] See, e.g., Amended Complaint, Doc. 23, at PAGEID # 132: "Unsuspecting LLF clients are abandoning what may be their only path to legal status, turning on their counsel, and joining civil lawsuits, namely *Ortega v. The Lisinski Law Firm, LLC*, *et al.,* No. 2:26-cv-00644-SDM-KAJ (S.D. Ohio May 28, 2026) (the "Class Action") (in which Alvarez serves as counsel, as does Simakovsky's firm)"; see also, id., at PAGEID # 147-48: "Simakovsky and Alvarez and their respective law firms, as counsel in the Class Action against LLF, will share fees if that Class Action succeeds …"; see also id., at PAGEID # 148: "The most cynical aspect of the entire scheme is that Overmyer, Betzold, and Alvarez are persuading undocumented immigrants — people whose single greatest priority is obtaining legal status – to abandon what may be their only realistic path to that status in order to join a civil lawsuit (i.e., the Class Action)"; "That personal and professional gain – not justice, not client protection, not advocacy for the immigrant community – drives this entire scheme, made plain by Alvarez and Simakovsky's attempt to concoct a class action lawsuit out of manufactured grievances"; see also id., at PAGEID # 165: "Betzold, Alvarez, and Overmyer's efforts came to a head on May 28, 2026, when Alvarez and Simakovsky filed a putative class action against LLF and others on behalf of a former LLF client. *See Ortega v. The Lisinski Law Firm, LLC*, No. 2:26-cv-00644-SDM-KAJ."; see also id., at PAGEID # 172: "The information Simakovsky sought is, on information and belief, protected from disclosure by the former LLF attorney's non-disclosure agreement with LLF…the former LLF attorney refused and was shortly thereafter named as a defendant in the putative class action filed against LLF on May 28, 2026."; see also id., at PAGEID # 185: "On information and belief based on allegations in the Class Action Alvarez and Simakovsky filed against LLF and statements Overmyer made on TikTok, Alvarez, Overmyer, and Simakovsky engaged in the intentional procurement of the breach of at least one nondisclosure agreement between LLF and a current or former LLF team member."

from the federal marshals and the seizure of material not covered by the court's order for the search or protected by the Copyright Act. *See id.*, at 696. That type of conduct is clearly different from the interviewing of witnesses, signing up of prospective clients, etc. alleged against Ms. Simakovsky in the Amended Complaint.

Likewise, the *Reister v. Gardner*, 174 N.E.3d 713 (Ohio 2020) case cited in Plaintiffs' Opposition in similarly unhelpful. That case did not involve claims against a lawyer at all. Instead, the defendants at issue in that matter were corporate directors who sought immunity from plaintiff's claims under either the business judgment rule or the litigation privilege. *Id.* at 549. In fact, the majority of Supreme Court's analysis involving the litigation privilege in that case revolved solely around the distinction between the business judgment rule and the litigation privilege.

The *Silveous v. 5Starr Salon & Spa, LLC* case and *Morrison v. Gugle* case cited in Plaintiffs' Opposition involve determinations that are procedurally distinct from the present case, *i.e.*, on summary judgment and on directed verdict, respectively. As such, none of the cases cited in Plaintiffs' Opposition are in any way instructive on whether dismissal pursuant to either the attorney immunity rule or litigation privilege is appropriate in this case.

Plaintiffs' sole remaining argument in their Opposition as to why the litigation privilege should not apply to bar their claims here is that they have alleged "malice" in their Amended Complaint, which ostensibly negates the good faith presumption for the privilege. However, this argument likewise fails because Plaintiffs' proposed standard would subsume the rule.

Plaintiffs' Opposition contends that the mere incantation of the word "malice" in the Amended Complaint's allegations is sufficient to overcome dismissal by negating the litigation privilege at the pleading stage. (See Opposition, Doc. 54, at PAGEID # 507). In support of this

argument, Plaintiffs cite to *Vector Rsch., Inc.*, 76 F.3d at 700, which states that "malice" may be averred generally. (See id.). However, the standard proposed by Plaintiffs' Opposition is that a mere formulaic recitation of the word "malice" is sufficient to overcome any assertion of attorney immunity or litigation privilege at the pleadings stage. In so doing, Plaintiffs suggest that *any* complaint by a third-party against an attorney can sufficiently safeguard itself from dismissal under immunity or privilege grounds purely by virtue of reciting the word "malice". This standard, if adopted, would subsume and render meaningless the purpose of attorney immunity/litigation privilege, as it would ostensibly permit lawsuits arising out of an attorney's professional representation of another by simply saying the magic word.

Pursuant to the foregoing section, Plaintiffs have failed to demonstrate that their claims against Ms. Simakovsky and her firm should not be dismissed because of Ohio's attorney immunity rule and/or the litigation privilege. Plaintiffs' allegations in the Amended Complaint seek to impose liability for the Defendants' actions in preparing for and litigating the class action lawsuit against Plaintiffs. (See, e.g., Amended Complaint, Doc. 23, at PAGEID # 132, 147-48, 165, 172, 185). Accordingly, Plaintiffs' claims and causes of action against Ms. Simakovsky and her firm should be dismissed.

### C. Plaintiffs' Opposition Fails to Demonstrate Why Its Cause of action for Tortious Interference with a Contract Should Not be Dismissed Because of the Unenforceability of the Attorney Non-Disclosure Agreement.

Plaintiffs' primary argument in the Opposition as to why their tortious interference with a contract claim should not be dismissed for violating public policy is that the non-disclosure agreement at issue purportedly did not involve an attorney so the agreement could not have violated Ohio's Rules of Professional Conduct. Again, though, this argument impermissibly seeks to recharacterize their own allegations from the Amended Complaint just to avoid dismissal.

Paragraphs 166 and 167 of the Amended Complaint detail Plaintiffs' allegations against Ms. Simakovsky for ostensible tortious interference with a contract. (See Amended Complaint, Doc. 23, at PAGEID # 172-73). Paragraph 166 specifically states that "Simakovsky emailed one of LLF's ***former attorneys***, copying Alvarez and writing 'Attorney Alvarez would like to speak with [the former LLF attorney] about her ethics training [at LLF] and other insight[s] she may have into [LLF].'" (Id., at PAGEID # 172, emphasis added). It further alleges that "Simakovsky also copied ***the former LLF attorney's*** new employer, evidently in an effort to embarrass the former LLF attorney into ceding to Simakovsky's request." (Id., emphasis added). Paragraph 167 states that "The information Simakovsky sought is, on information and belief, protected from disclosure by the former LLF attorney's non-disclosure agreement with LLF." (Id., emphasis added).

These are the only allegations in the Amended Complaint concerning Ms. Simakovsky's purported interference with one of LLF's non-disclosure agreements. Given that the plain language of the allegations unequivocally involve LLF's non-disclosure agreement with one of its former attorneys, the Opposition's argument that Count V is ***not*** based upon a non-disclosure agreement between LLF and an attorney falls apart.

Plaintiffs' Opposition contains only one case that ostensibly involves an attorney being forced to sign a non-disclosure agreement with his firm but that case does not stand for the proposition Plaintiffs cite. On page 7 of the Opposition, Plaintiffs cite to the Northern District of Ohio case of *Minc, LLC v. Stebbins*, No. 22-cv-1655, 2024 WL 4041432 (N.D. Ohio Sept. 4, 2024), for the proposition that the federal court purportedly "reject[ed] argument on motion to dismiss that non-disclosure agreement between law firm and former attorney was unenforceable". (Opposition, Doc. 54, at PAGEID # 508). The Opposition further points to pages 11 through 13 of

the District Court's opinion as the alleged location of the Court's holding on that specific issue. However, even a cursory review of those sections (indeed the remainder of the opinion as well) reveal that the district court said nothing about whether a non-disclosure agreement is *per se* enforceable. Likewise, the confidentiality issue addressed in later sections of the opinion only involved the ability to solicit clients and whether the NDA forbid it. *See* 2024 WL 4041432, at **30-36.

The remaining cases cited in the Opposition all involve ordinary employment non-disclosure agreements that do not involve lawyers or otherwise implicate the Ohio Rules of Professional Conduct. What ***does*** come out of the *Stebbins* decision, though, is the district court's confirmation that "[t]here further exists a strong public policy against agreements that 'limits the professional autonomy of the lawyer.'" *Id.* at *19 (citing *Hackett v. Moore*, 2010- Ohio 6298, 939 N.E.2d 1321 (Ohio Ct. of C.P. 2010) and Prof.Cond.R. 5.6, cmmt. 1). Here, Plaintiffs' Amended Complaint alleged that Ms. Simakovsky purportedly contacted LLF's former attorney to discuss "her ethics training [at LLF] and other insight[s] she may have into [LLF]." (Amended Complaint, Doc. 23, at PAGEID # 172).

To the extent Plaintiffs allege that it would be a violation of the former attorney's non-disclosure agreement with LLF for her to discuss her ethics training at LLF, that agreement would unquestionably violate Ohio Professional Rules of Conduct that require attorneys to disclose ethical issues and even publicly report training on attorney ethics. Furthermore, agreements that prohibit attorneys from exercising their discretion as professionals, particularly in areas when it comes to disclosing potential ethical issues is against public policy. Accordingly, Plaintiffs' Opposition has failed to show that their cause of action against Ms. Simakovsky for purported tortious interference with a contract is actionable. Such an agreement restricting a lawyer's ability

to publicly discuss issues related to ethics and ethics training is unenforceable and cannot serve as the basis for such a claim.

**D. LLF cannot say what Simakovsky's three statements mean, and that is dispositive of Count I.**

LLF does not dispute the law. Whether a statement is one of fact, or opinion, is a question for this Court. *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 280 (1995). And where a "statement lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content." *Id.* at 283. In other words, such statements cannot be defamatory as a matter of law. *Id.*

And LLF's Opposition plainly surrenders these points. It tells the Court that the email "did not specify" anything. (*See* Doc. 54 at PageID #512). Instead, LLF asks the Court to infer the email's content from allegations about other defendants. (*Id.*). And it defends the "scammers" remark by speculating that undisclosed facts "might have been shared" in a conversation the Amended Complaint never describes. (*Id.* at PageID #513). But a statement whose meaning must be supplied by guesswork is the exact definition of a statement that "lacks a plausible method of verification." *Vail*, 72 Ohio St.3d at 283. Count I should be dismissed in full.

***1. LLF's opposition concedes each statement is unverifiable, and thus cannot be the basis of a defamation claim.***

Verifiability drives the analysis on whether a statement is one of fact, or opinion. *Vail*, 72 Ohio St.3d at 280. And LLF concedes that each of the three statements is unverifiable. Take each statement in turn:

***The Email.*** LLF concedes "the email did not specify what misinformation or false promises LLF made." (Doc. 54 at PageID #512). That concession ends the inquiry. A statement that specifies nothing proves nothing. *Kirkland v. Env't Landscape, LLC*, 2025 U.S. Dist. LEXIS

25399, at *42-43 (S.D. Ohio Feb. 12, 2025) (statements "not readily verifiable when Kirkland did not also give examples").

***The Scammers Comment.*** LLF says it is "plausible" the remark rested on first-hand knowledge, and that such knowledge "might have been shared with LLF's clients during that conversation." (Doc. 54 at PageID #513). "Might have been" is not an allegation. Rule 8 requires facts that make a claim plausible, not conjecture about facts that were never pleaded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

***The Facebook Post.*** LLF never explains how a factfinder would measure whether a law firm is "the biggest" anything, or whether its work is "truly horrific." Instead, it rewrites the post in its briefing to say that "LLF failed to perform its duties in representing its clients." (Doc. 54 at PageID #513). Those are LLF's words, not Simakovsky's. Courts examine the words used. *Vail*, 72 Ohio St.3d at 282.

Inferences come from facts a plaintiff pleads. They do not substitute for facts a plaintiff omits. *Iqbal*, 556 U.S. at 678-79. Accordingly, Count I should be dismissed as to all three statements.

***2. LLF's inference about the email contradicts its own Complaint.***

Unable to say what the email meant, LLF guesses. It asks this Court to infer that Simakovsky meant the "stress in a marriage" claim pleaded at paragraph 48. (Doc. 54 at PageID #511). The Amended Complaint forecloses that guess.

Paragraph 48 is not about Simakovsky. It alleges that "Overmyer, Betzold, and Alvarez grossly mischaracterize LLF's well-established legal position." (Am. Compl., Doc. 23 at PageID #141-#142, ¶ 48). It then alleges that "Betzold and Alvarez misleadingly suggest to their audience" the "stress in [a] marriage" claim. (*Id.*). Simakovsky appears nowhere in it.

LLF pleaded which defendants said that. It cannot now hand the statement to a different one. Favorable inferences do not permit that. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012).

### *3. LLF's posture objection would defeat LLF's own lead case.*

LLF argues *Kirkland* and *Concrete Creations* are "inapposite at the motion to dismiss stage" — one a summary judgment decision, the other a bench trial. (Doc. 54 at PageID #513-#514). LLF's principal authority on verifiability is *Mehta v. Ohio University*, 958 N.E.2d 598 (10th Dist. 2011). And notably, *Mehta* itself *was decided after a bench trial.*

Setting aside the goose and gander of that argument, LLF's objection to Simakovsky's authority fails on its own terms and well settled law. Whether a statement is opinion or fact is a question of law. *Vail*, 72 Ohio St.3d at 280; *Kirkland*, 2025 U.S. Dist. LEXIS 25399, at *40. Courts answer that question on the pleadings when the words are before them. The Sixth Circuit affirmed a Rule 12(b)(6) dismissal on precisely that basis. *Croce v. New York Times Co.*, 930 F.3d 787 (6th Cir. 2019).

*Mehta* does not reach these statements anyway. The report there charged a named professor with having "failed to monitor" an identified student's thesis — a specific duty, a specific failure, measurable against a completed investigation. "Truly horrific" identifies no duty, no case, and no client.

### *4. LLF's "first-hand knowledge" theory would swallow the opinion doctrine.*

LLF's theory is that by claiming to be local counsel and to have seen LLF's clients, Simakovsky "implied that [she] had first-hand knowledge of facts supporting [her] conclusions." (Doc. 54 at PageID #510). Knowledge, says LLF, makes the opinion verifiable.

Follow that rule. The surgeon who calls a colleague's technique sloppy loses the protection of having an opinion. So does the critic who read the book. So does any lawyer who has seen the filings. Every informed speaker forfeits the doctrine, and only the uninformed keep it. LLF's argument, taken to its logical conclusion, is untenable.

And *Vail* holds the opposite. Opinion is speech that is "value-laden" and reflects "a point of view that is obviously subjective." 72 Ohio St.3d at 283. Experience produces a point of view. It does not convert one into a fact. Further *Kirkland* forecloses the theory outright. The speaker there had dealt with the contractor directly and still called him a "con man" and a "crook." The statements remained unverifiable because she "did not also give examples of what he did." 2025 U.S. Dist. LEXIS 25399, at *42-43. Neither does LLF.

***5. The Amended Complaint establishes the qualified privilege on its face.***

LLF answers the qualified privilege by calling it an affirmative defense. (Doc. 54 at PageID #514, citing *Hilty v. Donnellon McCarthy Enters., Inc.*, 281 N.E.3d 333, 343 (1st Dist. 2026)). True enough. But also, beside the point.

Whether the privilege exists is a question of law for the court. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 8 (1995). An affirmative defense supports dismissal when the complaint's own allegations establish it. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

And the allegations themselves establish it here. LLF pleaded the occasion itself — a client who "sought a second opinion regarding the client's immigration case." (Am. Compl., Doc. 23 at PageID #166, ¶ 146). LLF never disputes that the client asking and the lawyer asked share an interest in a candid answer. It simply walks past the paragraph it wrote.

LLF also misstates the absolute privilege argument. It claims Simakovsky contends her "local council [sic]" post "insulated her from liability for everything that followed." (Doc. 54 at PageID #514). To be clear, she contends nothing of the sort. The Motion applies the absolute privilege to the Facebook post alone — a post that announced the filing of a public lawsuit in which Simakovsky Law is counsel of record. (MTD, Doc. 36 at PageID #250).

Finally, LLF says it pleaded actual malice, so no privilege can apply. (*Id.*). Paragraph 199 recites the standard and stops. Reciting elements is not pleading facts. *Iqbal*, 556 U.S. at 678.

***6. LLF pleads a public controversy that predates Simakovsky by fourteen months.***

LLF's public-figure argument reduces to one rule: a defendant cannot manufacture the controversy that makes a plaintiff a public figure. (Doc. 54 at PageID #515-#516, citing *Croce v. Sanders*, 459 F. Supp. 3d 997, 1016 (S.D. Ohio 2020), and *Worldnet Software Co. v. Gannett Satellite Info. Network, Inc.*, 702 N.E.2d 149, 155 (1st Dist. 1997)). Agreed on the law. But Simakovsky manufactured nothing.

LLF pleads the start date itself. In March 2025, Overmyer "began developing a narrative that immigration lawyers, including LLF's attorneys, were defrauding their clients," through "dozens of social media videos" and "several hours-long livestreams." (Am. Compl., Doc. 23 at PageID #155, ¶ 102). Hundreds of thousands watched. (*Id.* at PageID #172, ¶ 169).

Simakovsky spoke on May 24 and June 4, 2026. (*Id.* at PageID #167, ¶¶ 148-149). On LLF's own chronology, she walked into a controversy fourteen months old. *Worldnet* asks whether "the controversy must have existed prior to the statements." 702 N.E.2d at 155. By LLF's own pleading, it did.

LLF's remaining answer is that paragraph 16 describes Overmyer's conduct, not LLF's. (Doc. 54 at PageID #517). Take that reading. The rest of the pleading still controls. LLF calls itself

"one of the largest and most well-respected immigration law firms in the country," with "nearly 1 million social media followers across platforms." (Am. Compl., Doc. 23 at PageID #133, ¶ 15). And it pleads that clients and the public debate these very allegations on Lisinski's own TikTok and YouTube pages. (*Id.* at PageID #172-#173, ¶¶ 169-172). That is a limited-purpose public figure.

***7. Simakovsky Law falls with Simakovsky.***

LLF concedes this point. Its entire answer is that the claim "is viable through the doctrine of respondeat superior." (Doc. 54 at PageID #518). Respondeat superior is derivative. No liability for the agent means no liability for the firm. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 20. LLF adds that Simakovsky used a firm email address. (*Id.*). That establishes where a message came from. It does not establish a tort.

**E. LLF defends a claim Count III does not plead.**

Count III pleads defamation by implication. (Am. Compl., Doc. 23 at PageID #182, ¶¶ 212-215). LLF's opposition defends something else — defamation *per quod*. (Doc. 54 at PageID #518). Those are not the same claim. Neither one survives.

***1. Woods says "defamation," not "libel."***

LLF reads *Woods* to bar only *libel* by implication. (Doc. 54 at PageID #517-#518). The holding paragraph says otherwise: "Ohio does not recognize defamation by implication." *Woods v. Sharkin*, 2022-Ohio-1949, ¶ 52 (8th Dist.). The court wrote "defamation." LLF would have this Court read "libel."

***2. Count III pleads no claim for defamation per quod.***

Defamation *per quod* is not a nickname for defamation by implication. It is a claim that requires damages the law will not presume. Count III pleads none as to Simakovsky. It pleads the

same general reputational harm pleaded in every other count. (Am. Compl., Doc. 23 at PageID #182, ¶ 218). Rule 8(f) does not fill that gap. Construing a pleading to do justice is not the same as writing allegations into it. *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003), addresses mislabeled theories. It does not address missing facts.

***3. AIX Specialty decided an insurer's duty to defend.***

LLF leans on *AIX Specialty Insurance Co. v. Big Limo, Inc.*, 547 F. Supp. 3d 757 (S.D. Ohio 2021). (Doc. 54 at PageID #518). That case asked whether a complaint *arguably* triggered coverage. That standard is far broader than Rule 12(b)(6). And the plaintiff there pleaded no defamation claim at all. The implication was different in kind as well. It came from a photograph suggesting the plaintiff was affiliated with a nightclub. *See* Restatement (Second) of Torts § 565. LLF identifies no photograph, no juxtaposition, and no omitted context in anything Simakovsky said.

***4. Count III fails under any label.***

Call it implication. Call it *per quod*. It rests on the same three statements, and none asserts a verifiable fact. *Vail*, 72 Ohio St.3d at 283; *Kirkland*, 2025 U.S. Dist. LEXIS 25399, at *42-44. An opinion is protected whether stated or implied. In neither form is there a verifiable assertion capable of being false.

**F. <u>LLF's conspiracy claim rests on a paragraph that never mentions Simakovsky.</u>**

***1. Paragraph 42 alleges a different agreement, by different people, for a different purpose.***

LLF's conspiracy argument now rides on paragraph 42 and a WhatsApp group. (Doc. 54 at PageID #520). Read the paragraph. LLF's brief says "the Simakovsky Defendants" created the group. (*Id.*). Paragraph 42 says "Defendants" created it. It says "Overmyer administers this group."

And it pleads the whole thing "[o]n information and belief." (Am. Compl., Doc. 23 at PageID #140, ¶ 42). Simakovsky is named nowhere in it. That is precisely the categorical pleading the Sixth Circuit rejects. *Marcilis*, 693 F.3d at 596-97.

The purpose is wrong too. Paragraph 42 alleges a group used "to recruit current and former LLF team members [and] elicit conduct in violation of their non-disclosure agreement obligations." (*Id.*). Count IV alleges a conspiracy to defame. An agreement to procure contract breaches is not an agreement to defame.

***2. Woods v. Sharkin supports dismissal here.***

LLF cites *Woods* for the proposition that a conspiracy claim survives alongside viable torts. (Doc. 54 at PageID #520). That was the holding as to one defendant. As to the media defendants, *Woods* dismissed the conspiracy claim because no viable underlying tort was pleaded. *Woods*, 2022-Ohio-1949, ¶ 69. That is this case.

***3. Coconspirator attribution presupposes a conspiracy.***

Simakovsky never appeared in Overmyer's videos. LLF answers that "the acts of coconspirators are attributable to each other." (Doc. 54 at PageID #520, quoting *Gevedon v. Decker*, 2021 WL 141237, at *8 (2d Dist. 2021)). The rule applies once an agreement is shown. It cannot prove the agreement. Otherwise, every defendant sued beside a conspirator becomes one by operation of the caption. That leaves LLF with a copied email address and a shared expectation of fees. (*Id.*, citing Am. Compl., Doc. 23 ¶¶ 65-66, 148). Lawyers copy co-counsel on correspondence; that is how litigation gets coordinated. And an expectation of fees is a motive. It is not a meeting of the minds.

***4. "Additionally separately" means what LLF wrote.***

LLF now reads paragraph 227 to allege "further conspiratorial acts." (Doc. 54 at PageID #520). The paragraph says Simakovsky "additionally *separately* defamed LLF and Lisinski to current LLF clients." (Am. Compl., Doc. 23 at PageID #184, ¶ 227) (emphasis added). "Separately" is LLF's word. Conduct pleaded as separate is not conduct pleaded in combination. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995).

### G. <u>LLF adopts the Lanham Act framework and then abandons its elements.</u>

#### *1. LLF concedes the test that defeats its claim.*

LLF agrees that courts "evaluate an [ODTPA] claim under the same analysis as that used for Lanham Act claims." (Doc. 54 at PageID #520, quoting *The Hillman Grp., Inc. v. Minute Key, Inc.*, 317 F. Supp. 3d 961, 968 (S.D. Ohio 2018)). It then recites the five elements of that analysis. The fourth asks whether "the advertisements were introduced into interstate commerce." (*Id.*, quoting *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 725 (N.D. Ohio 2009)).

So LLF adopts a test built on advertising, quotes the element that says so, but then tells the Court advertising is not required. (Doc. 54 at PageID #520). It cannot have both. And no paragraph of the Amended Complaint alleges Simakovsky advertised anything. *Hall v. Crawford County* does not rescue the claim. (*Id.*). That case counsels consulting federal authority where an Ohio statute leaves a term undefined. R.C. 4165.02(A)(10) does not define "disparages," and it says nothing about the manner of publication. That is when the federal analysis applies — as LLF's own authority confirms.

#### *2. Paragraph 278 incorporates the very allegation LLF now disclaims.*

LLF insists the Amended Complaint never alleges a private, one-to-one conversation. (*Id.*). It does. Paragraph 278 alleges that Simakovsky told "at least one current LLF client" that LLF and

Lisinski were "scammers," and then sends the reader to paragraph 146. (Am. Compl., Doc. 23 at PageID #191, ¶ 278) ("*see* ¶ 146 *supra*"). Paragraph 146 describes one client, who "sought a second opinion regarding the client's immigration case," and a conversation about that client's own file. (*Id.* at PageID #166, ¶ 146). A consultation about one person's case is not a communication to the purchasing public.

***3. "Upon information and belief" supplies nothing.***

LLF falls back on the allegation that Simakovsky "has told this to other LLF clients as well." (Doc. 54 at PageID #521). That allegation is pleaded on information and belief and rests on nothing. (Am. Compl., Doc. 23 at PageID #191, ¶ 278). No client. No date. No setting. No source. A plaintiff may plead on information and belief where the facts sit in a defendant's hands, but it must still plead a basis for the belief. *Iqbal*, 556 U.S. at 678-79. This argument does not let the claim survive.

***4. "Scammers" is still not a representation of fact.***

Each argument above is independent of this one. R.C. 4165.02(A)(10) reaches disparagement "by false representation of fact." For the reasons in Part A, "scammers" standing alone is not one. *Kirkland*, 2025 U.S. Dist. LEXIS 25399, at *42-43; *Concrete Creations & Landscape Design LLC v. Wilkinson*, 2021-Ohio-2508, ¶¶ 57-58 (7th Dist.). Count X fails no matter who was listening.

## III. CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Plaintiffs' Amended Complaint is subject to dismissal pursuant to Fed. Civ. R. 12(b)(6).

Respectfully submitted,

/s/ *Joseph W. Borchelt*
Joseph W. Borchelt (KBA# 91655)
REMINGER CO., LPA
525 Vine Street, Ste 1500
Cincinnati, OH 45202
Phone: 513.721.1311
jborchelt@reminger.com

***Attorney for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been electronically filed this 9th day of November, 2026 through the Court's CM/ECF system. Notice of filing will be automatically sent to all counsel (and their designees) who have entered their appearance of record and who are registered with this Court's CM/ECF system. Such notice constitutes service by rule.

/s/ *Joseph W. Borchelt*
Joseph W. Borchelt (0075387)