**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE LISINSKI LAW FIRM, LLC<br><br>Plaintiff,<br><br>v.<br><br>CAMILA OVERMYER, ET AL.<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO. 2:26-cv-00704<br><br>JUDGE DOUGLAS R. COLE<br><br>MAGISTRATE JUDGE KIMBERLY A. JOLSON |

***DEFENDANTS ROBERT ALVAREZ AND AVANTI LAW GROUP, PLLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT***

Plaintiff's Opposition to the Avanti Defendants' Motion to Dismiss only serves to emphasize that despite amending its Complaint, Plaintiff has not alleged facts that plausibly state a claim for relief. Instead, it repeatedly recasts missing facts as demands for evidence, relies on legal conclusions, and aggregates conduct attributed to different defendants into a single supposed "campaign." Plaintiff's Opposition thus fails to separate the facts actually pleaded against the Avanti Defendants from the labels attached to them as required by Rule 12(b)(6).

LLF's defamation theories (Counts I, III, and IV) do not plausibly identify actionable false statements of fact by Alvarez or facts supporting actual malice. Count V does not identify an actual breach of a nondisclosure agreement procured by Alvarez. Count VI depends upon converting competition for terminable-at-will attorney-client relationships into tortious conduct by simply labeling Alvarez's conduct "wrongful." Count IX identifies no particular prospective business relationship with which Alvarez supposedly interfered. The conspiracy claims add coordination, but not a plausibly alleged agreement to commit an unlawful act. And the ODTPA claim (Count

X) adds an alleged financial motive, but not the commercial advertising or promotion necessary to transform attorney commentary into a deceptive-trade-practices claim. Consequently, Plaintiff's First Amended Complaint must be dismissed in its entirety against the Avanti Defendants.

## I. LAW AND ARGUMENT

Although the Opposition repeatedly says Defendants demand "evidentiary proof," "trial-level detail," or information obtainable in discovery, Defendants ask the Court only to determine whether LLF pleaded facts establishing the elements. It has not. The Opposition attempts to evade pleading defects by characterizing them as demands for evidentiary detail, but the allegations it cites only confirm what is missing. As to the alleged NDA breach, for example, the Opposition points to Paragraph 165, yet that paragraph alleges only that a former LLF employee declined Alvarez's call. Paragraphs 234 and 254 then attempt to supply the missing breach by alleging, "upon information and belief," that Alvarez nevertheless procured "at least one."

The Opposition takes the same approach elsewhere, insisting that LLF need not identify prospective clients at the pleading stage while never identifying even one particular prospective relationship or concrete expectancy known to Alvarez. The Opposition further relies on Paragraph 223 for actual malice, but that paragraph alleges only that Defendants acted "maliciously" and "knew" their statements were false without alleging what Alvarez actually knew. Additionally, Plaintiff relies on an alleged WhatsApp group as evidence of conspiracy without identifying what Alvarez said, agreed to, or undertook through that group.

These are not factual details properly left to discovery. In each instance, the Opposition points back to a conclusion that assumes the very element the Motion identified as missing. Measured against the allegations actually pleaded – rather than the legal characterizations Plaintiff

assigns to them – the claims against the Avanti Defendants remain insufficiently pleaded and should be dismissed.

**A. Clarification of the Standard of Review**

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusion. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

Further, in ruling on a motion to dismiss "The court may not take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)." *Bates v. Green Farms Condominium Association*, 958 F.3d 470, 483 (6th Cir. 2020). Plaintiff "cannot… amend [its] complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained within the complaint." *Id.* Furthermore, "if a complaint fails to state a claim under even the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint." *Id., citing Harrell v. United States,* 13 F.3d 232, 236 (7th Cir. 1993).

When this standard is properly applied, and only the allegations contained in Plaintiff's Complaint considered, this Honorable Court should determine that Plaintiff's Complaint fails to state a claim upon which relief can be granted and dismiss all claims asserted against the Avanti Defendants with prejudice.

**B. The defamation claims (Counts I, III, and IV) do not identify any actionable false statements by Alvarez or plausibly plead the required fault and therefore must be dismissed.**

Plaintiff's defense of its defamation claims confirms their defects. The Opposition attempts to rescue Counts I, III, and IV by extracting statements from the Amended Complaint and then assigning each a factual meaning more specific, and more defamatory, than the words actually attributed to Alvarez. *Opp. at 10–14*. But the Opposition cannot manufacture an actionable factual assertion by simply pleading LLF's preferred implication rather than the statement Alvarez allegedly made. The Opposition's effort to rehabilitate these claims therefore rises or falls on what Alvarez actually said, what those statements reasonably convey in context, and whether LLF has plausibly alleged the requisite fault. As discussed below, it fails on each ground.

**1. <u>"No competent immigration attorney would have signed off" expresses professional judgment, not an objectively verifiable fact.</u>**

The Opposition first relies on Alvarez's statement that no "competent immigration attorney would have signed off on" certain applications; and then proceeds to rewrite this statement as an assertion that the filings were "so deficient that no minimally competent immigration attorney would have approved them." *Opp. at 12*. However, Alvarez's actual words contain no fixed criterion by which a factfinder could determine what a hypothetical competent attorney would approve. An assessment of this statement depends on professional judgment concerning strategy, evidentiary sufficiency, legal risk, and the appropriate course for the client. Instead, LLF strips away Alvarez's qualifying discussion of "the manner in which this system was executed" and converts that assessment into the absolute historical assertion that "no attorney reviewed" any application. *Opp. at 10, 12; Am. Compl. ¶ 151*. Plaintiff cannot state a claim based on the more categorical words it supplies in opposition, rather than Alvarez's actual statement.

The Opposition's own proposed method of proving falsity further confirms the point. LLF argues that expert evidence regarding the sufficiency of the applications would establish whether the statement was true. *Opp. at 12*. But the need for one expert to answer another attorney's professional judgment is not evidence that Alvarez stated a verifiable fact. Rather it demonstrates that the challenged statement is itself an opinion. A statement whose meaning turns on competing expert views about professional judgment is not transformed into objective fact merely because LLF disagrees with the judgment. Further, the Opposition's reliance on *Bentkowski v. Scene Magazine*, 637 F.3d 689, 692 (6th Cir. 2011) does not support a different result. There, the challenged article asserted that the mayor "routinely tries to pull off stunts like limiting residents' feedback at meetings and barring government employees from running for office." Unlike Alvarez's assessment here, those assertions referred to concrete conduct that the Sixth Circuit recognized was "possibly verifiable" through objective evidence—yet the court still held the statements protected opinion when considered in context. *Id*. at 695–96.

Here, there is no comparable historical act to verify—there is only Alvarez's opinion regarding what a competent lawyer would have approved. The Court must evaluate the statement Alvarez allegedly made, not the more categorical accusation the Opposition constructs from it. The alleged statement expresses an evaluative professional judgment that lacks any plausible method of objective verification, and cannot support Counts I, III, or IV; and these counts must therefore be dismissed.

2. **<u>The Opposition repeatedly converts Alvarez's commentary into accusations of fraud and criminal conduct that he did not make.</u>**

The Opposition next quotes: "It's a big surprise that they put at risk not only their licenses, but also their freedom." *Opp. at 12 (citing Am. Compl. ¶ 51)*. The Opposition then converts the phrase "put at risk" into a factual accusation that LLF "engaged in conduct exposing [its attorneys]

to criminal liability." *Id*. The dispositive issue is that the statement attributed to Alvarez does not identify a crime, state that a crime occurred, or claim knowledge of undisclosed criminal conduct. It is conditional and cautionary rhetoric about possible professional and legal consequences. The Opposition's own wording, "exposing them to" liability, confirms that the alleged statement concerns potential risk, not an adjudicable assertion that LLF committed fraud or a crime.

More fundamentally, the First Amended Complaint's actual allegations distinguish among the speakers: Betzold allegedly warned of government investigations; Overmyer allegedly threatened imprisonment; and Alvarez allegedly discussed the potential consequences *if* fraud existed, including that clients of lawyers who commit fraud "could also face criminal charges" and that immigration authorities would review filings "to determine whether there was any fraud." *First Am. Compl.* ¶ *56*. Those conditional statements attributed to Alvarez about the consequences of potential fraud are not factual assertions that LLF actually committed fraud. The Opposition cannot cure that defect by aggregating separate speakers and conditional commentary into the categorical accusation it needs Alvarez to have made.

The FOIA allegation follows the same pattern. The First Amended Complaint alleges that Alvarez stated: "I believe they are buying time with the FOIA, they are buying time, it's a way to bill additionally." *First Am. Compl.* ¶ *46*. Yet the Opposition recasts that statement as a factual accusation that LLF charged clients for "unnecessary legal work" to prolong representation and generate fees and then argues that billing records and expert testimony will eventually prove it false. *Opp. at 13*. Most strikingly, Alvarez never allegedly said the FOIA requests were unnecessary, that LLF fraudulently billed for them, or that any particular client was improperly charged. Further, the prefatory "I believe" underscores that Alvarez was offering his subjective assessment of why the practice was being used. Plaintiff's reliance on future expert testimony only

confirms that it seeks to litigate competing professional assessments, not prove the falsity of a concrete factual assertion Alvarez actually made.

### 3. LLF Fails to Plausibly Plead the Actual Malice Required of a Limited-Purpose Public Figure.

Even if any of the statements above could constitute actionable defamation (they cannot), LLF still fails to state a claim for defamation against the Avanti Defendants. Whether a plaintiff is a limited-purpose public figure is a question of law for the Court, and the allegations of the First Amended Complaint establish LLF's limited-purpose public-figure status as to the controversy at issue. *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 529-31 (6th Cir. 2014)(resolving limited-purpose-public-figure status on de novo review and holding that a plaintiff who voluntarily enters a public controversy through its own channels of communication is a limited-purpose public figure required to prove actual malice). Thus, the Opposition's effort to recast the controversy as a purely private dispute cannot erase the public controversy described in its own pleading. LLF alleges an extensive public-facing immigration practice and acknowledges using social media to address the very immigration practices and accusations at issue. *See First Am. Compl.* ¶ *15*. The alleged controversy likewise concerned the propriety of immigration filings and services LLF provided to a substantial immigrant clientele.

On that dispositive question, the Opposition points to Paragraphs 65, 67, 142, 145, 199, 217, and 223 of the First Amended Complaint, all to support its assertion that Defendants "knew" the statements were false and acted "maliciously" to enrich themselves. *Opp. at 8–9*. However, those are the very conclusions *Iqbal* instructs courts to disregard. 556 U.S. at 678–79. Plaintiff pleads no facts showing what Alvarez knew that contradicted any identified statement, what source he disbelieved, what document he ignored, or why he seriously doubted the truth of what he said. Instead, it alleges that Alvarez sought clients and financial benefit. Even if accepted, that alleges

motive, not knowledge of falsity. Ill will, competitive motive, and an intent to cause harm are not substitutes for the required actual malice standard. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666, 688 (1989)(ill will, improper motive, and departure from professional standards do not alone establish actual malice, which requires at minimum a subjective awareness of falsity).

**C. The Opposition does not cure the missing elements of Plaintiff's tortious-interference claims (Counts V, VI, and IX), and therefore those claims must be dismissed**.

The same pleading defects continue into LLF's tortious-interference claims as the Opposition again substitutes conclusions and promises of discovery for the facts necessary to plausibly plead the required breach, wrongful interference, and prospective business relationship the law demands. The Opposition first insists that LLF need not identify the former employee whose NDA Alvarez allegedly procured to be breached because that information can be developed in discovery. *Opp. at 15*. But procurement of a breach is a required element of the claim, not a fact LLF may assume occurred and seek to uncover through discovery. The Opposition's singular factual allegation alleges Alvarez contacted a former employee who declined to speak with him. *First Am. Compl.* ¶¶ *163-165; Opp. at 15.* LLF does not allege that any conversation occurred, that confidential information was disclosed, or that a specific agreement was breached. Thus, LLF only pleads an attempted contact, not the intentional procurement of a contractual breach that Count V requires.

Addressing Count VI, the Opposition fares no better in attempting to characterize Alvarez's contacts with LLF clients as "wrongful means." LLF relies heavily on Ohio Rule of Professional Conduct 4.2 but at page 16 of its brief, it selectively quotes only part of the rule and thus omits its critical limitations. Rule 4.2 does <u>not</u> prohibit an attorney from communicating with anyone who happens to have counsel. It prohibits an attorney "*[i]n representing a client*" (Plaintiff leaves this part out) from communicating "about the subject of the representation" with a person the lawyer

"knows to be represented by another lawyer *in the matter*." *Ohio Prof. Cond. R. 4.2* (emphasis added). On its face, the rule is limited to attorneys who are representing a different existing client in a matter. Indeed, Comment 4 expressly confirms that communications concerning matters outside the representation, including communications with a represented person seeking advice from a lawyer not otherwise representing a client in that matter, are not prohibited. LLF alleges that Alvarez contacted clients regarding potential claims against LLF, but it does not allege that Alvarez represented an adverse party in their immigration matters or communicated about the subject of those representations. Therefore, LLF cannot convert competition for clients free to change counsel into wrongful conduct by selectively quoting only part of an ethical rule.

Finally, Count IX suffers from an even more basic defect: LLF pleads an entire market, not a prospective business relationship. Ohio recognizes interference with a prospective contractual relationship, not a generalized expectation that unidentified members of the public might someday become clients. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 176–80 (1999) (analyzing interference with an identified contractual or prospective contractual relationship). The Opposition argues that LLF need not identify "every specific prospective client," *Opp. at 17*, but Defendants never demanded every prospective client. **LLF does not identify even one**. Its allegations instead encompass "individuals seeking legal services" and prospective clients generally considering whether to retain LLF. This describes the universe of all potential consumers for LLF's services, not a particular business expectancy with which Alvarez knew he was interfering. LLF cannot use discovery to determine whether the particular prospective relationship that its claim requires existed in the first place. Consequently, Count IX must be dismissed.

**D. Competitive motive does not transform Alvarez's commentary into commercial advertising under the ODTPA.**

Count X illustrates the recurring defect in LLF's pleadings: a legal label is tasked with doing the work of missing facts. Actionable commercial disparagement must involve commercial advertising or promotion, not merely speech by a businessperson with an alleged commercial motive. *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 410–11 (6th Cir. 2024) (applying the Lanham Act's "commercial advertising or promotion" requirement under the three-part Grubbs test and affirming dismissal of statements that were not made for the purpose of influencing customers to buy the defendant's services). The Opposition says whether the statements were "advertisements" is "not the relevant inquiry," then immediately asserts that the First Amended Complaint alleges they were advertisements disseminated for commercial gain. *Opp. at 20*.

The facts alleged, however, describe livestreams, social-media commentary, criticism of LLF's immigration practices, and discussion of potential claims against LLF. They do not identify an Avanti advertisement, a comparative representation promoting Avanti's legal services, or any other promotional message by Alvarez. An alleged commercial motive does not transform every statement by a competitor into commercial advertising or promotion. And LLF cannot avoid that distinction simply by relabeling the same allegedly defamatory commentary "commercial disparagement." The Court must examine what Alvarez allegedly said and the context in which he said it, not the commercial characterization LLF assigns to it. The First Amended Complaint does not plausibly allege commercial advertising or promotion by Alvarez, and therefore Count X fails.

**E. Allegations that Defendants coordinated their activities do not plausibly plead a civil conspiracy, thus Counts IV and VII must be dismissed**.

The Opposition likewise mistakes coordination for conspiracy. It relies principally on the alleged WhatsApp group and an email copying Alvarez to argue that Defendants coordinated their

activities. *Opp. at 18–19*. But even accepting coordination as true, that is not the element missing from LLF's claim. Civil conspiracy requires a malicious combination to commit an underlying unlawful act. *Aetna Cas. & Sur. Co. v. Leahey Constr. Co*., 219 F.3d 519, 538 (6th Cir. 2000)(requiring, for Ohio civil conspiracy, a malicious combination to commit an unlawful act independent of the conspiracy, and a common understanding—even if tacit—to join in that objective). LLF identifies no statement by Alvarez in the WhatsApp group agreeing to defame LLF, procure a contractual breach, or accomplish any other unlawful objective, and being copied on an email does not itself plausibly establish assent to one. More fundamentally, conspiracy cannot make otherwise nonactionable conduct tortious. Having failed to plausibly plead the underlying defamation and interference claims against the Avanti Defendants for the reasons above, LLF cannot revive those same allegations by aggregating them into a purported "campaign." Counts IV and VII therefore fail as well.

**F. The applicable privileges provide an additional, independent basis for dismissal of protected communications**.

The Opposition attempts to defeat the Avanti Defendants' privilege arguments by treating Alvarez's alleged conduct as one undifferentiated public "campaign." That is not the analysis Ohio law requires. Ohio's litigation privilege protects statements made in judicial proceedings where the challenged statement bears some reasonable relation to the proceeding. *Surace v. Wuliger*, 25 Ohio St. 3d 229, 233 (1986) (holding that an allegedly defamatory statement in a pleading is absolutely privileged where it bears "some reasonable relation to the judicial proceeding"). The privilege is not confined to statements made after a complaint is filed. *See Simmons v. Climaco*, 30 Ohio App. 3d 225, 228 (8th Dist. 1986) (extending absolute privilege to an attorney's pre-indictment statements and writings made on behalf of a client and relevant to an ongoing grand-jury investigation); *see also M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497, 505 (1994)

(holding that a pre-filing submission initiating a proceeding constituted an "initial step in a judicial proceeding" and was absolutely privileged).

Plaintiff itself alleges that Alvarez investigated potential claims against LLF, communicated with potential claimants and witnesses, gathered information concerning those claims, and ultimately participated in litigation arising from them. The Opposition cannot strip those litigation-related communications of their privileged character merely by grouping them with separate public commentary and labeling everything part of the same "campaign." The challenged communications must be evaluated according to the circumstances in which each was made. To the extent LLF's claims rest upon communications made in the course of investigating, preparing, or pursuing contemplated litigation and within the scope recognized by Ohio law, the litigation privilege independently bars liability.

The Opposition similarly reads the common-interest privilege too narrowly. Ohio recognizes a qualified privilege where a communication is made in good faith on a matter in which the speaker has an interest or duty to a recipient possessing a corresponding interest or duty. *Hahn v. Kotten*, 43 Ohio St. 2d 237, 243–44 (1975)(recognizing a qualified privilege for communications between parties sharing a common interest, where made in a reasonable manner and for a proper purpose, and defeasible by a showing of actual malice). Communications among Alvarez, persons evaluating potential claims, witnesses possessing relevant information, and attorneys evaluating or pursuing those claims are distinct from statements to the public at large. Those are distinct communications made to distinct audiences for distinct purposes. Further, LLF cannot defeat the qualified privilege merely by repeating that Alvarez acted with "malice." As explained above, its allegations concern competitive motive and financial benefit, not facts showing that Alvarez knew a statement was false or recklessly disregarded its truth. Accordingly, the privileges asserted in the

Motion remain independent grounds for dismissal of the communications falling within their respective protections.

## II. CONCLUSION

For the foregoing reasons, Defendants Robert Alvarez and Avanti Law Group, PLLC respectfully request that the Court dismiss all counts asserted against them in the Amended Complaint, and grant the Avanti Defendants Motion to Dismiss, together with any such further relief as the Court deems just and proper.

Respectfully submitted,

FREEMAN MATHIS & GARY, LLP

*/s/ James A. Lacey*

**Cara M. Wright (0084583), Trial Attorney**
**Jeffrey A. Yeager (0068062)**
**James A. Lacey (0105891)**
65 East State Street, Suite 2550
Columbus, OH 43215
Cara.Wright@fmglaw.com
Jeffrey.Yeager@fmglaw.com
James.Lacey@fmglaw.com
*Counsel for Defendants Robert Alvarez and Avanti Law Group, PLLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2026, a copy of the foregoing *Defendants Robert Alvarez and Avanti Law Group, PLLC's Reply in Support of Motion to Dismiss Plaintiff's First Amended Complaint* was filed electronically and accordingly served on counsel of record by operation of the Court's electronic filing system.

The following parties have not entered appearances through counsel at this time and were accordingly served via United States regular mail, postage prepaid, as follows:

Camila Overmyer
4020 Eagle Drive
Gosport, IN 47433
camilaovermyer@icloud.com
*Defendant*

*/s/ James A. Lacey*
**James A. Lacey**
*Counsel for Defendants Robert Alvarez and Avanti Law Group, PLLC*